```
                    STATE OF MICHIGAN

    IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

    THE PEOPLE OF THE STATE OF MICHIGAN


              v                    Case Number
                                   10-5562-01


    DEONTE HOWARD

                            Defendant.

    _____/


    PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

    Judge, Third Circuit Court, Detroit, Michigan, on

    September 7, 2010.

APPEARANCES:

                    RAJ PRASAD P68519
                    Assistant Prosecuting Attorney
                    Wayne County Prosecutor's Office
                    1441 St. Antoine
                    Detroit, MI 48226
                    (313) 224-6804

                    SUSAN ROCK P34497
                    Attorney for the Defendant.
                    P.O Box 39287
                    Redford MI 48239
                    (313) 937-4444


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044
```

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:   NONE.

1                    Detroit, Michigan.
2                    September 7, 2010.
3                    (At 12:30 p.m.)
4                    THE COURT:  Step in, Mr. Howard.  This is
5          the People of the state of Michigan versus Deonte
6          Howard, 10 5562.
7                    MR. PRASAD:  Good afternoon, your Honor.
8          Raj Prasad for the People.
9                    MS. ROCK:  Your Honor, Susan Rock
10         representing Mr. Howard.  Good afternoon.
11                   THE COURT:  Yeah.  We almost got to this
12         good evening.
13                   MR. PRASAD:  Your Honor, counsel has filed a
14         motion for compelling additional discovery.  We are --
15         Sergeant Mackie is in receipt of what was requested.  We
16         are turning over the activity logs that were requested.
17         There was phone records that were also requested that
18         are on the form of a CD or a disk as well as -- These
19         were photographs that you wanted as well, ma'am?
20                   MS. ROCK:  The phone records and then --
21         Yeah.  That was the photographs.  And then Sergeant
22         Mackie said these are not all the activity logs.
23                   MR. PRASAD:  Are there more--
24                   SERGEANT MACKIE:  (Interposing)  No.  They
25         are the activity logs.

```
 1                  MS. ROCK:  Are these all the activity logs?
 2                  SERGEANT MACKIE:  That I could find, right.
 3                  MS. ROCK:  What does that mean when you say
 4      that I could find?
 5                  SERGEANT MACKIE:  Just that I went through
 6      all the activity logs for that day at that time frame
 7      for the afternoon shift.  And every single activity log
 8      where somebody responded to the shooting scene is there.
 9                  MS. ROCK:  Okay.  So, does that mean--
10                  SERGEANT MACKIE:  (Interposing)  So, there
11      may be some in there that didn't do an actual police
12      report, just because they did crowd control or traffic
13      control.  But their activity log is in there.
14                  MS. ROCK:  Okay.  So, we have all the
15      activity logs?
16                  SERGEANT MACKIE:  Right.
17                  MS. ROCK:  Okay.  And then the other
18      question is, do I have all the witness statements?
19                  SERGEANT MACKIE:  We didn't take any
20      additional ones, but I will give you what I have now if
21      you want to compare them.
22                  MS. ROCK:  Do you have my motion?  Do you
23      have my copy--
24                  THE COURT:  (Interposing)  I have a copy of
25      your motion.
```

```
 1              MS. ROCK:  Do you, your Honor?  I can't find
 2     mine.  I must have left at the office.
 3              THE COURT:  There's a claim for some Metro
 4     PCS records, police activity logs.
 5              MR. PRASAD:  The Metro PCS records have been
 6     provided today, Judge, on CD.  The activity logs have
 7     been provided as photocopies.
 8              MS. ROCK:  The only other thing, your Honor,
 9     is that we have some witnesses that we wanted to
10     interview where we don't have their addresses.  It's my
11     understanding the prosecutor with Officer Mackie is
12     going to contact them--
13              THE COURT:  (Interposing)  Let's put their
14     names on the record.  Are they on the witness list?  Do
15     I have a witness list?
16              MR. PRASAD:  No, Judge.  And that's my fault
17     because I was going to get together with Sergeant Mackie
18     this week and pare that down for the Court properly.
19              THE COURT:  Okay.  But that, that's the
20     people that you would like to call.
21              MR. PRASAD:  Correct.
22              THE COURT:  But sometimes the defense needs
23     a witness list so that they know.
24              MR. PRASAD:  They are.  I mean, they are in
25     current receipt of the same format that I have, which is
```

