STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN


v                          Case Number

                           10-5562-01


DEONTE HOWARD

                                    Defendant.


_____/

DEFENDANT'S MOTION TO DISMISS

PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

Judge, Third Circuit Court, Detroit, Michigan, on

September 23, 2010.

APPEARANCES:

                    RAJ PRASAD P68519
                    Assistant Prosecuting Attorney
                    Wayne County Prosecutor's Office
                    1441 St. Antoine
                    Detroit, MI 48226
                    (313) 224-6804

                    SUSAN ROCK P34497
                    Attorney for the Defendant.
                    P.O Box 39287
                    Redford MI 48239
                    (313) 937-4444


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044

-1-

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:  NONE.

1              Detroit, Michigan.

2              September 23, 2010.

3              (At 11:33 a.m.)

4              THE COURT:  Deonte Howard is the name of the

5      case.  This is 10 5562

6              MR. PRASAD:  Good morning, Judge.  Raj

7      Prasad for the People.

8              MS. ROCK:  Your Honor, Susan Rock

9      representing Mr. Howard.  Your Honor, I had filed a

10     motion to dismiss in this case because I've been trying

11     to get the discovery in this matter and it's been very

12     difficult.

13             I found out this morning the only way -- I

14     had called and talked to the prosecutor and one of my

15     investigators had investigated one of the witnesses, a

16     Mr. McFadden.  And Mr. McFadden advised my investigator

17     that he viewed a line-up and that he picked somebody

18     out.

19             I was never provided that information until

20     this morning officially from the police.  I notified the

21     prosecutor.  I initially was receiving reports, oh,

22     there wasn't a line-up.  There weren't additional line-

23     ups.  This morning, or the other day I asked for Officer

24     Love or Detective Love to be brought in because I wasn't

25     buying it because it didn't make sense to me that

-3-

1        Witness McFadden would be telling me or telling the

2        investigator that he had picked someone out of the line-

3        up and then the prosecutor is saying it didn't happen.

4                   Well, this morning I'm told by the

5        prosecutor that apparently he did pick somebody out,

6        three people out of a line-up or I'm not really clear

7        what happened, but it never got reduced to writing and

8        I'm not even sure what photographs Mr. McFadden looked

9        at or who he picked out.

10                  THE COURT:  Was Mr. McFadden listed as a

11       witness?

12                  MS. ROCK:  Yes.  And I think he's even

13       checked off an endorsed witness.

14                  THE COURT:  Is that correct, sir?

15                  MR. PRASAD:  Yes, sir.

16                  THE COURT:  Okay.  So, is there a line-up

17       that McFadden looked at that you're aware of.

18                  MR. PRASAD:  There was a -- In fact, I had

19       Investigator Love come today so we could have these

20       questions answered.  Speaking with Investigator Love

21       this morning, Judge, there was a line-up he looked at in

22       which he picked out three people from.  Investigator

23       Love did not have him sign or document that because he

24       picked out three out of six people in a line-up.

25                  THE COURT:  So, how do you not -- How do you

1    decide when and what should be documented, sir?  I mean,

2    is there a police policy that says if one person is

3    picked out, you document it, if two are picked out you

4    don't, if three are picked out, you don't?

5              MR. PRASAD:  I don't believe so, Judge.  And

6    I have no knowledge of anything like that.

7              THE COURT:  Okay.  I thought it was a

8    requirement that when you have a line-up you document

9    what you do.

10             MR. PRASAD:  But that is why, I mean, the

11   reason I say that is that is why, to explain to counsel,

12   Ms. Rock's statement about me not providing one before

13   is because we never had anything documented, I never was

14   in possession of anything documented of a line-up to

15   provide to her.

16             And it wasn't -- And Ms. Rock is correct.

17   It wasn't until I spoke to Investigator Love this

18   morning that I found out the actual circumstances of

19   what was presented.

20             MS. ROCK:  Excuse me.  I don't know if the

21   Court -- I don't want to interrupt the Court.

22             THE COURT:  No.  So just be right there

23   then.

24             MS. ROCK:  I put--

25             THE COURT:  (Interposing)  Just--

-5-

1          MS. ROCK:  (Interposing)  Oh, I'm sorry,

2     your Honor.

3          THE COURT:  Just be right there.  So, what

4     that suggests is that Ms. Rock needs to talk to all the

5     civilians to try to find out what has occurred or the

6     prosecution needs to talk to them to see all that's

7     occurred so that there can be a discovery of what was

8     not reduced to some sort of document.

9          MR. PRASAD:  I understand that, Judge.  And

10    I believe Ms. Rock, at least through her investigator,

11    has been able to, for the most, talk to most of the

12    witnesses.

13         MS. ROCK:  Your Honor, we have three

14    witnesses we still have to talk to.  We talked to the

15    other witnesses, but at the time when we first started

16    talking to witnesses, because that information wasn't in

17    the packet--

18         THE COURT:  (Interposing)  Right.  You don't

19    know--

20         MS. ROCK:  (Interposing)  Right.

21         THE COURT:  What to talk to them about.

22         MS. ROCK:  Right.

23         THE COURT:  How would she know what to talk

24    to witnesses about if she's depending upon the discovery

25    that's provided by the prosecution to generate just a

-6-

1    field of inquiry?  I mean, how?

2              MR. PRASAD:  No.  I understand.

3              THE COURT:  And how can be still receiving

4    discovery, still asking questions and it's two days

5    before trial?  I mean, how does that work?  And there

6    the case is still six months old?

7              MR. PRASAD:  We provide as much as we can.

8    Last week, Ms. Rock came over to the office and I had

9    her look through the police jacket to make sure what, to

10   identify whatever she doesn't have and I made copies of

11   all those documents for her that she said that she

12   didn't previously have.  As soon as I got the

13   photographs, I contacted her.  I let he know I had the

14   photographs so she could come look at them.  And I

15   allowed her the opportunity to make copies of the

16   photographs.  It's, you know, the continuing discovery

17   obligation of the prosecution doesn't end ever and so

18   whenever I get them I turn them over.

19             THE COURT:  No.  No.  I got you.  But how

20   can you say you're ready to try a case when you don't

21   even have all the discovery for the case?  How can the

22   People represent that the defendant's lawyer has all the

23   discovery in order to protect the interests of the

24   defendant?  Because one of your jobs is also to be a

25   minister of justice.

-7-

1           MR. PRASAD:  Oh, absolutely.

2           THE COURT:  That's what it says.

3           MR. PRASAD:  Absolutely.  So, how can you

4     represent that you've given her everything she needs to

5     adequately represent her, her client?

