STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN


         v                  Case Number

                             10-5562-01


DEONTE HOWARD

                         Defendant.


_____/

BOND MOTION

PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

Judge, Third Circuit Court, Detroit, Michigan, on

October 6, 2010.

APPEARANCES:

                RAJ PRASAD P68519
                Assistant Prosecuting Attorney
                Wayne County Prosecutor's Office
                1441 St. Antoine
                Detroit, MI 48226
                (313) 224-6804

                SUSAN ROCK P34497
                Attorney for the Defendant.
                P.O Box 39287
                Redford MI 48239
                (313) 937-4444


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044

TABLE OF CONTENTS


WITNESSES:  NONE.


EXHIBITS:   NONE.

1          Detroit, Michigan.

2          October 6, 2010.

3          (At 10:33 a.m.)

4          THE COURT:  This is the People of the state

5    of Michigan versus Deonte Howard on 10 5562.  Your

6    appearances, please.

7          MR. PRASAD:  Good afternoon, your Honor.

8    Raj Prasad for the People.

9          MS. ROCK:  Good morning, your Honor, Susan

10   Rock representing Mr. Deonte Howard.  Your Honor, I

11   filed a motion to, for bond reduction, pursuant to MCR

12   6.909 (C).  We're asking that Mr. Howard be released.

13   The trial had to be adjourned because the government was

14   not forthcoming with the evidence and--

15          THE COURT:  (Interposing)  Hold it.  You're

16   claim is of them hiding evidence.  Isn't that what it

17   said?

18          MS. ROCK:  Yeah.  It did.

19          THE COURT:  Okay.  What did they hide?

20          MS. ROCK:  Well, I think they hid the fact

21   that they had, that Mr. McFadden had done a line-up.

22   They had -- And I think that was significant.  And so, I

23   think that if you're dragging your feet until the last

24   minute, I think that's equivalent to hiding because

25   you're holding back evidence that should be turned over,

1    and I think in this particular case, especially with Mr.

2    McFadden.

3              The thing that troubled me also in this case

4    before this motion is, what I put in the motion is that

5    unbeknownst to me, while I tried to interview witnesses,

6    even though the victim's advocator told many of them not

7    to come because the case had been adjourned, two police

8    officers were seen yelling at Mr. McFadden telling him

9    he didn't have to talk to me.  And I thought he was,

10   because the way the officers portrayed him in the

11   courtroom, I thought he was just crazy when I said to

12   him, Mr. McFadden you're next.  I'd like to talk to you.

13   And he said, oh, I have to get my thoughts together.

14             And finally, he did come in to be

15   interviewed.  But I was not aware that he was being

16   yelled at by two police officers telling him that he

17   didn't have to talk to me.  So, do I think that that's -

18   - I mean, we can call it different words, you know.

19   Hiding evidence, masking evidence, stalling, dragging

20   your feet.  But I think that's what's been happening

21   here.

22             And fortunately, Mr. Howard is before this

23   Court, who felt that there was an injustice in terms of

24   trial preparation and witnesses needed to be re-

25   interviewed.  And we had the unusual circumstance of a

-4-

1      line-up not being memorialized, which is unheard of

2      really.  And also with regard to Aundrey Allen when he

3      identified Deonte Miller initially, there's no

4      discussion of that that I recall in the discovery.  I

5      was finally able to look at the police jacket and get

6      all of the information because, you know, I kept

7      insisting on that information.  But--

8              THE COURT:  (Interposing)  Okay.  I got the

9      gist of it.

10             MS. ROCK:  Thank you.

11             THE COURT:  What do you think about this

12     juvenile, specific juvenile court rule, which deals with

13     the time that one has in detention?

14             MR. PRASAD:  Your Honor, the 91-day rule

15     under 6.909 (C) mirrors the rule, the 180-day rule under

16     6.004 (C).  And the analysis specifically within 6.900

17     (C), it cites to 6.004 (C) and to the exceptions, the

18     six exceptions in computation.  And if the Court looks

19     at the exceptions under C, 6.004 (C) under the speedy

20     trial rule there for the computation of the time, there

21     are two specific sections that except the computation.

22     Those specifically, that apply in our case, those

23     specifically are sections, subsection 1 and subsection

24     3.

25             Subsection 1, part of the exception under

-5-

1     subsection 1 for computation is the time required for

2     motion practice.  The Court I'm sure recalls there was

3     several weeks of extensive motion practice from the

4     point of both motions to quash and motions, and a motion

5     in terms of--

6               THE COURT:  (Interposing)  Yes.  But those

7     are factored in between the time that the Court set for

8     trial.  So, there wasn't an adjournment to accomplish

9     that.

