```
                    STATE OF MICHIGAN

    IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

    THE PEOPLE OF THE STATE OF MICHIGAN


              v                    Case Number
                                   10-5562-01


    DEONTE HOWARD

                             Defendant.

    _____/

                         MOTION

    PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

    Judge, Third Circuit Court, Detroit, Michigan, on

    December 1, 2010.

APPEARANCES:

                    JOHN CASEY P56162
                    Assistant Prosecuting Attorney
                    Wayne County Prosecutor's Office
                    1441 St. Antoine
                    Detroit, MI 48226
                    (313) 224-6804

                    SUSAN ROCK P34497
                    Attorney for the Defendant.
                    P.O Box 39287
                    Redford MI 48239
                    (313) 937-4444


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044
```

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:   NONE.

```
1                    Detroit, Michigan.
2                    December 1, 2010.
3                    (At 11:13 a.m.)
4                    THE COURT:  People of the state of Michigan
5         versus Deonte Howard.  This is 10 5562.  Your
6         appearances, for the record, please.
7                    MS. ROCK:  Your Honor, Susan Rock
8         representing Mr. Deonte Howard.  My opposing counsel,
9         Mr. Prasad, is at a preliminary examination in Dearborn
10        Heights.  He called.  I read the order over the phone to
11        him and he told me that he has no objection to the entry
12        of the order.
13                   MR. CASEY:  John Casey, P number 56162
14        standing in for Mr. Prasad.
15                   MS. ROCK:  And I texted, I texted him, I
16        guess that's a correct word and asked him if I could add
17        the language of within seven days and he sent me a text
18        back saying yes.  So...
19                   THE COURT:  You know, to me, it's always a
20        better practice, and I don't know why I feel this way,
21        but I just feel this way, to find out if it exists
22        before I order somebody to do something rather than
23        order them and then telling them if it exists.
24                   For instance -- Let me give you a for
25        instance.  A lot of presentence reports will say the
```

1    defendant is ordered to get his high school diploma or
2    GED if he doesn't have one or if she doesn't have one.
3    And it's like, why don't you find out if they have it
4    first, then decide if I should order it or not? Why
5    just order something and then find out if it exists or
6    not?
7              How come Sergeant Mackie can't find out if
8    there are clothes of the deceased and if there's hair
9    still around so that then an order is more appropriate
10   ordering them to do something with it?
11             MS. ROCK: Right. I know--
12             THE COURT: (Interposing) As opposed to
13   ordering them to find it, if it exists. And then, if it
14   exists, to then send it to the lab.
15             MS. ROCK: Mr. Prasad said the clothing,
16   they said they always keep. So, the only thing I wasn't
17   sure about was the hair--
18             THE COURT: (Interposing) For how long?
19             MS. ROCK: We didn't discuss it.
20             THE COURT: We don't keep files forever.
21   The law allows us to destroy files within what? Mark,
22   fifteen years? We don't keep it forever. And how about
23   the hair? Where do they keep the hair?
24             MS. ROCK: It would be at the, the morgue.
25             THE COURT: Would it be assigned a lab, a

```
 1    number?
 2             MS. ROCK:  Possibly.  Do you want me to just
 3    put that specific in the order, your Honor?
 4             THE COURT:  No.  Just find out if they do.
 5    Because, if not, I exclude it from the order.
 6             MS. ROCK:  Okay.
 7             THE COURT:  And the second part is, okay, so
 8    it gets there and it goes there.  So, and the lab is
 9    going to do what on it?
10             MS. ROCK:  What happens is once Sergeant
11    Mackie takes it to the Northville Crime Lab, they then
12    take it to Lansing for the testing.
13             THE COURT:  I got you.  And we're going to
14    tell Lansing they have to do it within what?  How much
15    time?
16             MR. CASEY:  What kind of test are we talking
17    about?
18             THE COURT:  Gunshot residue.
19             MS. ROCK:  Gunshot residue takes about, I
20    thought, a few days actually.
21             THE COURT:  Well, it might take a few days.
22    But if they put it on a list, which they always do...
23             MR. CASEY:  We have -- They gave us a list
24    of what their timeline is.  I think it's thirty to sixty
25    days for gunshot -- It depends if they're -- As we just
```

1  heard in the trial, they need a firearm, they need
2  clothes, they need a bunch of other things to compare.
3          THE COURT:  Yeah.  But the bottom line is,
4  okay, so they get the clothes and they say, you know,
5  we're back up right now.  We're not going to be able to
6  get to this for ninety days.
7          MS. ROCK:  The last time, he did it within a
8  matter of a few days.  So, I'll put a timeline in there,
9  your Honor, if I can.  And I'll contact the forensic lab
10 and take out the words if they exist.
11         THE COURT:  Because you might not, you might
12 have to take out and hair that was shaved from his
13 skull.
14         MS. ROCK:  True.
15         THE COURT:  So, why don't you find out
16 what's available.  And if it's all available, then we'll
17 order it and then you can put a little to be, reports to
18 be generated and provided to defense counsel and
19 prosecution by December 17th or something.
20         MS. ROCK:  Okay.  Sounds good, your Honor.
21 Thank you very much.
22         THE COURT:  The pleasure's always mine, Ms.
23 Rock.  Always.
24         (At 11:17 a.m. proceedings concluded.)
25

R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

        I, SEAN E. ALLEN, CSMR 5265, Certified Court Reporter acting in and for the Third Judicial circuit, Wayne County, State of Michigan, do hereby certify that the foregoing pages 1 through 7, inclusive, were reduced to typewritten form and comprise a true rendition of the proceedings taken in the above-entitled matter on December 1, 2010.

        I FURTHER CERTIFY THAT MY CERTIFICATION ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN, SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                                _____
                                SEAN E. ALLEN -- CSMR 5265
                                Official Court Reporter.

DATED:  This 30th day of May 2012.