STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN


                    v                    Case Number

                                         10-5562-01


     DEONTE HOWARD

                              Defendant.


_____/

                         MOTION

     PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

     Judge, Third Circuit Court, Detroit, Michigan, on

     January 5, 2011.

APPEARANCES:

               RAJ PRASAD P68519
               Assistant Prosecuting Attorney
               Wayne County Prosecutor's Office
               1441 St. Antoine
               Detroit, MI 48226
               (313) 224-6804

               SUSAN ROCK P34497
               Attorney for the Defendant.
               P.O Box 39287
               Redford MI 48239
               (313) 937-4444


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044

-1-

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:   NONE.

 1                    Detroit, Michigan.

 2                    January 5, 2011.

 3                    (At 11:35 a.m.)

 4                    THE COURT:  This is People of the state of

 5        Michigan versus Deonte Howard, case number 10 5562.

 6        Your appearances, please.

 7                    MR. PRASAD:  Good morning, your Honor.  Raj

 8        Prasad for the People.

 9                    MS. ROCK:  Your Honor, Susan Rock

10        representing Mr. Howard.

11                    THE COURT:  Thank you for setting something

12        on the docket while nobody was here.

13                    MS. ROCK:  I'm sorry, your Honor.

14                    THE COURT:  Yeah.  I like that trick.  Yeah.

15        You complied with the seven days.  But the prosecutor

16        didn't know anything about these motions?  Are they like

17        caught off guard or--

18                    MR. PRASAD:  (Interposing)  Judge, well, no.

19        In Ms. Rock's fairness [sic], I happened to be in here

20        working last week and I did see Ms. Rock and she did

21        inform me that she was filing these motions.  So, I'm

22        not caught off guard by them, per se.

23                    The one thing I'm caught guard was I think

24        she filed an amended brief as to one of the substantive

25        motions that I wanted to argue against.  And I haven't

                              -3-

1    had a chance to look at her amended brief at all.

2                MS. ROCK:  Well, your Honor, I filed that

3    for the 10th--

4                THE COURT:  (Interposing)  Hold it.  Let me

5    just--

6                MS. ROCK:  (Interposing)  Oh.  I'm sorry.

7                THE COURT:  Just -- It was just one question

8    to him.

9                MS. ROCK:  That's right, your Honor.

10               THE COURT:  Right.  Okay.  This is where we

11   are.  I'm on the amended motion and brief in limine.

12   And let me just start with some things that are

13   interesting in and of themselves where I don't think

14   that Mr. Howard's presence is necessary.  But if you all

15   do, please let me know.

16               It says they want to prevent the

17   prosecution, this is one of the motions, from entering

18   into evidence, the cellular telephone photographs,

19   autopsy photographs.  Okay.  Number one and number two,

20   I don't know what is going to be offered into evidence.

21   So, without the particular pictures and a determination

22   on whether they're relevant or not, I can't rule on what

23   might be or might not be marked as an exhibit.  So, I

24   can order the prosecution to give me a list of exhibits

25   that they are planning to introduce into evidence.  But

-4-

1    normally, that's not what I do.  But I can do that for

2    purposes of then making a determination before trial.

3    So, I will be happy to do that.

4              MR. PRASAD:  To answer the Court's question

5    in terms of the two different issues, the cellular phone

6    photographs I do intend to admit.  And I have -- I can

7    show the Court them right now.

8              THE COURT:  Okay.

9              MR. PRASAD:  And we can show counsel--

10             THE COURT:  (Interposing)  And do you have

11   any--

12             MS. ROCK:  (Interposing)  I already--

13             THE COURT:  (Interposing)  Pictures of the

14   autopsy?

15             MR. PRASAD:  I do have autopsy photos,

16   Judge.  I have no intention of introducing autopsy

17   photos in my direct case.  The only reason I could see

18   potentially they can be coming in is that defense has

19   listed an expert, a medical examiner expert, Dr.

20   Dragovich--

21             THE COURT:  (Interposing)  Well, then they

22   would be bringing them in.  So, it wouldn't be something

23   that you would be doing.

24             MR. PRASAD:  Correct.  But if there, if

25   there's something I need to bring in in terms of--

-5-

 1                    THE COURT:  (Interposing)  Right.  As a
 2      response.
 3                    MR. PRASAD:  Right.
 4                    THE COURT:  But I'm sure that this is as to
 5      your case in chief.  That's how I'm reading the motion.
 6                    MR. PRASAD:  Correct.  And as to my case in
 7      chief, I do not intend to introduce autopsy photos.
 8                    THE COURT:  Okay.  So, that's not an issue
 9      that we need to discuss any further.  Is that correct?
10                    MS. ROCK:  Yes, your Honor.
11                    THE COURT:  Okay.  And we don't need Mr.
12      Howard to say that it's a non-issue?
13                    MS. ROCK:  True.
14                    THE COURT:  Okay.  And is there any reason
15      that there would be any hearsay as to who somebody
16      believed the shooter might be?
17                    MR. PRASAD:  Judge, just the witnesses
18      testimony.
19                    THE COURT:  Okay.
20                    MR. PRASAD:  And that's the part that was, I
21      think added that--
22                    THE COURT:  (Interposing)  Okay.  So, then
23      it wasn't hearsay.
24                    MR. PRASAD:  It's -- Correct.  It's the
25      witness, it's, it's Mr. Bailey's testimony that it was

                              -6-

1     Tay who was the shooter.

2              THE COURT:  Because that's what he saw,

3     correct?