1    the fifty-five-person witness list created by Sergeant
2    Mackie.  I want--
3               THE COURT:  (Interposing)  No.  No.  And I
4    love you for that.  No.  No.  That's a start.
5               MR. PRASAD:  Right.
6               THE COURT:  But the thing that puts
7    everybody at a disadvantage is if there's a name there
8    and there's no address or phone number
9               MR. PRASAD:  Correct.
10              THE COURT:  And so, how is the defense to
11   know, period, what they would testify to for or against
12   the person they represent.
13              MR. PRASAD:  I wouldn't disagree, Judge.  In
14   fact, the conversation I had with Ms. Rock this morning
15   was that I was going to, that I was going to talk with
16   Sergeant Mackie about getting, having the witnesses
17   contacted.  If they didn't object to providing the
18   information, they would be provided to me, phone numbers
19   immediately.  If they did object to it, we would make
20   them come to the prosecutor's office to be interviewed
21   by the investigator.  Either way, you know, my intention
22   is to comply with the rule that require me to produce
23   these witnesses for--
24              THE COURT:  (Interposing)  Or at least list
25   them and let them know what they would testify to.

1      Because we're on a little, what?  Three-week or twenty-
2      day track now?
3                 MR. PRASAD:  Yes, sir.
4                 THE COURT:  So, we're going to try to find
5      fifty witnesses in twenty days.
6                 MR. PRASAD:  Most of them are not civilians,
7      so they won't be hard to find.
8                 THE COURT:  So, do I need anything else?
9                 MS. ROCK:  Well, the only thing is, the
10     other is telephone numbers and dates of birth.  Because
11     I need the dates of birth of the witnesses.
12                THE COURT:  No.  You don't need the dates of
13     birth of the police officers.
14                MS. ROCK:  Oh, no.  No.  No.
15                THE COURT:  That's for sure.
16                MS. ROCK:  You're right.
17                THE COURT:  If the other ones are going to
18     be produced, then you'll make a decision about whether
19     you want to even have them testify.  So, why would there
20     be a need to produce that information if the person
21     isn't going to testify?
22                MS. ROCK:  That's true.  That's true.
23                THE COURT:  So, I don't want the police to
24     have to do something blanketly just for the sake of,
25     well, you know, you should be able to impeach somebody.

1    Surely, if there's somebody you're interested in that
2    will be testifying for the People or even for yourself.
3    Because the police [sic] would have the ability to
4    impeach them for the same crimes of theft, dishonesty
5    and false statement as you would be able to.  But I can
6    see right now if he says the majority of them are
7    police, then I'm not going to order it for the police.
8              MS. ROCK:  No.  No.  I don't want the
9    police.  The only thing I was going to say is addresses
10   and telephone numbers we don't have is for Shaquelle
11   (sp.)--
12             THE COURT:  (Interposing)  Okay.  You all
13   can talk about those.
14             MS. ROCK:  Okay.
15             THE COURT:  And like he says, his intention
16   was to get in direct contact with those individuals.
17   And maybe it would just be easier to say this is the
18   date that I would like you to come down and Ms. Rock,
19   this is the date that they're going to be here as
20   opposed to asking them first and then, you know, since
21   we're on a twenty-day before we, we get to that place.
22   I mean, like Friday afternoon where you could sit in and
23   you could find out what they know or don't know.  I
24   mean, it might be a joint interview process, if you
25   will.

1           MR. PRASAD: Right.
2           MS. ROCK: Oh, no. No. No. I want to be
3    able to interview them without the prosecutor.
4           THE COURT: No. No. Of course you will.
5           MS. ROCK: Oh. Okay.
6           THE COURT: And I'm saying that both people
7    will have the opportunity. Because if they don't have
8    witness statements, I'd doubt if the prosecutor knows
9    what they will be testifying to if he calls them. And
10   that's the only way to pare down the witness list is to
11   find out what people know. And when I said joint, I
12   didn't mean--
13          MS. ROCK: (Interposing) Oh. Okay.
14          THE COURT: At the same time.
15          MS. ROCK: All right. Thank you. Excuse
16   me. Your Honor, I have three Court orders that have
17   been approved by the prosecutor in this case.
18          THE COURT: And what do they relate to that
19   requires my signature?
20          MS. ROCK: I have, on one of them, I want to
21   get a copy of the autopsy photos and the toxology [sic]
22   report because I talked to Dr. Dragovich--
23          THE COURT: (Interposing) That's his name.
24          MS. ROCK: What's that?
25          THE COURT: That's his name.