6           MR. PRASAD:  The only thing that I'm aware

7     of that is outstanding, your Honor, in terms of any

8     discovery or any documentation is the, is specifically

9     what Ms. Rock is requesting of MSP, completely outside

10    of anything that we are requesting of MSP.

11          Ms. Rock proffered to the Court an order to

12    MSP to test a specific type of item for a test that MSP

13    normally does not do, but they are willing to do for

14    her.  They won't do that test for us, but they've

15    indicated they'll do it for her.

16          So, that's the only thing that I'm aware of

17    that Ms. Rock is still waiting for--

18          THE COURT:  (Interposing)  Okay.  Except you

19    keep using that word that you're aware of.  And, you

20    know, that's a nice word, but that doesn't mean that

21    there's not discovery out there that exists.  And I know

22    that the obligation is that you're aware of.  But when

23    we have instances where people perform evidentiary

24    functions and there's no indication that it was -- I

25    mean, did you talk to Witness McFadden?

-8-

1            MR. PRASAD:  Judge, no.  I have not spoken

2     to him.  Our officers went and spoke, have spoken to him

3     several times.  We have statements from, a statement

4     from him.  And the officers went to go speak to him

5     again as recently as yesterday when they went to go

6     serve a subpoena.

7            THE COURT:  Okay.  So, whoever talked to Mr.

8     McFadden, again, didn't talk about any line-up that he

9     viewed.

10            MR. PRASAD:  I'm sorry, sir?

11            THE COURT:  Nobody knew that Mr. McFadden

12     had viewed a line-up then apparently.

13            MR. PRASAD:  Mr. McFadden -- Well, then once

14     these questions started coming around, that's when I

15     started asking him questions.

16            THE COURT:  Okay.  No.  No.  No.  But what

17     I'm saying is all of these interviews with Mr. McFadden

18     by the police department nobody asked him did he ever

19     see a line-up?

20            MR. PRASAD:  Judge, no.  I think what we

21     were coming to answer to is that once Ms. Rock was

22     asking all these questions, I got to the bottom of the

23     answered that there was a line-up.

24            THE COURT:  No.  No.  No.  I'm loving you

25     for that.  But I'm saying you had indicated that Mr.

1    McFadden had been interviewed by officers in the past.

2            MR. PRASAD:  Right.  That original statement

3    that was taken.

4            THE COURT:  Right.  And nobody asked him has

5    he ever seen a line-up?  He never mentioned that he had

6    seen a line-up?

7            MR. PRASAD:  Not in the statement, I don't

8    believe it's in the statement itself.

9            THE COURT:  So, the police couldn't ask Mr.

10   McFadden questions because Mr. Love didn't provide a

11   document or any basis for anything to be asked.

12           MR. PRASAD:  I see.  I'm sorry.  Thank you.

13   The initial statement was taken and then Investigator

14   Love had spoken to him afterwards?

15           THE COURT:  Okay.  And then nobody spoke to

16   him after that?

17           MR. PRASAD:  Not that I'm aware until

18   yesterday when they went to serve him a subpoena.

19           THE COURT:  Okay.  Because you kept saying

20   that police had talked to him.  So, the police only

21   talked to him once when they took the initial statement

22   way back in April?

23           MR. PRASAD:  April.  And then Investigator

24   Love went to go speak to him after that.

25           THE COURT:  Speak to him and make him see--

                          -10-

```
 1                    MR. PRASAD:  (Interposing)  A line-up.
 2                    THE COURT:  A line-up.
 3                    MR. PRASAD:  Right.
 4                    THE COURT:  And because he picked out three
 5       people, as he was asked to do to identify who he saw,
 6       there was a decision that because he didn't identify who
 7       somebody else thought was important, that then to
 8       memorialize that per department policy--
 9                    MR. PRASAD:  (Interposing)  Yeah.  I can't
10       answer that, Judge.  I mean--
11                    THE COURT:  (Interposing)  Ain't it policy
12       to memorialize line-ups?
13                    MR. PRASAD:  I would, I would think so,
14       Judge.  I have--
15                    THE COURT:  (Interposing)  Is that your
16       understanding?
17                    MR. PRASAD:  Yes.  Yes.  That's why, I mean,
18       I was surprised, too.  But Investigator Love did not.
19                    THE COURT:  So, apparently--
20                    MR. PRASAD:  (Interposing)  It's not a--
21                    THE COURT:  (Interposing)  You need to
22       investigate what your investigators have done so that
23       Ms. Rock has the information that the investigators have
24       done because you can't, she can't investigate stuff that
25       she doesn't know that exists.
```

-11-

 1            MR. PRASAD:  Right.

 2            THE COURT:  Okay.

 3            MR. PRASAD:  I follow.  I mean, that's why I

 4    asked Investigator Love this morning if there was anyone

 5    else that was shown a line-up.  And he did not show

 6    anyone else a line-up, except for the -- He spoke, he

 7    was with other officers who spoke to other witnesses in

 8    this case who have been shown line-ups and those line-

 9    ups have already been turned over to Ms. Rock,

10    specifically of Mr. Bailey and Mr. Allen.

11            THE COURT:  So, Ms. Rock get the people that

12    were in the line-up, photos of the people in the line-up

13    that Mr. McFadden saw back on whatever date that he saw?

14            MR. PRASAD:  She has all the different photo

15    line-ups that were ever created in this case, if there's

16    blank line-ups that were created in this case.

17            THE COURT:  There was one that was created

18    by Mr. Love.  The one where you said that he said that

19    Mr. McFadden picked out three people.  And Mr. Mackie

20    didn't know that Mr. Love did a line-up with Mr.

21    McFadden?  Mr. Mackie, did you know that Mr. Love had

22    conducted a line-up?

23            SERGEANT MACKIE:  No, sir.

24            THE COURT:  Mr. Love, who directed you to do

25    the line-up?

                          -12-

1                    INVESTIGATOR LOVE:  I was a member of the

2          squad and I was assisting Sergeant Mackie with Sergeant

3          Lalone.

4                    THE COURT:  So, one them really should have

5          known what you were doing.  I know you weren't operating

6          on your own.

7                    INVESTIGATOR LOVE:  I was with Sergeant

8          Lalone.

9                    THE COURT:  So, how come that message or

10         information wasn't conveyed?  And it still should have

11         been coordinated through Mr. Mackie, yes?