10              MR. PRASAD:  No.  You don't need to, though.

11    But the point is that the -- If the Court understands

12    the basic premise of a speedy trial rule and a speedy

13    trial violation, the basic premise of a speedy trial

14    rule is that everyone's ready for trial, the defendant's

15    asserting his right for a speedy trial and if it's not

16    done in X number of time, he needs to be released on his

17    own recognizance because it's not being done in a

18    timely, speedy manner.

19              The basic premise of the exceptions of the

20    rules is that, well, clearly, everyone's not ready for a

21    speedy trial because there's still process of, process

22    of preparation going on, and specifically defense's

23    motions for quash and for identification.

24              In addition, your Honor, subsection 3 of

25    6.004 (C) specifically identifies situations in which

-6-

1       the defendant either requests or consents to a trial

2       date or an adjournment.  In our case, from the very get

3       go, June 4th was our arraignment on our case.

4                  September 27th was the trial date signed,

5       contract signed on June 4th for the September 27th trial

6       date.  At that time, the defense consented to that,

7       specifically by -- And the defendant consented to do

8       that specifically by their signatures.  That in itself

9       is days that you cannot count in terms of the 91-day

10      speedy trial rule in terms of recognizance.  So, I'm--

11                 THE COURT:  (Interposing)  You think

12      anything past 91 days.  But by signing it, you don't

13      waive the period of time between the arraignment and the

14      trial date.

15                 MR. PRASAD:  You are consenting to that --

16      Yes, sir.  You're consenting to that date.

17                 THE COURT:  You're consenting to the date by

18      signing that.

19                 MR. PRASAD:  And even though the date itself

20      is beyond the 91 days--

21                 THE COURT:  (Interposing)  So, you don't --

22      Okay.  So, do you consent to anything past that?

23                 MR. PRASAD:  No, sir.  But then the

24      situation past that, of course, is a situation where

25      defense and I jointly requested an adjournment before

-7-

1    this Court.  So, my argument is that -- My argument is

2    twofold.  It's that if you look at subsections 1 and 3--

3              THE COURT:  (Interposing)  And her, and her

4    choice was to ask, number one, to have the case

5    dismissed -- Because that's originally what she had

6    asked for.  So, that wasn't, okay, I'm agreeing to an

7    adjournment.  I want the case dismissed.  And the basis

8    for the dismissal, as the record well documents, is that

9    all the evidence that the police had had not been turned

10   over to the defense.  It was failure to comply with the

11   discovery order, which was the basis of her motion to

12   dismiss.  Right.

13             So in lieu of -- She didn't give up the

14   motion to dismiss because I ruled against her.  What

15   choice did she have?  She had already placed on the

16   record as it relates to whether she consented to the new

17   date, her disagreement.  Her argument was there should

18   be no next date.

19             MR. PRASAD:  And the Court--

20             THE COURT:  (Interposing)  Right?

21             MR. PRASAD:  And the Court correctly

22   analyzed the fact that dismissal--

23             THE COURT:  (Interposing)  No.  No.  I got

24   you. and--

25             THE COURT:  (Interposing)  I'm fine with

-8-

1    what I did.

2              MR. PRASAD:  Correct.

3              THE COURT:  But I'm saying that was her

4    position.  It wasn't to consent to an adjournment.

5    After that, her arms were twisted.  What was she going

6    to do?  Well, just for the record, I want you to know I

7    disagree with that, but I'll be ready on this date.  It

8    wasn't consenting to an adjournment after that.  I was

9    giving that date.  Period.

10             MR. PRASAD:  I would -- And I respectfully -

11   - I understand what the Court's arguing, but I disagree.

12   Because the defense, I mean, obviously the defense had

13   the options, had the other options, knowing the

14   dismissal wasn't going to happen, defense requested for

15   an adjournment.  I joined that request because I

16   acknowledged, as the Court remembers, that this was a

17   situation where the defense needed more time to prepare.

18   But I'm not--

19             THE COURT:  (Interposing)  It was based not

20   on anything that the defense had or had not done.  It

21   was based on -- Because we went at issue about what is

22   considered to be fair.

23             MR. PRASAD:  No.  I remember the whole

24   conversation.