4              MR. PRASAD:  Right.  I mean, that's--

5              THE COURT:  (Interposing)  Okay.  So, it's

6     not hearsay.  So--

7              MR. PRASAD:  (Interposing)  I mean, am I

8     misunderstanding--

9              THE COURT:  (Interposing)  So, I'm not

10    going--

11             MR. PRASAD:  (Interposing)  Your motion,

12    counsel?

13             MS. ROCK:  A little bit.  Your Honor, if

14    that's, if that's what he's contending, then, you know,

15    I can't dispute that, if he's going to say, well, Tay

16    was the shooter, if Mr. Bailey testifies to that.

17             THE COURT:  Right.  And if he doesn't, then

18    the objection would be hearsay and I would instruct the

19    jury as to they can't consider that statement because it

20    lacks credibility and that they should discard it.  So,

21    there's--

22             MR. PRASAD:  (Interposing)  I mean, I trust

23    the Court's ruling as to the way the evidence comes out.

24    I mean, I--

25             THE COURT:  (Interposing)  Right.  And

                              -7-

1    hearsay is going to be hearsay no matter if it's

2    something different.  So, that's not a problem.

3              MR. PRASAD:  The cell phone photographs,

4    Judge, I do object to counsel's motion.  And I can

5    explain why.

6              THE COURT:  Okay.  Can I see them?

7              MR. PRASAD:  Yes.  Your Honor, a large issue

8    with this case is going to be identification.  Part of

9    the evidence that's going to, that I expect to be coming

10   out is that the shooter involved in this case came back

11   to the scene looking for his cell phone that was lost.

12             After the scene was, after the scene was

13   cleared and processed by the Detroit Police Department,

14   they found a cell phone nearby the scene.  On the cell

15   phone, they did a search warrant for a dump of all data

16   on this cell phone.  Coming from that cell phone are the

17   photographs in the Court's possession right now, clearly

18   identifying the defendant as the person in the

19   photographs of the cell phone.

20             When I was, when Ms. Rock and I were

21   chatting about the motion last week when I saw her on,

22   in the holidays, I jokingly said, I said to Ms. Rock, I

23   said, unless you're going to stipulate that that's the

24   defendant's cell phone, the relevance of these

25   photographs is extremely relevant and outweighs any

1    possible prejudice that I could see.  And that's why I

2    would argue that unless counsel is willing to stipulate

3    that it as the defendant's cell phone that was found at

4    the scene, I think these photographs go to the heart of

5    the matter of identity.  And that's why I would ask the

6    Court to allow me to introduce them.

7              THE COURT:  What's the basis for asking that

8    the photographs not be entered?

9              MS. ROCK:  Well, your Honor, first of all, I

10   think that the selection of his photographs are

11   prejudicial, especially the ones with the money--

12             THE COURT:  (Interposing)  Of course.

13   They're supposed to be prejudicial.  Okay.  So, let's

14   get past that.

15             MS. ROCK:  Okay.

16             THE COURT:  Are they relevant, first of all?

17             MS. ROCK:  Yeah.  That's what I want to

18   know.  If I'm going to stipulate that there were

19   pictures of my client on that phone, how are they

20   relevant?

21             THE COURT:  Okay.  I would say that if the

22   phone was found at or near the scene the crime, then

23   it either puts your client there or somebody that knows

24   your client.  So, they have some relevance.  It's not

25   like they found the phone in Mississippi.

-9-

 1                    MS. ROCK:  No.  I, I -- But I think that

 2         some of the photos that he selected are prejudicial.

 3                    THE COURT:  Okay.  Do you have--

 4                    MS. ROCK:  (Interposing)  What's the money

 5         one for?

 6                    THE COURT:  They're supposed to be

 7         prejudicial--

 8                    MS. ROCK:  (Interposing)  Excuse me.  I'm

 9         sorry.

10                    THE COURT:  He's not going to show any

11         photos with your client hugging a woman that has

12         absolutely nothing to do with the scene of the crime or

13         some allegations.  The ones with the glasses, in

14         particular, if one of the allegations is that glasses

15         were stolen and these look like, I can't, because I

16         can't specifically say that those were the glasses

17         because they're not physically here, then how is the one

18         with Mr. Howard wearing the glasses that might have been

19         taken not relevant?

20                    MS. ROCK:  Well, I'm going to ask the

21         prosecutor, your Honor.  Or ask the Court to ask the

22         prosecutor?  Is he alleging that those glasses belonged

23         to Tyrone Simpson?