1                  MS. ROCK:  And he's agreed, for free, to
2     review the evidence.  So, he needs a copy of the autopsy
3     photos and the toxology report.
4                  THE COURT:  I'm surprised you don't have a
5     copy of the toxicology report.  It would be in the
6     packet as a part of the protocol.
7                  MR. PRASAD:  I haven't received mine yet
8     either, so I was going to--
9                  THE COURT:  (Interposing)  Get out of there.
10                 MR. PRASAD:  Yes, sir.
11                 THE COURT:  What's been the hold up?
12                 MR. PRASAD:  I don't know.  So, I will call
13    them anyway.  I mean, that's--
14                 THE COURT:  (Interposing)  Mr. Mackie, don't
15    you have that from the morgue?  You should have pictures
16    also in your file.  But you have a copy of the toxology
17    report, right?
18                 MR. PRASAD:  Judge, I don't.  That's why I
19    was surprised.  That's why I wanted to follow up on it.
20                 THE COURT:  He should have one.
21                 MR. PRASAD:  Judge, we'll follow up today.
22                 THE COURT:  You didn't have a preliminary
23    one at the preliminary examination?
24                 MR. PRASAD:  They test toxicology after.
25    So, often at the preliminary examination, if it's

```
 1    immediately done, we just get the first finding.  We've
 2    had that problem before.  Ms. Rock?
 3              MS. ROCK:  Yes.
 4              MR. PRASAD:  Wait 'til off the record.
 5              MS. ROCK:  Okay.  And you know the other
 6    thing, your Honor, I need, and I talked to the
 7    prosecutor about this, I just want the line-up
 8    participation information of the people that
 9    participated in those line-ups, their names.  It should
10    have the names on the back of the photos.
11              MR. PRASAD:  The physical line-up or the--
12              MS. ROCK:  (Interposing)  Both.
13              MR. PRASAD:  Or the photo?
14              MS. ROCK:  Both.
15              MR. PRASAD:  Because the physical line-up,
16    you have the names of the people.  We did that whole
17    hearing--
18              MS. ROCK:  (Interposing)  That's right.  I
19    do have that.  You're right.
20              MR. PRASAD:  And for the photographic line-
21    up, you should have that second sheet that has all their
22    names on it.
23              MS. ROCK:  But I don't.  I just have the
24    physical description.
25              THE COURT:  What physical description?
```

```
 1                    MR. PRASAD:  It's just photographs though.
 2                    MS. ROCK:  Yeah.  All right.  Thank you.
 3                    THE COURT:  In the words of Porky Pig--
 4                    MS. ROCK:  (Interposing)  That's all folks?
 5                    THE COURT:  Or is it Daffy Duck.  Which one,
 6       Porky or Daffy?
 7                    MR. PRASAD:  Porky.
 8                    MR. PRASAD:  Porky.
 9                    THE COURT:  That's all folks.
10                    MS. ROCK:  Thank you.  Your Honor, thank you
11       so much for your patience today.
12                    (At 12:40 p.m. proceedings concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
               SS )
COUNTY OF WAYNE    )

       I, SEAN E. ALLEN, CSMR 5265, Certified Court Reporter acting in and for the Third Judicial circuit, Wayne County, State of Michigan, do hereby certify that the foregoing pages 1 through 13, inclusive, were reduced to typewritten form and comprise a true rendition of the proceedings taken in the above-entitled matter on September 7, 2010.

       I FURTHER CERTIFY THAT MY CERTIFICATION ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN, SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                                        _____
                                        SEAN E. ALLEN -- CSMR 5265
                                        Official Court Reporter.

DATED:  This 29th day of May 2012.