12                    INVESTIGATOR LOVE:  Well, yes.  Sometimes,

13         yes.  I'm not going to say all the time because a lot of

14         times--

15                    THE COURT:  (Interposing)  No.  I said it

16         should be coordinated through the--

17                    INVESTIGATOR LOVE:  (Interposing)  Yes, sir.

18                    THE COURT:  If anybody should know what

19         you're doing, Mr. Mackie should know what you're doing.

20                    INVESTIGATOR LOVE:  That's correct.

21                    THE COURT:  That's what I'm saying.  Okay.

22         Did you at least notate or have a copy of the line-up

23         that Mr. McFadden looked at?

24                    INVESTIGATOR LOVE:  No.  I don't.

25                    THE COURT:  And there's no way for you to

                                   -13-

1    recreate that in terms of who was in that line-up and...

2              INVESTIGATOR LOVE:  No, sir.

3              THE COURT:  You don't have to keep looking.

4    There is none.  Mr. Love says he didn't create a copy

5              MR. PRASAD:  No, sir.  What I have provided,

6    what was in the police jacket and what I provided to Ms.

7    Rock was there were a couple of line-ups that were

8    unmarked completely, that were not used, you know, like

9    they're not marked by the witness or anything like that.

10   So, I was going to look at those and see if, and show

11   them--

12             THE COURT:  (Interposing)  He says he didn't

13   do it.  That's what Mr. Love just said.

14             MR. PRASAD:  Okay.  That's what I was trying

15   to find, but...

16             THE COURT:  That's why I stopped you.

17   Because there is no document.  And one cannot be

18   reproduced.  So, what's Mr. McFadden's purpose in the

19   trial?

20             MR. PRASAD:  He is one of the res gestae

21   witness, your Honor.

22             THE COURT:  What is his purpose?  You've

23   identified who he is.  What is his purpose in calling

24   him to testify?

25             MR. PRASAD:  Well, he gave a statement as

-14-

1          towards, similar statements of identification describing

2          the shooter.  And he also gave some similar statements

3          of identification describing the shooter and he also

4          gave some statements in terms of what happened.  Quite

5          frankly, his statements, in some respects are

6          corroborative of all the other witnesses and in some

7          respects are quite different.

8                    THE COURT:  Right.  But the question then

9          becomes in that line-up, was Mr. Howard one of the

10         persons in the line-up that he viewed.  And if Mr.

11         Howard was, then Mr. Howard would not have been

12         identified unless he was one of those three people.  And

13         I'm guessing that he wasn't one of those three people

14         because then a document would have been made.  So, how

15         do we know that Mr. Howard wasn't in there?

16                    MR. PRASAD:  We don't.  Because there was

17         two -- And I don't know if the Court's aware of this or

18         not.  Initially--

19                    THE COURT:  (Interposing)  I don't know any

20         of--

21                    MR. PRASAD:  (Interposing)  Okay.

22         Initially, at the very start, there was another person

23         who was a possible suspect in this case that was used.

24         And that person was utilized in the photo line-up, in

25         the photo line-up and shown to a person and eventually

1      that person was eliminated as a suspect, but -- And Mr.

2      Howard was then found out to be the true suspect of

3      interest.  But I do not know if the line-up shown to Mr.

4      McFadden was the line-ups that included the first

5      suspect or the first person of interest or if they were

6      the ones that included Mr. Howard.

7              THE COURT:  Because if it included Mr.

8      Howard and he didn't pick it--

9              MR. PRASAD:  (Interposing)  It did not

10     include Mr. Howard.  I'm sorry.

11             THE COURT:  Yeah, but you know, that's like

12     saying that we really had a line-up.  And you can't even

13     prove that you had a line-up.  Right?  There is no

14     documentation to support that there was a line-up that

15     Mr. McFadden took part in.

16             MR. PRASAD:  Correct.

17             THE COURT:  Okay.  So, there's no way to

18     document who was in that line-up.

19             MR. PRASAD:  It's a time of -- What Sergeant

20     Mackie's trying to tell me is that--

21             THE COURT:  (Interposing)  I gotcha.  He's

22     going to say it's before and, therefore, since it was

23     before it didn't include him.

24             MR. PRASAD:  Correct.

25             THE COURT:  How does he know?  How does he

-16-

1      know the other three people that were generated as

2      possible suspects to filler for the other guy that was?

3                  MR. PRASAD:  Because there were -- I mean,

4      that's what I was trying to get across to the Court,

5      your Honor, is that this line-up for Mr., that had Mr.

6      Miller, the first person of interest in it, they were

7      created, they were created and they were in the police

8      jacket, blank ones, that were unused.  And they were

9      provided to Ms. Rock.  And those unused line-ups do

10     exist of the ones that were used that were--

11                 THE COURT:  (Interposing)  Not that Mr. Love

12     used.

13                 MR. PRASAD:  I don't think he generated a

14     separate one from the ones that were already generated,

15     Judge.

16                 THE COURT:  Was his name on all the other

17     ones?  Did--

18                 MR. PRASAD:  (Interposing)  No.  They were

19     blank.  That's what I'm saying.

20                 THE COURT:  Right.  But he did one for one

21     person specific, right?  He conducted it just for Mr.

22     McFadden, right?

23                 MR. PRASAD:  My point is they would be taken

24     right out of the same six pack.

25                 THE COURT:  That would be a nice assumption,

1    but he can't say that.  That's what you would like to

2    believe, but there's no way that you can prove that.

3              MR. PRASAD:  That's, I mean, that's, I mean,

4    that's what logically the officers would do.

5              THE COURT:  How does he know what he took

6    around if he doesn't know what he took around?  Mr. Love

7    can't tell you what he took around.  Because, if so, you

8    should be able to give it to him and say, is this what

9    you took around?

10             MR. PRASAD:  Well, that's what I was trying

11   to find, sir.  That's why I was looking in my file.

12   That's what I was trying to find to ask him if this is

13   what he took around.

14             THE COURT:  Okay.  You can do that.

15             MR. PRASAD:  Okay.  I mean, that's what--

16             THE COURT:  (Interposing)  Right.  And he'll

17   say -- Right.  And he'll say, come on, man.  I don't

18   know what I took around.  I didn't sign it, you know.

19   Come on.

20             THE COURT:  Anything else, Ms. Rock?

21             MS. ROCK:  Yes, your Honor.  I just wanted

22   the Court to be aware, too, on September 9th we had

23   gotten an order to have Mr. Allen's clothing tested.  I

24   sent a letter out to Lieutenant Pearson right away.  I

25   made contact with Lieutenant Krump.  When I initially

-18-

1     talked to the prosecutor, they thought they didn't have

2     the clothing.