25             THE COURT:  Right.  And now, to try to say,

1    well, they consented, even though we turned it over with

2    two minutes to go, we complied and because now they're

3    not ready, they have to join in the motion to adjourn.

4    If that was the case, this would be a way to back every

5    defense person into requesting an adjournment and there

6    would never be a position where the prosecution would

7    have to ask for an adjournment because they knew that

8    they were ministers of justice, whether the defense

9    wanted to agree with it or not.  It's only right that

10   the prosecution would ask for an adjournment.  Their

11   obligation is to the defense as well.

12             MR. PRASAD:  No.  I -- Judge, I remember

13   the, I remember the whole discussion--

14             THE COURT:  (Interposing)  So, whether they

15   agreed or not, what does that have to do with anything?

16             MR. PRASAD:  But looking back at the record

17   on that day, I mean, quite clearly, defense was the

18   initial one asking for the adjournment that I joined

19   into.

20             THE COURT:  They initially were asking,

21   again, for the case to be dismissed.

22             MR. PRASAD:  Yes, sir.  I understand.

23   You're, the Court's correct.

24             THE COURT:  That was their position.  Other

25   than that, they had to take what they were given.

-10-

```
1                MR. PRASAD:  But then if the Court's
2       analysis is that, that that, the day that the
3       adjournment was made, which was the 23rd of September,
4       was a date in which the defense did not concede to or
5       was forced to make a request, then the 91 days starts
6       from that day.
7                THE COURT:  I'm with you.
8                MR. PRASAD:  Okay.
9                THE COURT:  I'm good with that.
10               MR. PRASAD:  Okay.
11               THE COURT:  No.  No.  No.  Whatever the
12      initial trial day, whether that's past or not, you know,
13      we know that, again, case law says a congested docket
14      doesn't mean poo.
15               MR. PRASAD:  Right.
16               THE COURT:  You still can't considered a
17      congested docket as it relates to compromising a
18      person's right to a speedy trial.  They don't even
19      compare, a constitutional right to a crazy docket. No.
20      No.  And people can agree and we all agree, well, it's
21      thirteen days over, what the heck.  Okay.  We'll give
22      him a bond, half a million dollars.  Okay.  Now, you got
23      a bond.  So, you know, that way we take the feet, I
24      mean, take the feet out of that kind of argument.  So,
25      we know the clever ways to approach it and not approach
```

-11-

1    it.

2                     But if want to look at it as it really were,

3    every time there's been any motion that Ms. Rock has

4    filed, it has been Judge, dismiss the case.  Dismiss the

5    case because they haven't complied.  Dismiss the case

6    because they haven't complied.  I mean, I don't have it

7    all in front of me--

8                     MR. PRASAD:  (Interposing)  Judge, I mean,

9    to be quite frank, your Honor, you know, filing motions

10   to dismiss based on those grounds are not under the

11   basis of the law.  I mean, the basis of the law are

12   those dismissals are not -- And the Court properly

13   analyzed it.  The dismissals are not the proper remedy

14   to the situation.

15                    THE COURT:  No.

16                    MR. PRASAD:  The proper remedy is forcing

17   the discovery to have happened.  And it did.

18                    THE COURT:  No.  No.  No.  That is not, that

19   is just one of the remedies.

20                    MR. PRASAD:  I know.  But even when the--

21                    THE COURT:  (Interposing)  It is not the

22   only remedy--

23                    MR. PRASAD:  (Interposing)  No.  No.  I

24   agree.  But I'm saying even when the cases look at

25   dismissal as the correct remedy, it is far beyond

1       whatever situation we were.  They--

2                   THE COURT:  (Interposing)  No.  No.  I'm,

3       I'm--

4                   MR. PRASAD:  (Interposing)  It's such an

5       extreme--

6                   THE COURT:  (Interposing)  I'm just saying--

7                   MR. PRASAD:  (Interposing)  No.

8                   THE COURT:  That that's been her position.

9                   MR. PRASAD:  Right.  And my point is--

10                  THE COURT:  (Interposing)  But the point is,

11      at some point, it affects the defendant's right to a

12      speedy trial if the prosecution does not, when it gets

13      the information, or I'm sorry, the police when they get

14      the information to turn it over immediately to the

15      prosecution to turn it over to the defense.  Because you

16      stand in their stead.

17                  MR. PRASAD:  Yes, sir.

18                  THE COURT:  And you often argue, well, I

19      didn't get it.  And that's not the proper argument.