24                    MR. PRASAD:  I have no idea, Judge.  To be

25         honest with you, I have no idea.  I can't argue that in

                                -10-

```
1      good faith.  All I can do is just say this is, it's one
2      of those things.  This is what we found.  I mean, this
3      is--
4                  THE COURT:  (Interposing)  Yeah.  But it has
5      to have some relevance.
6                  MR. PRASAD:  Oh, I agree, Judge.
7                  THE COURT:  So what?  So what if he's
8      wearing glasses?
9                  MR. PRASAD:  Right.
10                 THE COURT:  Would you show a picture of him
11     reading the encyclopedia?  Would you show a picture of
12     him with a laptop on his lap?
13                 MR. PRASAD:  No.  But, Judge, I have all the
14     pictures from the dump.  And I mean, if counsel's
15     worried about the context of the photographs, we can put
16     all of them in.  But I was trying to be the most
17     relevant [sic].  I mean...
18                 THE COURT:  Well, what are the allegations?
19                 MR. PRASAD:  The allegations are they were
20     his, it's his phone that was left at the scene and he
21     was the one looking for his phone.  And hence, he's the
22     shooter.
23                 THE COURT:  Well, what's the defense?
24     Wasn't there?
25                 MR. PRASAD:  If the defense is he wasn't
```

-11-

1     there, then--

2              THE COURT:  (Interposing)  Then all of the

3     photos are relevant and--

4              MR. PRASAD:  (Interposing)  Right.

5              THE COURT:  If the, if--

6              MR. PRASAD:  (Interposing)  If the defense

7     is self-defense, then it's not an issue.

8              THE COURT:  Then the photos -- Right.  Then

9     the photos are relevant.

10             MR. PRASAD:  Correct.

11             THE COURT:  Right.

12             MR. PRASAD:  We're on the same page.

13             THE COURT:  Right.  So, it all depends.  I

14     can't make a call as to whether they should be admitted

15     or not because I don't know what the defense is.  So--

16             MR. PRASAD:  (Interposing)  Correct.

17             THE COURT:  They don't have to reveal it.

18     So, I'll reserve a ruling on that.  And if they want to

19     do alibi, then we will allow the photos to be entered in

20     in your rebuttal.

21             MR. PRASAD:  Thank you.

22             THE COURT:  As it was in the beginning and

23     now and ever shall be, justice without end.

24             MR. PRASAD:  Judge, there's a couple of

25     other things that I have to address.  Does the Court

1     have in its possession the defense's amended witness

2     list or second proposed witness list?

3              THE COURT:  I'm sure it's in the file

4     somewhere.  What is it that you would like to guide my

5     attention to?

6              MR. PRASAD:  There are two things, Judge.

7     Actually, there's three things.

8              MS. ROCK:  Here's what bothers me.  I take

9     Mr. Prasad into the room and give him a heads-up on some

10    orders that I want to have entered.  I don't have any

11    notice of what he's going to be arguing right now.

12             THE COURT:  As to?  I'm sorry?

13             MS. ROCK:  Judge, as to this.

14             MR. PRASAD:  If counsel needs more time to,

15    for my argument.  That's fine.  I just wanted to put

16    everyone on notice.

17             MS. ROCK:  I would have liked a heads-up.

18             THE COURT:  So, what about these allegations

19    of Lieutenant Crump?

20             MS. ROCK:  Yes, sir.

21             THE COURT:  Did you read that one?

22             MR. PRASAD:  Judge, my understanding of her

23    -- Oh.  I'm sorry.  I gave the Court my copy.

24             THE COURT:  You sure did.  Could you give

25    that to Mr. Prasad?  Thank you.  All these orders that

-13-

1     I've been making, she's doing the letterhead, he's

2     sending the reports to you.

3          MR. PRASAD:  Yeah.  He is, Judge.  And I

4     don't--

5          THE COURT:  (Interposing)  And not to her.

6          MR. PRASAD:  I don't dispute that.

7          THE COURT:  And not to her.

8          MR. PRASAD:  I'm not, I can't dispute--

9          THE COURT:  (Interposing)  No.  So, what

10    does that, what does that tell you?

11         MR. PRASAD:  He's following protocol, Judge.

12    I think they, they have to send--

13         THE COURT:  (Interposing)  Following

14    protocol?

15         MR. PRASAD:  Yes, sir.  I think they have to

16    send it to us.

17         THE COURT:  Yeah.  To the exclusion of them?

18         MR. PRASAD:  No.  I would never want them to

19    be excluded.

20         THE COURT:  Right.  But protocol means is

21    that whoever the order directs you to send them to, you

22    follow the order.  Do you think the order has been

23    followed?

24         MR. PRASAD:  No.  I mean, I, I see your

25    point, Judge.  No.  I don't.  I mean--

1              THE COURT:  (Interposing)  Right.

2              MR. PRASAD:  In those terms, I don't.  No.

3              THE COURT:  That's what I'm saying.  The

4    order hasn't been -- So, protocol hasn't been followed.

5    Protocol means to me that you follow the order.  So, he

6    hasn't followed protocol.  Protocol is you follow the

7    order as given by the Court.

8              MR. PRASAD:  I think it's a different

9    protocol than what I meant by it, but yes.  I think

10   that's right, Judge.  I mean, you're right, the Court

11   order was specific about that.

12             THE COURT:  Yeah.  It was pretty specific.

13   And not to notify them or send it to them and exclude

14   them from the circle of information?  She's been

15   excluded from the circle of information.