3               When I talked to them on Tuesday, the 21st,

4     and the 17th when I looked at the file in September, the

5     prosecutor advised me that they did locate the clothing.

6     The clothing apparently arrived this morning, I think.

7     I talked to Lieutenant Pearson on the 23rd.   They think

8     Lieutenant Krump will be able to look at it tomorrow,

9     the 24th.

10              Besides the line-up and probably Mr. Love, I

11    wanted to also know who else Investigator Barbara Simon

12    showed the cell phone picture to when she was talking to

13    individuals--

14              MR. PRASAD:  (Interposing)  She didn't show

15    the cell phone picture to anyone.

16              MS. ROCK:  All right.  She didn't show it to

17    absolutely anyone?

18              THE COURT:  Okay.  So, you're just trying to

19    find out the gunshot residue test on the clothes?  What

20    else?

21              MS. ROCK:  Well, and also the prosecutor

22    advised me that there is not a survey sheet done by Ms.

23    Simon.  Is that correct?

24              MR. PRASAD:  Correct.

25              MS. ROCK:  And I'm waiting for an exhibit

-19-

1        list by the prosecutor.  I asked for the dates of birth

2        of their witnesses so we could do a criminal record

3        check.  I have a Court order for that.  I think it's

4        back in July.  We're still trying to schedule interviews

5        with three of their witnesses.  We've been trying to do

6        that since September 7th.  There's three remaining

7        witnesses.  As a result of -- On September 7th--

8                THE COURT:  (Interposing)  Who are the

9        witness, ma'am?

10               MS. ROCK:  That would be McLendon, Shaquille

11       McLendon, Shannon Palmer and Leonard Cunningham.

12               MR. PRASAD:  Judge, if I could just answer

13       that really quickly?

14               THE COURT:  You may, please.

15               MR. PRASAD:  Mr. Palmer, according to his

16       grandmother, has moved to Ohio.  We're trying to

17       ascertain whether his grandmother is giving us a line or

18       not.  But Mr. Palmer has not been able to get served by

19       us because he's not at the residence where he's supposed

20       to be and his grandmother, who does live there--

21               THE COURT:  (Interposing)  Okay.  How about

22       McLendon?

23               MR. PRASAD:  The phone numbers for the other

24       two witnesses that she indicated, the phone numbers are

25       no longer active, so the officers are going to try to go

1      to their houses and find them, you know, physically find

2      them.

3                  THE COURT:  Have they been, are they subject

4      to subpoena because you require them in your--

5                  MR. PRASAD:  (Interposing)  No.  Mr. Palmer

6      was the only one that I was going to serve as well, the

7      only one I endorsed because in terms of his statements

8      he's the one that gives an actual description of some of

9      the events.

10                 THE COURT:  Okay.  Were you supposed to make

11     Mr. McLendon and Mr. Cunningham available for Ms. Rock?

12                 MR. PRASAD:  Yeah.  Correct.  Because she

13     wanted to interview them, so we were making efforts to

14     go find them, to have--

15                 THE COURT:  (Interposing)  And how long have

16     we been trying to find those two guys now?

17                 MS. ROCK:  September 7th.

18                 MR. PRASAD:  Well, that's when she -- Yeah.

19     She requested them back then.

20                 THE COURT:  So, when did we call to find out

21     that the names weren't good?  And how long are we going

22     to wait to actually drive over to a house to find them?

23                 MR. PRASAD:  I think the officers are going

24     to go today, Judge.

25                 THE COURT:  Oh, but when did we know that

1      the phone didn't work, was my question?

2                    MR. PRASAD:  Yesterday, sir.

3                    THE COURT:  Just yesterday.  So, even though

4      she asked four weeks ago, the phone call was just made

5      yesterday to make them available and trial starts on

6      Monday?

7                    MR. PRASAD:  Yes, sir.

8                    THE COURT:  Come on.  How does that make

9      sense, that you wait for four weeks just to try to

10     comply with an order of the Court?  How does that make

11     sense?

12                    MR. PRASAD:  I understand what the Court's

13     saying, Judge.  We're not--

14                    THE COURT:  (Interposing)  No.  No.  No.

15     How does that make sense in giving a person an

16     opportunity to prepare.  I mean, that's like you knowing

17     that there's a test on Monday and the teacher teaches,

18     you know, reviews it on Friday and gives you a month's

19     worth of test and information on Friday and says be

20     ready on Monday.  It's like, well, why didn't you start

21     a month ago teaching us the information?  Why are you

22     going to try to teach us all on Friday and test us on

23     Monday?  Explain how that's consistent with just, you

24     know, just fairness.

25                    MR. PRASAD:  Judge, it's not as if, I mean,

                              -22-

1      it's not as if these people are hidden people in terms

2      of--

3                    THE COURT:  (Interposing)  Yes.  But if you

4      said, we're not giving you the phone numbers, we're not

5      giving you the address, you have to come through us and

6      that request is made a month before trial and you decide

7      to make an effort three days before trial, how is that

8      fair is my question?

9                    MR. PRASAD:  I understand what the Court's

10     saying, Judge.  I'm not, I'm not trying to argue against

11     you.

12                   THE COURT:  I'm just asking do you think

13     it's -- No.  I'm asking you, do you think that that's

14     fair?

15                   MR. PRASAD:  It's not ideal, but we're

16     trying to get the work done.

17                   THE COURT:  No.  Do you think that it's fair

18     is my question?  That somebody waits until two days,

19     three days, business days before trial to make an effort

20     when somebody was trying to find out what they knew a

21     month ago?  Is that your definition of fair?  Forget

22     ideal.  Is that your definition of fair so that I know

23     that when I deal with you I know your definition of

24     fair?  Fair is two days before trial we'll turn over the

25     information?