20      Your argument has to be, well, we've always had it.  And

21      it took eight months to give it to the defense.  That's

22      the argument.  The argument isn't, well, you know,

23      Judge, I gave Ms. Rock, I let her see my file.  That's

24      not really the argument.  That has no, no feet, no roots

25      in it.  You stand as the police.  And if the police had

                              -13-

1    it, you had it.

2              MR. PRASAD:  No.  I don't disagree, Judge.

3    And, I mean, I think the Court's even seen in the

4    process of this case, I have been the one forcing them

5    to come in and give her the information.  Even the

6    situation that she cites to her motion about the witness

7    not wanting to talk to her.  I said to Ms. Rock to

8    please let me have a moment to talk to him and she did.

9    She gave me a moment.  I talked to him.  I told him, go

10   talk to her and tell her the truth.  And that's, and

11   that's how he then went and spoke to her.  I mean, I've

12   been trying from the, you know, throughout this whole

13   process--

14             THE COURT:  (Interposing)  Right.  You

15   would--

16             MR. PRASAD:  (Interposing)  Of doing exactly

17   that.

18             THE COURT:  That -- Right.  That the police

19   are new at this.  I mean, that's the appearance that it

20   would give, like this is all new to them in terms of

21   what the law requires them to furnish to you and to

22   defense counsel.  It would appear that [sic].  I would

23   say either they're new and they don't know what to do

24   or, unfortunately, we wouldn't want to draw the other

25   conclusion, would we?

-14-

```
 1                    MR. PRASAD:  No.

 2                    THE COURT:  Okay.

 3                    MR. PRASAD:  Not at all.

 4                    THE COURT:  That's why I stuck with they're

 5        new and this is the first time.  Because to draw any

 6        other conclusion would mean something is very, very

 7        wrong.  But, you know--

 8                    MR. PRASAD:  (Interposing)  Can I address

 9        the other issues--

10                    THE COURT:  (Interposing)  No.  No.  I'm not

11        giving him a personal bond.  That's out of the question.

12                    MR. PRASAD:  Okay.

13                    THE COURT:  I'm sorry.  That is out of the

14        question.  And I'm not releasing him on anything that's

15        trivial either.

16                    MR. PRASAD:  No.  Can I -- I was just going

17        to the normal bond arguments I was going to make in

18        terms of, you know--

19                    THE COURT:  (Interposing)  What?

20                    MR. PRASAD:  Safety to the community and--

21                    THE COURT:  (Interposing)  In terms of his--

22                    MR. PRASAD:  (Interposing)  And to his risk

23        of flight--

24                    THE COURT:  (Interposing)  Prior contacts?

25                    MR. PRASAD:  Yes, sir.  I think the DSU's in
```

-15-

1    front of the Court.  Is that his failure to appear --

2    More than that, Judge, in his DSU, he refers to his

3    mother, Vanita (sp.), and I apologize I forgot her last

4    name, I think it's green, as the person he would stay

5    with.

6            Just so the Court's aware, and Ms. Rock has

7    all these police reports as well, officers after the,

8    after Mr. Howard was properly identified, officers tried

9    to contact Ms. Green and went to her house to find Mr.

10   Howard.  She claimed at that time she had no knowledge

11   of where he was.  And she had a hard time, and they

12   couldn't find him through her.  So, I question, greatly

13   question whether Ms. Green is any place he would be at

14   [sic].  And, finally, Judge--

15           THE COURT:  (Interposing)  But why would you

16   argue anything when they say no action should be done?

17           MR. PRASAD:  And that's what I'm asking.

18           THE COURT:  I mean--

19           MR. PRASAD:  (Interposing)  Yes, sir.  Yes,

20   sir.

21           THE COURT:  And Ms. Rock, you disagree.  And

22   you think what amount of bond is reasonable.

23           MS. ROCK:  Well, your Honor, just a

24   response--

25           THE COURT:  (Interposing)  No.  No.  No.

-16-

1        Don't respond to him.  Respond to me, please.  Okay.

2        So, what amount of bond do you think is reasonable?

3                  MS. ROCK:  Fifty thousand, ten percent.

4                  THE COURT:  No.  There's never been a five

5        thousand cash bond for a murder.  Never.  Never.  They

6        usually start at fifty thousand dollars.  And I'm going

7        to doubt if they have that kind of money or if too many

8        people have that kind of money.  But if you want it as

9        cash, I'll reduce it to $50,000 cash.  If you want it as

10       to anything else, that would be what, $500,000-10 %,

11       half a million 10%.