16             MR. PRASAD:  Well, I haven't, I mean, I, I

17   gave them to her--

18             THE COURT:  (Interposing)  No.  Somebody

19   else is -- No.  Somebody else who was directed to

20   include her has intentionally excluded her.  Now, what

21   you choose to do is different.  But she has been

22   excluded intentionally because you were intentionally

23   included.  Because the order didn't say to provide to

24   you anything.

25             MR. PRASAD:  Correct.

-15-

1          THE COURT:  So, here we have somebody that's

2     supposed to be acting on a Court order including

3     somebody that wasn't a part of the order and excluding

4     the person that was a part of the order.  What do you

5     make of that?

6          MR. PRASAD:  I can't answer for, I can't

7     answer for the witness--

8          THE COURT:  (Interposing)  I didn't ask you

9     to answer--

10          MR. PRASAD:  (Interposing)  No.

11          THE COURT:  For the witness.  I'm saying,

12     what would you say about that in terms of how it

13     appears?

14          MR. PRASAD:  Oh.  I understand the Court's--

15          THE COURT:  (Interposing)  No.

16          MR. PRASAD:  You're suggesting it appears in

17     a bias, bias against the defense.  I'm not, I can't

18     argue against the Court's analysis of that.  I'm not

19     going to--

20          THE COURT:  (Interposing)  Would yours

21     differ?  Not can you argue against mine.  But isn't that

22     how it appears to you?

23          MR. PRASAD:  Yeah.  I mean -- Yeah.  I mean,

24     I can see on the face how that appears that way.  I'm

25     not--

 1                    THE COURT:  (Interposing)  It doesn't --
 2      Appearance doesn't mean that that's how it is in
 3      actuality.
 4                    MR. PRASAD:  Right.
 5                    THE COURT:  Appearance is how it appears.
 6                    MR. PRASAD:  Right.
 7                    THE COURT:  A reasonable look at a person
 8      that is directed to do one thing and chooses to do
 9      something else.  Because that's what this was.
10                    MR. PRASAD:  I would, my only knowledge of
11      the situation that I would argue against is that, the
12      actuality is because I know Lieutenant Crump and Ms.
13      Rock have had many conversations that I was never a
14      party to and they've--
15                    THE COURT:  (Interposing)  Which would even
16      scare me worse because he hasn't had any conversation
17      with you about the orders and chooses to give you some
18      reports and not the person he's been having the
19      conversations with.
20                    MR. PRASAD:  The conversations--
21                    THE COURT:  (Interposing)  That would make
22      it even scarier.
23                    MR. PRASAD:  The conversations we had about
24      the order is that this is what they're asking you to do.
25      Can you do this?  And then talk to Ms. Rock.  And that's

                                    -17-

1      the essence of it.

2                  THE COURT:  Right.  And she's had all these

3      conversations, all these things and then, and the orders

4      are saying, you know -- Ms. Rock is the one that wants

5      this information and she's excluded?  That's like, oh,

6      man, you can't show a more biased hand.  I think her

7      conclusion that he's asking in a way that's inconsistent

8      with the order of the Court and the intent of the Court,

9      it just has to be presumed because there's nothing to

10     defeat that presumption.

11                 MR. PRASAD:  Except for the fact that,

12     Judge, that Lieutenant Crump's been the one who's been

13     willing to do all the testing that Ms. Rock has

14     requested.

15                 THE COURT:  No.  No.  Not willing.  Ordered

16     by the Court.

17                 MR. PRASAD:  No.  But he's been the one

18     willing to do it.  It's like he had to go through -- And

19     the whole fight that we had and the reason I asked for a

20     delay on the second series of orders is because he had

21     to go to his supervisors to get the authority to do the

22     testing because it wasn't testing that was normally

23     done.

24                 THE COURT:  No.  No.  That was protocol.

25                 MR. PRASAD:  True.

```
 1                    THE COURT:  Their protocol is different than
 2        an order from the Court.  It's just like the deputies
 3        have policy that governs what they do.  But policy
 4        doesn't trump an order.
 5                    MR. PRASAD:  No.  I'm not--
 6                    THE COURT:  (Interposing)  And that's what
 7        I'm saying.  Somebody would have done it because it was
 8        ordered.
 9                    MR. PRASAD:  But -- I know.  But it was a
10        fight to get it done, Judge.  And--
11                    THE COURT:  (Interposing)  I understand that
12        the people--
13                    MR. PRASAD:  (Interposing)  And that's what
14        I was, my point.  And he was advocating for Ms. Rock--
15                    THE COURT:  (Interposing)  And I love you
16        for that.  And people always fight Court orders.  I'm
17        thinking, how can you fight a Court order?  The
18        probation department does it, defendant's screening
19        unit.  I'll say, well, you know, something that's
20        important to me about bond would be, you know, if
21        they're paying their child support.  So, could you check
22        with the -- They'll tell me, oh, we don't do that.
23                    I'm like, well, how do I make a
24        determination about their ties and commitments to the
25        community?  And they're like, we don't do that.  And I'm
```

1      like, well, is it all right if I order you to do it?