                                   -23-

```
 1                   MR. PRASAD:  No, sir.  We don't want to do
 2        that, obviously.
 3                   THE COURT:  I didn't ask you wanted to do
 4        it.  I want to know your definition of fair.  Is that
 5        your definition of fair?
 6                   MR. PRASAD:  It's too open-ended of a
 7        question, Judge.  To be--
 8                   THE COURT:  (Interposing)  No.  It's not.
 9        It's very--
10                   MR. PRASAD:  (Interposing)  Yes, sir--
11                   THE COURT:  (Interposing)  Very direct.  Is
12        that fair?  Is that fair that no efforts are made until
13        two days before trial when you knew to make those
14        efforts a month ago?
15                   MR. PRASAD:  I mean, it's not the way it
16        should have been done.  I agree.  But it's not, it's not
17        -- In terms of whether or not Ms. Rock will have the
18        information she needs in terms of whether she'll be able
19        to be prepared--
20                   THE COURT:  (Interposing)  Right.  I'll tell
21        you what--
22                   MR. PRASAD:  (Interposing)  She will--
23                   THE COURT:  (Interposing)  That test we're
24        going to give you on Monday, we'll tell you what it
25        covers on Friday and we'll give you two days to prepare
```

1     instead of giving it to you a month before the test to
2     give you a month to prepare.  Oh.  Well, it might not be
3     ideal, but at least you'll have the subject matter that
4     we're going to cover on Monday.  We think that that's
5     fair.  That's plenty of time.  So, now I understand your
6     definition of fair, any time before trial is fair.
7     That's your definition.
8               MR. PRASAD:  No, sir.  I'm not trying to--
9               THE COURT:  (Interposing)  Well, then give
10    me your definition.
11              MR. PRASAD:  I'm not trying to--
12              THE COURT:  (Interposing)  You can't because
13    it's too open-ended.
14              MR. PRASAD:  It is too open-ended, sir.
15              THE COURT:  Okay.  What is fair in this
16    instance?  Let's make it real closed.  Let's make it
17    real closed.  In the witness that Ms. Rock had asked for
18    in August, when do you think that she should have had
19    the information so that it would be considered a fair
20    amount of time before trial to prepare?
21              MR. PRASAD:  And this is where I want to
22    make my explanation, Judge, is that these witnesses that
23    Ms. Rock is talking about, she's had from the very get-
24    go statements from these witnesses.  It's not as if
25    these witnesses are in a vacuum whose names are the only

1      thing that she's ever had.  She's had statements from

2      these witnesses, so--

3                    THE COURT:  (Interposing)  Okay.  So, when

4      she has statements from them, then there's no obligation

5      to produce them.  So, why didn't you say, Judge, we

6      don't need to produce them, she has statements from

7      them?

8                    MR. PRASAD:  Because in effort of what the

9      Court is saying, of fairness, we are, if Ms. Rock

10     requests that of us, we are trying to do it.  I mean,

11     it's not--

12                   THE COURT:  (Interposing)  Yes.  No.  You

13     don't try to do something when you wait two days before

14     trial to make an effort.  That's not trying.  That isn't

15     even substantial compliance.  That's barely.  The only

16     thing worse would be one more day later.  Okay.  We're

17     going to train this group over here for the marathon six

18     weeks before the marathon.  And this other group, we're

19     going to start your training two days before the

20     marathon.  You knew the marathon was coming, but we're

21     not going to give you the training or the coach until

22     two days beforehand.  Well, you knew the date of the

23     marathon.  So, now it's back on Ms. Rock--

24                   MR. PRASAD:  (Interposing)  No, sir.

25                   THE COURT:  Because she had the statements

1      and so she should be prepared?

2                MR. PRASAD:  No.  No.  That's not what I'm

3      saying.  I'm saying is that, it's not, it's -- I'm

4      trying to differentiate between apples and oranges.

5      This is not a situation where Ms. Rock only has heard of

6      these people by name and has no concept of who these

7      people are.  These are people that Ms. Rock has had

8      statements from from the very get go.

9                THE COURT:  Right.

10               MR. PRASAD:  So, I'm trying to differentiate

11     between apples and oranges.

12               THE COURT:  Okay.  So--

13               MR. PRASAD:  (Interposing)  It's not a

14     circumstance where -- Because I know what the Court's

15     suggesting.  There's many times where evidence is

16     plopped down, you know, a week before that one side or

17     the other has never even heard of before.  This is not

18     that kind of case.

19               THE COURT:  Are these, are these question-

20     and-answer statements?

21               MR. PRASAD:  Yes, sir.

22               THE COURT:  Okay.

23               MR. PRASAD:  It's the witness statements.

24               THE COURT:  And if you think, as a lawyer,

25     and if she thinks as a lawyer, and if I think as a

1    lawyer question-and-answer statements are sufficient,

2    well, blow me down, as the statement goes.  Well, blow

3    me down.  Wasn't that Popeye's statement?  Well, blow me

4    down.

5          Questions and answers have never been

6    sufficient.  I have yet to listen to some cross-

7    examination or direct examination that didn't contain

8    real good nuggets that exceeded the statement because

9    the statements were question-and-answer.  They don't

10   give the person the opportunity to write the statement.

11   They always say, well, did they say you could include

12   whatever you wanted to in the statement?  We know why

13   people want to interview witnesses.

14          MR. PRASAD:  That's why I would never

15   interfere with her ability to do so.

16          THE COURT:  No.  It's because everybody

17   knows that the Q & A ain't never been sufficient, never.

18   That's why they always want to -- Because what they want

19   to know is past what a police officer might have been

20   interested in memorializing.  Yeah.  That gives you the

21   -- That prompts your interest.  So, her interest was

22   prompted a month ago.  She's been itching for a month

23   and you decide to scratch her two days, I mean, twenty-

24   seven days later.  And it wasn't an outrageous request.

25          Where would we be had she not talked to Mr.

-28-

1    McFadden?  If we use that just as a baseline, then she

2    needs to talk to all of them.  If that's just the

3    baseline.  Because now we know that things that didn't

4    exist were done and nobody has anyway of knowing unless

5    you talk to them.

6              And now what?  What if they tell her

7    something?  Oh, I did a line-up, too.  Or no, no.  I did

8    this.  Oh.  Yes.  I talked to that person?

9              When is the gunshot residue test supposed to

10   be completed?

11             MS. ROCK:  He said that he's going to be

12   able to look at it tomorrow, your Honor.  I don't know

13   that he'd have a report ready, but that what Lieutenant

14   Pearson said, that Lieutenant Krump should be able to

15   look at the evidence tomorrow.

16             The only other problem I have is I made

17   copies of most of my file and took my autopsy photos and

18   my medical records to Dr. Dragovich on Friday, last

19   Friday because I had difficulty getting the autopsy

20   photos.

21             THE COURT:  And?

22             MS. ROCK:  And he called me this morning and

23   said he needs to meet with me personally because there

24   was something unusual that doesn't make sense.  So, now,

25   between now and the trial I'm supposed, I'm, you know, I

-29-

1        need to meet with Dr. Dragovich to find out what he

2        finds that doesn't make sense in the case or whatever --

3        He didn't say specifically what it was.  He left me a

4        message, so--

5                    THE COURT:  (Interposing)  Okay.  So, when

6        are you going to meet with him?