12                 MR. PRASAD:  Yes, sir.

13                 MS. ROCK:  Isn't it already $500,000-10%?

14                 THE COURT:  That's what I thought it was.

15       That's what I have written in red.  So, I'm not going to

16       change the bond.

17                 MR. PRASAD:  Judge, to address--

18                 THE COURT:  (Interposing)  Well, then it's-

19                 MR. PRASAD:  (Interposing)  I'm sorry.  I

20       don't want to speak over you.

21                 THE COURT:  A half million 10%, which would

22       make it fifty thousand cash.

23                 MR. PRASAD:  Finally, to address Ms. Rock's

24       position in the motion.  Is Ms. Rock, and I want to be

25       clear for the record, is she contesting a 91-day, a

-17-

1     trial date within 91 days of the September 23rd date?

2                THE COURT:  We don't have a new date?

3                MR. PRASAD:  We do.  It's in January.  And

4     that's why I just wanted to--

5                THE COURT:  (Interposing)  Okay.  Well, I

6     can't do it during Christmas holidays.  Now, again,

7     that's no fault of the defendant.

8                MR. PRASAD:  Correct.

9                THE COURT:  The Court administrator decides

10    when juries don't come.

11               MR. PRASAD:  Correct.

12               THE COURT:  And, again, you know, does that

13    have any impact on what a Court should do.  And we know

14    that.  It has, it should have nowhere in the

15    consideration in terms of what a person is entitled to

16    and the policies and practices of some place.  It's just

17    not -- You all find a date that you're available within

18    that time, you let me know and I will move whatever

19    needs to be moved.  But is all the discovery completed?

20    That's my only question.

21               MS. ROCK:  No.

22               MR. PRASAD:  The only thing that Ms. Rock

23    still, I requested of her last time we were in court was

24    to give me a list of the people that she still wanted to

25    interview.  As soon as she does that, I told her I would

 1        subpoena those people for an agreed-upon date.

 2                   MS. ROCK:  Well, your Honor, I think he has

 3        the list.  But I will provide him with a new list so

 4        they can be subpoenaed.

 5                   THE COURT:  Okay.

 6                   MS. ROCK:  I was told by his officer in

 7        charge that -- Every time the officer in charge gets in

 8        here, he's very contrite.  Yes, your Honor.  I'll do

 9        that.  That was just a mistake.  And then he just kind

10        of drops the ball when he leaves the courtroom.  So, I

11        will give those names to the prosecutor and then we can

12        set up interview dates.

13                   THE COURT:  Okay.  Good.  Have fun.  Thank

14        you.  Let me know of the date that you all are available

15        and I'll move whatever needs to be moved to accommodate

16        you on that date.

17                   MR. PRASAD:  Thank you, your Honor.

18                   MS. ROCK:  I'm sorry.  What needs to be

19        moved, your Honor?  I apologize.

20                   THE COURT:  Fifth time.

21                   MS. ROCK:  What did you say?  Fifth time?

22                   THE COURT:  This is the fifth time that I'm

23        saying this.

24                   MS. ROCK:  I'm sorry.

25                   THE COURT:  The two of you get together,

                                -19-

```
 1      give me a date when you're both available and give it to

 2      Mark and I will move whatever I have that is on that

 3      date or the next date or the date before to accommodate

 4      your schedules.

 5                   MS. ROCK:  For trial?  Is that what you're

 6      saying?

 7                   THE COURT:  That is the only thing that I'm

 8      talking about.

 9                   MS. ROCK:  I'm sorry, your Honor.

10                   THE COURT:  That's all right.

11                   MS. ROCK:  That you had to repeat it the

12      sixth time.

13                   THE COURT:  That's what you all asked me,

14      what are we going to do for trial?

15                   (At 10:52 a.m. proceedings concluded.)

16

17

18

19

20

21

22

23

24

25
```

-20-

R E P O R T E R ' S    C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

        I, SEAN E. ALLEN, CSMR 5265, Certified Court Reporter acting in and for the Third Judicial circuit, Wayne County, State of Michigan, do hereby certify that the foregoing pages 1 through 21, inclusive, were reduced to typewritten form and comprise a true rendition of the proceedings taken in the above-entitled matter on October 6, 2010.

        I FURTHER CERTIFY THAT MY CERTIFICATION ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN, SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                                _____
                                SEAN E. ALLEN -- CSMR 5265
                                Official Court Reporter.

DATED:  This 30th day of May 2012.