2      Well, we don't know how to do it.  Well, do you mind if

3      I order you to find out how to do it?  It seems like if

4      it ain't a part of protocol, then they ain't got to

5      follow no order.

6                MR. PRASAD:  The only reason I'm saying all

7      this, Judge, is I don't want him to be labeled as

8      someone who has been purposely at odds or against Ms.

9      Rock.  Because I think, as far as Lieutenant Crump goes,

10     he was the one that was trying to be most helpful to her

11     in terms of getting the MSP testing done that she

12     wanted.  In terms of him not turning over the reports to

13     her, I don't, I don't--

14                THE COURT:  (Interposing)  Right.  He's an

15     obstructionist in that way--

16                MR. PRASAD:  (Interposing)  I would disagree

17     with that.

18                THE COURT:  So, the same hand that shakes

19     you is the same hand that can slap you though.  You

20     can't say, oh, because he used my right hand to shake me

21     he didn't hit me with the right hand.  It's just, you

22     know, what the evidence tends to show.

23                So, okay.  I'll sign the order.  Good luck

24     in finding somebody in five days to try to give you some

25     help, Ms.--

1          MR. PRASAD:  (Interposing)  I think she has.

2          MS. ROCK:  I do, your Honor.  I have

3     somebody lined up.

4          THE COURT:  Great.  I'll sign it.

5          MR. PRASAD:  Judge, can I ask the Court to

6     look at counsel's second proposed witness list?

7          THE COURT:  I've got it now.

8          MR. PRASAD:  Okay.  There were, actually,

9     there's three different issues.

10          First, number three, Tyrone Simpson's

11     criminal record.  Tyrone Simpson is a witness for the

12     prosecution.  My only objection would be under 609

13     grounds.  I have no objection to proper and appropriate

14     convictions under 609 to be brought up--

15          THE COURT:  (Interposing)  Anything used for

16     impeachment, crime--

17          MR. PRASAD:  (Interposing)  Right.

18          THE COURT:  That's fine.

19          MR. PRASAD:  I just want it to be limited to

20     the proper 609 analysis.

21          THE COURT:  It is.

22          MR. PRASAD:  Thank you.

23          THE COURT:  Okay.  Anything else?

24          MR. PRASAD:  Yes, Judge.  Number four and

25     five are now related.  In terms of expert witnesses, the

-21-

     1     court rules regarding discovery for those is pretty

     2     clear.  Let me turn to the right rule.

     3               THE COURT:  Was there a reciprocal order of

     4     discovery that was--

     5               MR. PRASAD:  (Interposing)  Yes, Judge.  It

     6     was filed--

     7               THE COURT:  (Interposing)  So, you've got to

     8     supply him with the reports, Ms. Rock.

     9               MS. ROCK:  Well, your Honor, with Dr.

    10     Dragovich, it's my understanding that you can't force an

    11     expert, especially a volunteer expert, to file a report.

    12     And--

    13               THE COURT:  (Interposing)  Who can't?

    14               MS. ROCK:  This is the -- What's that, your

    15     Honor?

    16               THE COURT:  Who can't?

    17               MS. ROCK:  Well, well I'm not saying you

    18     can't.

    19               THE COURT:  Okay.  Well, then I--

    20               MS. ROCK:  (Interposing)  But the case law,

    21     the case law says that an expert can't.  I was wondering

    22     if you'd give me one day to find that case law, I'd

    23     appreciate it.

    24               THE COURT:  There is no case law that I can

    25     imagine that's consistent with justice that would say

                                   -22-

1    that a volunteer expert witness doesn't have to provide

2    a report of what they might testify to and the findings

3    they would make based on what they're going to testify

4    to.

5             MR. PRASAD:  And, Judge, if I may--

6             THE COURT:  (Interposing)  I don't, I don't

7    think you're going to find that.

8             MS. ROCK:  I think, I think I can, your

9    Honor, I--

10            THE COURT:  (Interposing)  Because -- I

11   don't think so.

12            MS. ROCK:  My expert right now is in

13   Australia.  He's coming back on August 11th.

14            THE COURT:  August the 11th?  Okay.

15            MS. ROCK:  I'm sorry.  I keep wanting to say

16   August.  January 11th..  And I've given him a subpoena.

17   I can leave him a message on his voicemail and so forth.

18   But if you'd give me one day to maybe find the case law

19   about expert witnesses not being required to produce a

20   report.

21            MR. PRASAD:  Judge, if I could direct the

22   Court and counsel as to what I'm actually asking for.

23   It's under 6.201, the rules for discovery under the

24   court rules, and specifically (A) (3) under the

25   mandatory disclosures.  For expert witnesses, the CV,

1        which I'm not alleging -- I mean, I have no objection to

2        at this point  And either a report by the expert or a

3        written description of the substance of the proposed

4        testimony of the expert, the expert's opinion and the

5        underlying basis of that opinion.  I'm asking for either

6        one, whichever way she wants to do it.

7                    And I know I've been in cases where's I've

8        had experts who are not used to writing reports.  I've

9        actually had conversations with the expert, wrote down a

10       synopsis of the conversation as to what they expert

11       their testimony to be and just E-mailed it to them to

12       make sure that was right.  I mean, I just need something

13       like that, one or the other.