7                    MS. ROCK:  Well, that's what I wanted to

8        talk to the Court about because--

9                    THE COURT:  (Interposing)  So, when are you

10       going to meet with him?

11                   MS. ROCK:  Well, I'm hoping that we're not

12       doing the trial next week.

13                   THE COURT:  And why is that?

14                   MS. ROCK:  Because I don't think it's fair

15       to my client that I'm getting -- We need to be talking

16       to, as the Court said, we need to be re-interviewing the

17       witnesses, some of the witnesses based on--

18                   THE COURT:  (Interposing)  The prosecution

19       believes that it would be fair for you to proceed to

20       trial on Monday.

21                   MR. PRASAD:  Judge, I'm not objecting to an

22       adjournment-

23                   THE COURT:  (Interposing)  No.  No.

24                   MR. PRASAD:  If the defense is requesting

25       it.

                              -30-

1               THE COURT:  No.  No.  I didn't say object.

2       You don't have to object to think that's not fair.  You

3       think that it's fair.  Because if you didn't think that

4       it would be fair, you would be requesting the

5       adjournment.

6               MR. PRASAD:  Judge, then I would join her in

7       her request.  I'm not--

8               THE COURT:  (Interposing)  No.  See, when

9       you stand silent--

10              MR. PRASAD:  (Interposing)  Don't

11      misunderstand me.  I'm not--

12              THE COURT:  (Interposing)  That doesn't mean

13      that you think that an adjournment is, is necessary.

14      You're just saying, well, you know, no big deal.  If you

15      want to, I won't object.

16              MR. PRASAD:  No.  No.

17              THE COURT:  See, there's a difference

18      between not objecting and concurring.

19              MR. PRASAD:  Then let me be very clear then.

20      I concur in her--

21              THE COURT:  (Interposing)  Why do you concur

22      that an adjournment--

23              MR. PRASAD:  (Interposing)  Because I want

24      her to be prepared.

25              THE COURT:  But you already think that she

1      should be.

2                    MR. PRASAD:  Judge, I can't--

3                    THE COURT:  (Interposing)  You're just not

4      being, you're just not being an obstacle, but you're not

5      agreeing that the essence of the discovery orders

6      haven't been met and that justice requires you to ask

7      for an adjournment or to concur with her.  You're just

8      saying, well, you know, it would be easier probably for

9      her to digest this information that's coming whenever

10     it's coming if we don't proceed on Monday.  But I think

11     we've complied substantially and I don't think that it

12     would be unfair to go forward.

13                   MR. PRASAD:  No, your Honor.  I'm not --

14     What I'm trying to say is, Judge, I concur in her

15     request for an adjournment.  I want Ms. Rock to be

16     completely prepared for trial.  So, in those terms, I do

17     want, I am asking to concur in your request for an

18     adjournment so that we're clear about that.

19                        But I want the Court to understand, I know,

20     and your Honor and your brethren on the bench in this

21     building are all the same in terms of if we have a firm

22     court date the onus is on the prosecution always to make

23     sure you are ready on that date.

24                        And so, I am working in both avenues to

25     affect both solutions.  One, I am completely joining in

1      Ms. Rock's, Ms. Rock's request for an adjournment.  I do

2      agree that it would be proper so that Ms. Rock can be

3      fully prepared.  I agree.

4              But secondly, I did not want to come to this

5      Court on Monday and see we're not ready to proceed.

6      Because I know that the detriment is only going to be to

7      me.

8              THE COURT:  No.  You know who it's going to

9      be to?  It's going to be, we're going to be asking our

10     questions, is a three-month period of time when we know

11     the trial date an adequate time to expect?  Is it a

12     reasonable time to expect that things should -- That's

13     what we would be asking--

14             MR. PRASAD:  (Interposing)  Well, I--

15             THE COURT:  (Interposing)  And then we would

16     ask the question, if that answer is no, from June the

17     3rd until September the 27th isn't enough advance

18     notice, the question would become, okay, so do we need

19     to do more testing and discovery before the warrant is

20     signed so that then we don't need five more months to

21     complete the discovery after the person gets charged?

22             Because this is almost a four-month lag

23     between the final conference date and the trial date.

24     It's not that we squoze it in in six weeks, you know.

25     That's what we're talking about.  It's not a last effort

                              -33-

1    by Ms. Rock to ask for something.  Lord.  How long has

2    she been asking for what she's wanted?  Can I just get

3    this picture?  Can I just get that picture?  Can I just

4    get this test?  Every other week she's in here.  How

5    many times has she called you?  Has she called you more

6    than the average lawyer?

7              MR. PRASAD:  Yes, sir.

8              THE COURT:  Okay.  So, it's not like that

9    she's been lagging back.  She's been screaming, I need

10   this to be ready.  I need this to be ready.  So, it's

11   nothing that she hasn't done.  She has been diligent.

12             MR. PRASAD:  She has been.  I'm not saying

13   she has not been.

14             THE COURT:  More than.  And so, you know,

15   getting it is like on your end.  You all should be

16   asking for it even without her because you haven't

17   fulfilled the discovery request that she's asked for.

18             MR. PRASAD:  And, Judge, to be fair,

19   Sergeant Mackie's been providing things week after week

20   after week.

21             THE COURT:  No.  No.  And to be fair, it's

22   not -- Some would say how come all of this just wasn't

23   provided?  And, again, the answer to that is like you

24   suggested, because sometimes discovery is ongoing.  No

25   problem with that.  But has she been asking for stuff as

                              -34-

1        it's been done or is she asking for things that were

2        already in existence?

3                    MR. PRASAD:  Some were and some weren't.

4                    THE COURT:  Exactly.  Some of it's mixed.

5        Now, that other stuff that's already been existing, she

6        shouldn't have to be asking for that still or waiting

7        for it.

8                    THE COURT:  Well, some of that stuff, Judge,

9        like for example, like different officers activity logs.

10       They're not normally kept with a case file.  Those are

11       things that Sergeant Mackie had to go and get himself--

12                   THE COURT:  (Interposing)  I got you.  But

13       it's not like we have to wait on a lab to provide it.

14                   MR. PRASAD:  Right.

15                   THE COURT:  Or a hospital.  They are things

16       that are already memorialized.  They're just in a

17       different place.

18                   MR. PRASAD:  Right.

19                   THE COURT:  And it ain't like we got to go

20       to Chicago to get it.