14                   MS. ROCK:  I can draft something, your

15       Honor.

16                   THE COURT:  Okay.  Next?

17                   MR. PRASAD:  Finally, Judge, number eight.

18       Deposition and trial transcript in the federal trial for

19       Damon Nathaniel re:  Barbara Simon.

20                   First of all, Judge, I don't have that

21       transcript.  Counsel's never provided it to me.  And

22       two, I have no idea how it's relevant.

23                   MS. ROCK:  Judge, he's going to have to pay

24       me just like I would have to pay for things.  It's a

25       lengthy deposition and trial transcript.  Barbara Simon

1    was sued in federal court for false imprisonment and

2    false arrest.  The jury found that she was responsible

3    for false arrest and false imprisonment of Nathan Daniel

4    -- I'm sorry.

5              THE COURT:  Damon Nathaniel.

6              MS. ROCK:  Damon Nathaniel.  Thank you.  He

7    alleged that she screamed at him and screamed at him

8    until he finally confessed.  And, apparently, there was

9    another officer that played good cop.  She was bad cop.

10             And so, one of his witnesses in this

11   particular case was screamed at by Barbara Simon and

12   threatened and told that if he didn't identify my client

13   as the shooter she was going to not only ruin his

14   business, but affect his parole.  I think that that's

15   kind of her modus operandi, so to speak, her pattern of

16   behavior.  And I think that's why it's relevant.

17             So, I was trying to forward that to him, but

18   for some reason, when I tried to forward that E-mail

19   that has the attached deposition and trial transcript,

20   it won't forward the deposition or the trial transcript.

21   And it's a lot of pages.

22             MR. PRASAD:  I still don't see how I, I'm

23   not entitled to having it--

24             MS. ROCK:  (Interposing)  Well, you can pay

25   for it.

1           MR. PRASAD:  And to make a -- Pay for it?

2           MS. ROCK:  Yeah.  Pay for, pay for printing

3     because that's like -- I'm appointed and it's a

4     deposition and a trial transcript.  So--

5           THE COURT:  (Interposing)  But they're not

6     responsible for it.

7           MS. ROCK:  Why wouldn't they be?

8           THE COURT:  Because it was in a federal

9     court.  It wasn't in a state court.

10          MS. ROCK:  I'm sorry, your Honor.  I'm not

11    following what you're saying.

12          THE COURT:  Okay.  Well, it's not, it's not

13    a People of the state of Michigan.

14          MS. ROCK:  True.

15          THE COURT:  It's a civil action that was

16    filed in federal court.

17          MS. ROCK:  True.

18          THE COURT:  So, you want me to direct them

19    to get that transcript for you?

20          MS. ROCK:  No.  I have it.  I have it on an

21    E-mail.  And I tried to forward it to Mr. Prasad, but

22    every time I tried to forward it, it wouldn't take, you

23    know, for some reason, that little link wouldn't go with

24    it.  It wouldn't forward.  So, I didn't know how to --

25    You know, I wanted, I wanted to send it to him, but I

1        don't have a way of, you know, I don't know how to do

2        it.  I don't know if there's a way to do it.  But I

3        don't -- Unless I copied it.  What I could do is I could

4        copy it and send it via E-mail.  Maybe that's what I can

5        do.

6                     MR. PRASAD:  Or what I could suggest is that

7        if Ms. Rock is going to print out her own copy of it, if

8        she wants, I will make a copy of her copy.  I just, I'm

9        not trying to create a difficult--

10                    THE COURT:  (Interposing)  Right.

11                    MR. PRASAD:  How am I supposed to make a

12       relevance argument if I don't even have the document.

13                    THE COURT:  I can't read it and I can't make

14       a decision either.  So, if you -- Are you going to print

15       it out?

16                    MS. ROCK:  I am going to print, I think I--

17                    THE COURT:  (Interposing)  Because you're

18       going to have to print it out--

19                    MS. ROCK:  (Interposing)  Yeah.  I--

20                    THE COURT:  (Interposing)  If you want me to

21       review it.

22                    MS. ROCK:  That's true, your Honor.

23                    THE COURT:  So, if you print it out, he'll

24       look at it and then we can gather back together and we

25       can talk about it.

                              -27-

```
 1              MR. PRASAD:  Thank you.

 2              MS. ROCK:  All right.  Thank you.

 3              THE COURT:  The federal civil judgement is

 4       poop to me and has no relevance.

 5              MR. PRASAD:  That's, and I--

 6              THE COURT:  (Interposing)  Because if she

 7       was found not responsible, you would still want to use

 8       the transcript.  So, it's like a person that's been

 9       charged with a crime, you know.  The judgement doesn't

10       matter.  What does it matter?  There is no difference.

11       There is no requirement.  Anything else?

12              MR. PRASAD:  Not at this time.

13              MS. ROCK:  I do, your Honor.  I have, I told

14       the prosecutor, I took him in the conference room.  I

15       wanted an order for the progress notes.  When they

16       allowed me -- The homicide progress notes.  When they

17       took me, let me look at the file, they had the progress

18       notes -- And this was in September.  They had progress

19       notes up 'til April 19th and the rest of them were cut

20       off or not provided.

21              And in lieu of some of the shenanigans that

22       have gone on in this case, I think the rest of the

23       progress notes are important.  As well as Dr. Dragovich

24       wanted the daily docket from the medical examiner's

25       office.
```

                              -28-

1          I also wanted -- I noticed in reviewing the

2    file last night that there was, that Aundrey Allen, one

3    of their star witnesses, has an outstanding warrant or

4    appears to have an outstanding warrant for burglary.