21                   MR. PRASAD:  Right.

22                   THE COURT:  It's like easily accessible.

23       It's not like that it would take three weeks to find our

24       way over there.  It's like -- Because that's like

25       picking up the darn phone and waiting three weeks to

1    pick up the phone.  That's -- There's no way that you

2    can tell me that that's helping.

3              MR. PRASAD:  No.  I mean, I understand what

4    the--

5              THE COURT:  (Interposing)  Right.  On those

6    three.

7              MR. PRASAD:  No.

8              THE COURT:  No way, oh, we just decided to

9    pick up the phone three weeks later and, surprise, the

10   phone has been changed.  I don't even believe in phones,

11   you know.  That was, you know, maybe when folks were

12   into land lines, one could consider a phone as a

13   reasonable method to contact people with.  But, you

14   know, especially if they tell you their provider is

15   Metro PC.  It's like, no, no.  Give me your address,

16   your mama's address and your grandmama's address.

17             I don't think that that is even a reasonable

18   way to contact people.  And I can't believe that we

19   accept Metro PC as a number.  But, again, you know, it's

20   easy to say, we called him and we can't find him.

21             That's not what I would use if I was trying

22   to date somebody and make sure that I dated that person.

23   Oh, yeah.  Where do you live?  You at least want to know

24   where you live.  What kind of car you drive?  So you can

25   spot the car.

                              -36-

1          Okay.  Now, this becomes the bigger problem

2     because I don't know if you care about my docket, not

3     that I care about my docket, I'm setting trials in

4     January, late January because there's three weeks in

5     our, four weeks, the Christmas holiday and the

6     Thanksgiving holiday that are kind of making trials a

7     little difficult to squeeze in.

8          And I don't know anybody, I certainly know

9     that the two Judges who I serve as their alternates, do

10     not want to take this trial so that Mr. Howard doesn't

11     have to be detained any longer than necessary or any of

12     this other stuff, you know.  Because the longer we do

13     it, actually the more likely it is that witnesses start

14     being harder to find, you know.  That's the reality of

15     it.  The longer you push this stuff of, man, if you

16     don't think you can find three of them now, in three

17     months, you're going to have a bunch more, more than

18     likely, to be even more difficult to get in touch with.

19          But that's what you're looking at.  I can't

20     do it.  I'll grant the adjournment, but there's no way

21     in this world that I can do this trial before January.

22     I'm not going to dismiss the case.  So, that part of the

23     motion is denied.  My Lord.

24          MR. PRASAD:  Judge, Sergeant Mackie had a

25     suggestion.

-37-

1                THE COURT:  I'm listening.

2                MR. PRASAD:  For counsel and for some of the

3     issues that we discussed today.  Since we have

4     subpoenaed all the ones that, at least the ones, all the

5     civilians that I endorsed for Monday, if they're here

6     Monday, is counsel interested in--

7                THE COURT:  (Interposing)  That would be

8     beautiful.  Okay.  But give me the flip side of that.

9     What is the solution if they don't show up?  Are we

10    issuing bench warrants?

11               MR. PRASAD:  Well, I would probably come to

12    the Court prior to whatever our new trial date is and

13    ask for the detainer.  Yes, sir.

14               THE COURT:  So, for everybody that doesn't

15    show up on Monday that's a civilian and a police

16    officer, that doesn't show up on Monday, we're going to

17    ask for a bench warrant?

18               MR. PRASAD:  Not now.  I mean, obviously I--

19               THE COURT:  (Interposing)  No.  We're

20    talking about on Monday.

21               MR. PRASAD:  No.

22               THE COURT:  Why not?  Don't we want to see

23    who's going to show up?  Or are we going to suggest that

24    the police officers will just show up so we can cancel

25    them and just have all the civilians show up?

1          MR. PRASAD:  That's what I was going to

2     suggest because that's what Ms. Rock, is what the Court

3     is representing what you wanted to--

4          THE COURT:  (Interposing)  Hey, the way

5     she's talking, she wants to talk to Mr. Love some more.

6     No.  See, I would think that if, if we segregate the

7     police from it, the assumption is that they've done

8     everything correct and by the book.  And we know that

9     that's not true.

10         So, why shouldn't Ms. Rock have the

11    opportunity to talk to those police to see if there was

12    anything more?  I mean, you know, if you and I had just

13    been talking regularly, we would never suggest that

14    there was something that wasn't documented.  But that's

15    just not policy.  But now we know that that happens, and

16    I always knew it did, you know, you might have doubted

17    it, but this is not new.  Then why should we exempt them

18    from having to appear so that if Ms. Rock wants to ask

19    them any other questions, she won't have to wait until

20    trial, the next trial?

21         MR. PRASAD:  That's fine, Judge.  I just

22    know that some of the witnesses, like the doctor from

23    the medical examiner's office and the MSP people--

24         THE COURT:  (Interposing)  We can exempt

25    some.

-39-

```
1                    MR. PRASAD:  Yeah.  I was going to say I
2       already put them on standby for different days of the
3       week.  I mean--
4                    THE COURT:  (Interposing)  So, they're not
5       coming anyway, and that's Ms. Loewe and maybe not the
6       identifier, but, you know, I'm looking at this witness
7       list and I don't see why everybody shouldn't come and
8       Ms. Rock have a chance to talk to them and, you know, I
9       know that you don't need Mr. Fitzhugh here probably.
10                   MR. PRASAD:  No.
11                   THE COURT:  But, you know, she wants to talk
12      to Barbara Simon from--
13                   MR. PRASAD:  (Interposing)  Right.
14                   THE COURT:  The way it sounds to me.  And I
15      don't know if she wants to talk to Mr. Mackie anymore,
16      not that -- You took it the wrong way because I'm sure
17      they've been talking--
18                   MR. PRASAD:  (Interposing)  Yes.  They have.
19                   THE COURT:  That's what I'm saying.
20                   MR. PRASAD:  I agree.  That's why I was
21      smiling.  I know that.
22                   THE COURT:  Maybe he doesn't want to talk to
23      her anymore.  But, again, you know, she still wants
24      these other people produced who I'm going to take it
25      that have not been endorsed?
```

-40-

1                    MR. PRASAD:  No, sir.  The other two,

2        besides the--

3                    THE COURT:  (Interposing)  No.  No.  No.

4        I'm sorry.  Sergeant Martel, Barnes, Wilkerson--

5                    MR. PRASAD:  (Interposing)  Correct.

6                    THE COURT:  Pessmark, all of them are

7        still--

8                    MR. PRASAD:  (Interposing)  I provided --

9        Sergeant Mackie's already notified them and I provided

10       subpoenas for Sergeant Mackie once I got the list from

11       counsel.