5                THE COURT:  Okay.

6                MS. ROCK:  The prosecutor -- And I, I think

7    that's relevant because it goes to bias and the fact

8    that the prosecutor's office is holding something over

9    his head in order to get him to testify the way they

10   want him to testify.

11               THE COURT:  Well, then you can cross-examine

12   him on any reason that you think he might have some

13   bias.

14               MS. ROCK:  I have orders, if the Court--

15               THE COURT:  (Interposing)  For what?

16               MS. ROCK:  Would like to review.  For the

17   progress notes, the daily docket and the warrant.

18               THE COURT:  What am I going to sign for the

19   warrant?

20               MS. ROCK:  Well, it basically says, it is

21   further ordered that the Wayne County Prosecutor's

22   Office confirm whether or not Aundrey Allen has any

23   outstanding warrants out and to provide proof to defense

24   counsel or, if the warrants were dismissed during the

25   pendency of this case, to provide proof of that to

                                -29-

1     defense counsel.  I think that's reasonable.

2               MR. PRASAD:  I, I, Judge, I don't know how,

3     but...

4               THE COURT:  It could be argued--

5               MR. PRASAD:  (Interposing)  It's--

6               THE COURT:  (Interposing)  That in exchange

7     for testimony that an open warrant will not be proceeded

8     with, you know.  All of those things are arguable or--

9               MR. PRASAD:  (Interposing)  And what I

10    would--

11              THE COURT:  (Interposing)  You know, have

12    you -- You know, when you ask have the police treated

13    you differently.  For instance, Lieutenant Crump, has he

14    treated you differently than he's treated her?

15              MR. PRASAD:  And I--

16              THE COURT:  (Interposing)  And the answer is

17    yes.  So, one could argue that there's bias.

18              MR. PRASAD:  I understand the questioning--

19              THE COURT:  (Interposing)  If there's this

20    person that has an open warrant, that as long as they're

21    cooperating with the police hasn't been arrested on the

22    open warrant and the police would have treated anybody

23    else with an open warrant and have arrested them and had

24    them, you know, in the process so there could be a

25    determination if they were going to get bail and it's

 1      just not being done, there could be a presumption that
 2      they're being treated differently.
 3                  MR. PRASAD:  I'm not disputing the Court's
 4      allowing her to cross-examine those issues.  I agree
 5      with that.
 6                  THE COURT:  No.  But--
 7                  MR. PRASAD:  (Interposing)  I'm not.
 8                  THE COURT:  She would have to cross-examine
 9      on something that she reasonably believes -- You know,
10      you just can't cross-examine on anything out of the
11      blue.
12                  MR. PRASAD:  Right.
13                  THE COURT:  And you can provide her with a
14      basis to see if even asking those questions have any
15      relevance.
16                  MR. PRASAD:  Okay, Judge.  Then I'll --
17      That's fine.
18                  THE COURT:  Because you can jump up and say
19      the relevance if she can't prove its existence or not.
20      And--
21                  MR. PRASAD:  (Interposing)  I understand.
22                  THE COURT:  And we don't want this to be a
23      fishing exhibit [sic].
24                  MR. PRASAD:  I'll find out that answer.
25                  THE COURT:  Right.  So, we can do that.

                                -31-

1      That's--

2                      MR. PRASAD:  (Interposing)  Okay.

3                      THE COURT:  Easy.  What's the other one, Ms.

4      Rock?

5                      MS. ROCK:  I think that was it.  I had the,

6      I had, we had talked about Tyrone--

7                      THE COURT:  (Interposing)  Okay.  What about

8      these--

9                      MS. ROCK:  (Interposing)  Oh, excuse me.

10                     THE COURT:  Daily notes?  What are those?

11                     MR. PRASAD:  Progress notes?

12                     THE COURT:  Yeah.

13                     MR. PRASAD:  I was looking at them.  And I

14     think the reason they were cut off on 4/19 is because

15     they were printed on 4/20.  So, I can ask -- I'm meeting

16     with the officer in charge tomorrow.  I can ask him to

17     print out the ones after 4/20.

18                     THE COURT:  There you go.

19                     MS. ROCK:  And, your Honor, I did a motion

20     for order to show cause for Barbara Simon.

21                     THE COURT:  Order to show cause who?

22     Barbara Simon?

23                     MS. ROCK:  Barbara Simon because she's

24     refused to -- Well, I say she's refused to meet with us.