12                    THE COURT:  Okay.

13                    MR. PRASAD:  But you're correct.  I did not

14       endorse them myself.

15                    THE COURT:  Okay.  So, those people for sure

16       should be here on Monday.  And what if they don't come

17       on Monday?  Then can we issue a bench warrant for all of

18       them?

19                    MR. PRASAD:  I would not be requesting it,

20       but defense counsel might.

21                    THE COURT:  Well, if they don't comply, how

22       come you can't say, listen, they're supposed to comply?

23       We concur.  They need to be here.  If they're going to

24       ignore -- No.  We want them here.

25                    Okay.  So, the only people that are exempt

-41-

1        from showing up will be Dr. Loewe, unless Ms. Rock wants

2        to interview her.  Because if she has some questions

3        that she might want to ask based on the new information

4        that she has, why shouldn't she, why shouldn't you make

5        Dr. Loewe available?

6                    MR. PRASAD:  I can make her available,

7        Judge.  Just in practice, and I'm sure the Court's well

8        aware--

9                    THE COURT:  (Interposing)  Right.  No.

10       That's why I said, standby is all right.  But she might

11       say, you know, based on what I've got now I want to ask

12       the woman some questions.

13                   MR. PRASAD:  No.  I understand that.  I'm

14       saying she just needs to tell us what time--

15                   THE COURT:  (Interposing)  And I'm going to

16       tell her to turn that report over to you.

17                   MR. PRASAD:  From Dr. Dragovich?

18                   THE COURT:  Yeah.

19                   MR. PRASAD:  Yeah.

20                   THE COURT:  Even though you haven't filed a

21       motion for reciprocal discovery, I'm going to do that.

22                   MR. PRASAD:  Thank you.

23                   THE COURT:  I'm ordering that. Okay.  Al

24       that to say.  I have the 10th of January.

25                   MR. PRASAD:  That's fine, Judge.

-42-

1          MS. ROCK:  Perfect.  I have Michael Jackson

2     in here on the 11th, but I'm sure we can, you'll -- He's

3     out on bond, so...

4          THE COURT:  So, if you want to contact

5     Michael Jackson -- I know what you're saying.  Let's go

6     find the crystal ball and bring him into the room with a

7     breeze and some chimes and a little incense.  No.  If

8     you could just bring him in any day soon, we can just

9     give him a new trial date.

10          MS. ROCK:  Okay, your Honor.  Your Honor, I

11     would like to address the issue of bond though because

12     Mr. Howard has been sitting there at the youth home for

13     several months now.

14          THE COURT:  Okay.  What I'll do is I'll give

15     you all an opportunity to give me you versions of what's

16     fair.

17          MS. ROCK:  Okay.

18          THE COURT:  And then I'll make a decision

19     based on whatever you all decide that it's fair.  Do you

20     think that his bond should be adjusted?

21          MR. PRASAD:  No, sir.

22          THE COURT:  See?  He thinks that his delay

23     shouldn't have any impact on your client's bond.  So,

24     you can file another motion about how the delay and

25     failure to comply with discovery, what impacts that

-43-

1       should have on juveniles in custody, if any.  And then

2       we'll see what kind of response that the law might bring

3       to it.  Because I know whenever they're trying to

4       decide, you know, who's asked for the adjournment,

5       they'll say, oh, the defense created the delay.  And so,

6       since the defense created the delay, then the defendant

7       should have no remedies.

8                   MS. ROCK:  Your Honor, would October 4th be

9       a good date for--

10                  THE COURT:  (Interposing)  No.  No.  You

11      file the motion--

12                  MS. ROCK:  (Interposing)  All right.

13                  THE COURT:  Give them a week to respond.

14                  MS. ROCK:  All right.

15                  MR. PRASAD:  Your Honor?

16                  THE COURT:  Yes?

17                  MR. PRASAD:  I noted on the pretrial

18      conference summary, the Court indicated three days.  I

19      believe in all fairness three to four days to try the

20      case.

21                  THE COURT:  With only those few witnesses?

22                  MR. PRASAD:  Twenty-two.

23                  THE COURT:  I didn't count twenty-two.

24                  MR. PRASAD:  I did.

25                  THE COURT:  Let me count them.

-44-

1                      MR. PRASAD:  Maybe twenty-one.

2                      THE COURT:  Can I see the file again, please

3        Mark?  The file, just the file.  Is it the number of

4        witnesses or the length of the witnesses?  Because the

5        numbers don't scare me.

6                      MR. PRASAD:  No.  And actually a lot of them

7        are going to be fairly quick, Judge, but--

8                      THE COURT:  (Interposing)  Okay.  Because we

9        usually do about eleven a day.

10                     MR. PRASAD:  Okay.

11                     THE COURT:  I'm just saying our trial

12       yesterday we did eleven the first day, three the second,

13       had closings, they came up with a verdict.  A week

14       before then, I think we did thirteen in one day.  So,

15       yeah.  I'm not -- And especially if there's not a lot of

16       information that they're going to provide that's

17       contested.

18                     MR. PRASAD:  Your Honor, may I present the

19       reciprocal order for discovery?

20                     THE COURT:  I just ordered it, man.

21                     MR. PRASAD:  I know.  But you're right.  I

22       didn't put one in the file, so--

23                     THE COURT:  (Interposing)  But I'm covering

24       you.  I can't cover you?

25                     MR. PRASAD:  No.  You can, Judge.

-45-

1                    THE COURT:  Because I'm covering you because

2        it's fair, right?

3                    MR. PRASAD:  Yes, sir.

4                    THE COURT:  I'm not going to say, oh, you

5        didn't ask for it, so therefore...

6                    MR. PRASAD:  But you're correct.  I should.

7                    THE COURT:

8                    (At 12:25 p.m. proceedings concluded.)

R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

        I, SEAN E. ALLEN, CSMR 5265, Certified Court Reporter acting in and for the Third Judicial circuit, Wayne County, State of Michigan, do hereby certify that the foregoing pages 1 through 47, inclusive, were reduced to typewritten form and comprise a true rendition of the proceedings taken in the above-entitled matter on September 23, 2010.

        I FURTHER CERTIFY THAT MY CERTIFICATION ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN, SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                                _____
                                SEAN E. ALLEN -- CSMR 5265
                                Official Court Reporter.

DATED:  This 2nd day of April 2012.