25     Or she has his lengthy illness that she's had for the

1      past thirty to forty-five days.  And she's cancelled

2      several meetings.  I finally proposed to the prosecutor,

3      so I would quit inconveniencing my investigator, that we

4      do a three-way phone interview.  So, I'm going to ask

5      the prosecutor to talk to--

6                   MR. PRASAD:  (Interposing)  You haven't

7      presented me with that one.

8                   MS. ROCK:  What's that?

9                   MR. PRASAD:  You haven't, we haven't

10     discussed that one yet.

11                  MS. ROCK:  Okay.  We'll discuss it.

12                  THE COURT:  I can order him to find out her

13     next day at work.

14                  MR. PRASAD:  Judge, we've already, I've

15     already talked to Ms. Simon about the three-way phone

16     conversation.  Counsel proposed that to me two weeks

17     ago.  I gave counsel all of Investigator Simon's cell

18     phone numbers.  I said, fine.  Do it.  And Investigator

19     Simon knows that you're going to call her.

20                  MS. ROCK:  Okay.  Well, I'm planning on

21     having this three-way with her, three-way phone

22     conversation with her on Thursday morning, hopefully at

23     9:00, 9:30.

24                  THE COURT:  That's fine.

25                  MR. PRASAD:  Yeah.  Call her and--

1            THE COURT:  (Interposing)  Talk, talk, talk.

2            MR. PRASAD:  I told her like two weeks ago

3      when you and I first talked about it.

4            Judge, there's a last order that counsel has

5      that she hasn't brought up to the Court yet that I want

6      to discuss.

7            MS. ROCK:  This was -- Well, we talked about

8      Tyrone Simpson's criminal conviction, your Honor.  I

9      wanted his suppressed file produced so I could obtain

10     documents out of it.  Apparently, his suppressed file

11     has to do with possession of marijuana.  Mr. Simpson was

12     found with marijuana in his jacket.  And I think it goes

13     to his criminality and possible suspects who could have

14     shot him because he's continuing in the drug trade.

15           And that's why I wanted the Court to at

16     least order production of the suppressed file so I could

17     obtain and certify some of the documents.  It says

18     dockets, but it should be documents.

19           THE COURT:  Okay.  So, let me get this.  I

20     have a conviction for smoking marijuana when I'm

21     eighteen college, little ticket.  And I get shot when

22     I'm twenty-one.  And somebody wants to say that because

23     I was smoking bud in college I'm in the drug trade and

24     that that prior conviction should be able to be used to

25     show that there was somebody else that could have killed

1    me?

2            MS. ROCK:  Well, your Honor, it was a

3    possession with intent to deliver marijuana.

4            THE COURT:  The case law says almost that

5    any quantity that there can be a presumption that it's

6    possessed with the intent to deliver.

7            MS. ROCK:  But I think his actual charge was

8    possession with intent to deliver.

9            THE COURT:  And that just goes to the

10   charging people.  There are people that are charged with

11   that with two.  There are people that are charged with

12   that with twenty packs.  What does that have to do,

13   seriously, with the cost of incense at a flea market?

14           MS. ROCK:  Just our right to present a

15   defense, your Honor.

16           THE COURT:  Not that tenuously.  A prior

17   felony conviction for possession of marijuana now

18   establishes a motive by somebody else to kill him.

19           MR. PRASAD:  And, Judge, we're talking about

20   a suppressed case for a deceased victim in which 609

21   doesn't even apply.

22           THE COURT:  Have I already ruled?

23           MR. PRASAD:  Yes, sir.

24           THE COURT:  Oh.  Okay.  So--

25           MR. PRASAD:  (Interposing)  Thank you.

-35-

1                    THE COURT:  The extra is just, as we would

2        like to say, dicta.

3                    MR. PRASAD:  Yes, sir.

4                    THE COURT:  Or I wanted to get his last shot

5        in because I had one more in the gun or whatever, in the

6        clip.  Dicta.  I'm sorry, do we need Mr. Howard?

7                    MR. PRASAD:  Not at this point, I guess.

8                    THE COURT:  I mean, did we need him for any

9        of that?  I mean, because at first you all said we

10       needed him.

11                   MR. PRASAD:  I just assumed because some of

12       them were substantively related to the trial.

13                   THE COURT:  We didn't decide on anything

14       substantive.  We agreed on what we agreed on.  The notes

15       didn't have anything to do with him.  The new medical

16       examiner didn't have anything to do with him.  I didn't

17       admit or not admit any exhibits that were going to be

18       used in argument because I don't know what the argument

19       is.

20                   MR. PRASAD:  True.

21                   (At 12:07 p.m. proceedings concluded.)

22

23

24

25

-36-

R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

        I, SEAN E. ALLEN, CSMR 5265, Certified Court

Reporter acting in and for the Third Judicial circuit,

Wayne County, State of Michigan, do hereby certify that

the foregoing pages 1 through 37, inclusive, were

reduced to typewritten form and comprise a true

rendition of the proceedings taken in the above-entitled

matter on January 5, 2011.

        I FURTHER CERTIFY THAT MY CERTIFICATION

ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN,

SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES

NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED

COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                        _____
                        SEAN E. ALLEN -- CSMR 5265
                        Official Court Reporter.

DATED:  This 30th day of May 2012.

-37-