STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN

       v                   Case Number
                          10-5562-01


DEONTE HOWARD

                        Defendant.

_____/

JURY TRIAL

PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW

Judge, Third Circuit Court, Detroit, Michigan, on

January 18, 2011.

APPEARANCES:

RAJ PRASAD P68519 and ATHINA SIRINGAS P35761
Assistant Prosecuting Attorney
Wayne County Prosecutor's Office
1441 St. Antoine
Detroit, MI 48226
(313) 224-5818



SUSAN ROCK P34497 and GERALD KARAFA P35628
24500 Ford Rd.
Dearborn Heights, MI 48127
(313) 967-4444




Sean Allen
Official Court Reporter
CSMR 5265


-1-

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:  NONE.

1

2

3

4

5

6

7

 1                    Detroit, Michigan.

 2                    January 18, 2011.

 3                    (At 12:32 p.m.)

 4            THE COURT:  We'll say what we're going to

 5       say twice.  I don't care about whether Mr. Howard is

 6       here originally.  But your appearances, for the record,

 7       please.

 8            MS. SIRINGAS:  Athina Siringas, your Honor,

 9       appearing on behalf of the People.

10            MS. ROCK:  Your Honor, Susan Rock

11       representing Mr. Howard.

12            THE COURT:  Okay.  First note I got was, how

13       long should we deliberate?  We are stuck on the first

14       count.  And I asked them, do you have a verdict on count

15       two and count three?  Their response was, yes.  We have

16       a verdict on count two and three.

17            On count one, they mentioned that they

18       didn't believe that there could be a change of mind and

19       asked can you instruct us, once again, on the use of

20       common sense and reasonableness?  I sent out something,

21       yes, I would be happy to and will accept your verdict on

22       count one and count two [sic].  And they said, okay.

23       Thank you.

24            So, that's the conversation between the

25       Court that's recorded in notes.  And so, those are my

                              -3-

1      intentions, to accept a verdict as to count two and

2      count three.

3              MS. ROCK:  Your Honor, defense would object.

4      I think the Court should declare a mistrial as the jury

5      is hung.

6              THE COURT:  They're not hung on count two

7      and count three.

8              MS. ROCK:  I consulted a state appellate

9      defender attorney before I came down here and that's one

10     of the options, is to ask the Court to grant a mistrial

11     and to declare the jury hung.

12             THE COURT:  As to something that they are

13     not hung on?

14             MS. ROCK:  The entire trial.  Yes.

15             THE COURT:  Are they hung on count two and

16     count three, per their notes?

17             MS. ROCK:  Well, per their notes, no.  But

18     I'm saying--

19             THE COURT:  (Interposing)  Okay.  Each count

20     is a separate count where evidence goes separately to

21     each separate count.  So, I've got your position.

22     What's your position?

23             MS. SIRINGAS:  My position, of course, your

24     Honor, is that you can accept the counts that they've

25     reached a verdict on.  But is the Court going to give

                              -4-

1     then the Allen charge as count to one and instruct them

2     to continue deliberating?

3                    THE COURT:  No.  They asked for me to --

4     Their note said, can you, once again, can you instruct

5     us again on the use of common sense and reasonableness?

6     I'm going to do what their note suggested.

7                    MS. SIRINGAS:  So, you're going to instruct

8     on reasonable doubt?  Or what does that -- As far as

9     common sense and reasonableness, is that what the Court

10    is going to instruct on?

11                   THE COURT:  Yes.  And then after I do what

12    I'm going to do, then I'll ask you all any objection?

13    And then if there's an objection, put your objection on

14    the record.

15                   MS. SIRINGAS:  I would ask the Court to at

16    least give the Allen charge because they did indicate,

17    and the Court has not done that, they did indicate that

18    they are hung and they're struggling over count one.

19    And I would ask the Court to give the Allen charge as it

20    relates to them being hung.

21                   THE COURT:  Okay.  Where is young Mr.

22    Howard?  Not yet?  On his way?

23                   (At 12:34 p.ml off the record.)

24                   (At 12:40 p.m. back on the record.)

25                   THE COURT:  Okay.  I guess I'll knock on the

-5-

1    door.

2                    (At 12:40 p.m. jury enters the courtroom.)

3                    THE COURT:  Mr. Balliet, I see you're the

4    one with the verdict sheet.  What I had suggested in the

5    letter I wrote back to your response is that we would

6    accept the verdict as to count two and count three.  So,

7    you all have reached a unanimous verdict as to those

8    counts?

9                    THE JURORS:  Yes.

10                    THE COURT:  Okay.

11                    THE CLERK:  Okay.  What I'm going to do is

12    I'm just going to ask you to stand and then I'm going to

13    ask you what the verdict is as to count two and then as

14    to count three.  How do you find the defendant, Deonte

15    Howard, as to count two, assault with intent to murder

16    as to Audrey Allen?

17                    JUROR BALLIET:  Not guilty.

18                    THE CLERK:  Okay.  And as to the lesser

19    included offense of assault with intent to do great

20    bodily harm?

21                    JUROR BALLIET:  Guilty.

22                    THE CLERK:  Okay.  And as to count three

23    felony firearm?

24                    JUROR BALLIET:  Guilty.

25                    THE CLERK:  Okay.  Could I have all jurors

1          please stand, raise your right hands and listen to your

2          verdicts as recorded by the Court?  Do you swear upon

3          your oaths that you find the defendant, Deonte Howard,

4          guilty of the lesser included offense of count two

5          assault with intent to do great bodily harm and guilty

6          of count three felony firearm, so say you all members of

7          the jury?

8                    THE JURORS:  Yes.

9                    THE CLERK:  Okay.  You can be seated.

10                    THE COURT:  Either side want the jury polled

11         as to counts two and count three?

12                    MS. SIRINGAS:  No.

13                    MS. ROCK:  I do, your Honor.

14                    THE COURT:  Okay.  Polling the jury simply

15         means that everybody is asked the same question.  After

16         having heard the verdict, was that and is that your

17         verdict?  Mr. Ulatowski will take that answer.

18                    THE CLERK:  Okay.  What I'll just do is I'll

19         go juror in seat number one, were those and are those

20         your verdicts?  Give me that and I'll just go right down

21         the line.  Okay.  Juror in seat number one, were those

22         and are those your verdicts?

23                    THE CLERK:  Juror in seat number one, were

24         those and are those your verdicts?

25                    JUROR NUMBER ONE:  Yes.

-7-

1                    THE CLERK:  Juror in seat number two, were

2        those and are those your verdicts?

3                    JUROR NUMBER TWO:  Yes.

4                    THE CLERK:  Juror in seat number three, were

5        those and are those your verdicts?

6                    JUROR NUMBER THREE:  Yes.

7                    THE CLERK:  Juror in seat number four, were

8        those and are those your verdicts?

9                    JUROR NUMBER FOUR:  Yes.

10                   THE CLERK:  Juror in seat number five, were

11       those and are those your verdicts?

12                   JUROR NUMBER FIVE:  Yes.

13                   THE CLERK:  Juror in seat number six, were

14       those and are those your verdicts?

15                   JUROR NUMBER SIX:  Yes.

16                   THE CLERK:  Juror in seat number seven, were

17       those and are those your verdicts?

18                   JUROR NUMBER SEVEN:  Yes.

19                   THE CLERK:  Juror in seat number eight, were

20       those and are those your verdicts?

21                   JUROR NUMBER EIGHT:  Yes.

22                   THE CLERK:  Juror in seat number nine, were

23       those and are those your verdicts?

24                   JUROR NUMBER NINE:  Yes.

25                   THE CLERK:  Juror in seat number ten, were

1      those and are those your verdicts?

2                      JUROR NUMBER TEN:  Yes.

3                      THE CLERK:  Juror in seat number eleven,

4      were those and are those your verdicts?

5                      JUROR NUMBER ELEVEN:  Yes.

6                      THE CLERK:  And juror in seat number

7      thirteen, were those and are those your verdicts?

8                      JUROR NUMBER THIRTEEN:  Yes.

9                      THE CLERK:  Okay.  The jury has been polled.

10                     THE COURT:  Thank you.  Your second request

11     to me is to go back over common sense and

12     reasonableness.

13                     I can start with common sense and

14     reasonableness as we related in that first example that

15     we both talked about, how there's a limitation, how you

16     don't by vibes or bad experiences.

17                     We talked about common sense and reasonable

18     as it took to looking at evidence.  And, in particular,

19     I think we talked about indirect evidence or

20     circumstantial evidence in terms of how to process it,

21     that you can use inductive or deductive reason and logic

22     and in a set of circumstances or evidence, can you draw

23     a conclusion just looking at it that's consistent with

24     reasonableness and common sense?

25                     Can we look at all the snow we had yesterday

                                -9-

1       and not going outside and then seeing it all gone today,

2       can we conclude that it either got really, really warm

3       or it rained a lot in order to make that snow evaporate?

4       Is that consistent with reasonableness and common sense?

5              Did I talk about the -- The easy example, I

6       said about a dog coming into the room, right?  Right.  I

7       mean, those are easy ones where you know you weren't

8       there.

9              The other ones are based on what is

10      consistent with what makes sense.  Does a person see as

11      well at night as they do in the day time?  And what

12      would affect a person's ability to see well in the day

13      time that wouldn't at night?  Glasses, distance, you

14      know, other things that are happening that might

15      interfere with a person's ability to see or hear

16      clearly.

17             What things might affect a person's memory?

18      What do we attribute?  I mean, certainly, they couldn't

19      be paying attention.  But how about if there were some

20      other things going on that they were adding to the list

21      and they were more familiar.  And it happens to me all

22      the time when I go to the store.  If it's something

23      familiar, you don't have to write it down.  If it's not

24      something I generally shop for, then you need to write

25      that down because on recall that's not going to come

                              -10-

1     back as soon or as quickly.

2              So, is it common sense to think that we'll

3     remember those things that we're more familiar with than

4     things that we're not?  It might be.  But it also could

5     go to the point of something that's so unique and so

6     different, it's common sense to think that that's going

7     to be remembered, too.

8              Let's go to an office party at Christmas

9     time.  Everybody's wearing white, except one lady who's

10    wearing red.  There, the uniqueness of her red would be

11    remembered more than the things that are consistent with

12    the other group.

13             Common sense and reasonable are things that

14    will not violate the process and how you get from a set

15    of circumstances to an answer.  Let me give you the

16    craziest example, but true.  This one will get you.

17    You'll end up saying, Bruce, you are just as crazy as we

18    are sometimes.

19             I had driven to the show and left my lights

20    on.  But I didn't know I had left my headlights on.  And

21    when we got out of the show at like 1:30, I saw the

22    parking lights were real, real dim, ran to the car.  I

23    didn't even get a click when I hit the ignition.  I had

24    nothing.  It was the middle of the summer.  And I was

25    like, oh, goodness.  I know I don't have any battery

1    cables.  I didn't even bother to look because I knew I

2    didn't have any battery cables.  So, as I'm heading back

3    to the front of the show watching people spill out, I'm

4    thinking, oh, goodness.  Let me find somebody who has

5    battery cables.

6              Now, how do you find somebody that has

7    battery cables the stupid way?  I'll tell you the stupid

8    way.  You say, hmm.  Let me think of how somebody would

9    look that has an old car that has a bad battery.  So,

10   how does that person look, Bruce?  Well, I decided the

11   person was wearing jeans, boots and a T-shirt.  So, I

12   looked for people that wear jeans, boots and a T-shirt.

13             And then I said, after that failed, I said,

14   let me look for somebody that looks conservative.

15   Because I'm still using reason and common sense.  Right?

16   So, I'm looking for people that look conservative.  And

17   I run up to them and I say, do you happen to have any

18   battery -- No.  No.  No.  My wife is watching this

19   entire process, by the way.

20             And so, she just goes to the front of the

21   theater and says, does anybody have any battery cables?

22   See how easily reasonableness and common sense can take

23   care of some things?  Here I was trying to make a

24   profile of what a person looks like who has battery

25   cables.

1           And this is where stupid even kicked in

2    further.  The person that came out of that theater had

3    on a trench coat that had the three loops and the belt

4    was only in one of the loops.  And so, the belt was

5    dragging on the ground.  It was misbuttoned.  And so, it

6    looked hiked up in the front and one of the collars was

7    tucked in and the other collar was flying out.  And when

8    he said that he had battery cables, I was like, I know

9    that man doesn't have battery cables.  But I followed

10   him and he had the battery cables.  But had it been left

11   to me, I wouldn't have even asked him.  I would have

12   been that stupid because I was all set on this profile

13   for who -- You know, you can get away from common sense

14   and reasonableness.

15           And here's where it all ties in to what you

16   all have already been doing.  Again, when folks

17   disagree, you have to make sure that the disagreement is

18   honest and that you're being open and honest with each

19   other.  Because sometimes without that honesty

20   component, it's not going to be credible because you

21   have to be frank and honest with people.  And honesty

22   can get people to have an opinion about you, sometimes

23   that you don't like.

24           We talked about division, long division and

25   the process when you don't agree with somebody.  You ask

-13-

1   them, okay, take me step-by-step.  Explain it to me
2   again.  In hopes that if they explain it, other people
3   see the explanation and the reasonableness of it?  Or
4   they see that it's not as reasonable as somebody else's
5   opinion and to process that.  But it's all based on
6   honesty.
7          And certainly, you all need to know that you
8   are not expected to change your honest opinion just for
9   the sake of reaching a unanimous verdict, that if it
10  makes more sense change and if not, stick with your
11  guns.  And you've already processed all of that by
12  reaching conclusions on count two and count three.  I
13  mean, you know the process.  You've worked the process.
14  Maybe the focus again should just be at re-looking at
15  it, explaining those areas of differences and just being
16  honest.
17         Now, if you want to go to lunch, that's
18  fine.  If you don't and you want to go back there and
19  if, let's say in an hour, you're feeling the same heat,
20  you just let me know by a note and I'll tell you what
21  we're going to do.  Okay?
22         Because you're not going to be locked in
23  that room.  That, we're not going to do.  I'm not
24  standing on toes and I'm not twisting arms, you know.  I
25  know that you've been working.  So, I'll respect

-14-

1    whatever you all say.  Whatever you say, we'll figure

2    out, from my end, where that goes.  Okay?  I don't want

3    anybody to feel pressured to do anything except be

4    honest.  Any questions?  Okay.  You know I love you.

5                MS. ROCK:  Your Honor, if I may?

6                THE COURT:  Just a second, ma'am.

7                MS. ROCK:  Okay.  Sorry.

8                THE COURT:  Go ahead, please.  Go back in.

9                (At 12:52 p.m. jury leaves the courtroom.)

10                THE COURT:  Any comments from the

11    prosecution, first of all?

12                MR. PRASAD:  No, sir.

13                THE COURT:  What is it, Ms. Rock?

14                MS. ROCK:  Yes, your Honor.  The jury asked

15    for an instruction on reasonable doubt.  I didn't hear

16    you talk about reasonable doubt.  So, I--

17                THE COURT:  (Interposing)  The instruction

18    was about -- And I'm sorry if that's what you remember.

19    Could you instruct us again on the use of common sense

20    and reasonableness?

21                MS. ROCK:  But there was also a note that

22    talked about reasonable doubt.

23                THE COURT:  It did not, ma'am.  I didn't

24    read a note -- I read the notes as they appeared.  And

25    never did I mention reasonable doubt.  And I instructed

-15-

1    them.  Can you instruct us again on the use of common

2    sense and reasonableness?

3              MS. ROCK:  Well, I'm asking the Court to

4    give the instruction on reasonable doubt.

5              THE COURT:  Okay.  Then I'm going to deny

6    that request.  Anything else, ma'am?

7              MS. ROCK:  No, your Honor.

8              THE COURT:  Okay.  Bless you all.  Thank

9    you.

10             MS. ROCK:  In the middle of -- While you

11   were reading the verdict, the deputy came over and sat

12   on the bench opposite my client.  I don't think that

13   gives a good appearance towards the jury.  I think it

14   sends the wrong message.

15             THE COURT:  Okay.  Anything else, ma'am?

16             MS. ROCK:  No.

17             THE COURT:  Thank you.

18             (At 12:54 p.m. off the record.)

19             (At 2:55 p.m. back on the record.)

20             (At 2:55 p.m. jury enters the courtroom.)

21             THE COURT:  Have a seat, please.  I got your

22   last note that says that you believe that you are at an

23   impasse.  So, I've only got one question to ask you.

24   And that is, do you believe that if you were allowed to

25   deliberate as long as you wanted to that you think that

                              -16-

1    the conclusion of your being at an impasse would change?

2    Do you think that you all might be able to reach a

3    verdict?  Does everybody think no?

4                    THE JURORS:  No.

5                    THE COURT:  Okay.  That's twelve no's, is

6    that right?

7                    JUROR BALLIET:  That's correct.

8                    THE COURT:  Okay.  And with that, let me ask

9    you all to ease on back into the jury room and I'll see

10   you in a second.  Okay?

11                   (At 2:57 p.m. jury leaves the courtroom.)

12                   THE COURT:  As all parties are aware, or I'm

13   bringing them up to speed, I had actually instructed

14   them the last time before lunch that they had sent out a

15   note saying that they were at an impasse and they needed

16   further instruction by the Court as it relates to

17   reasonable doubt.  I provided them with that and an

18   opportunity for both sides to make whatever additional

19   comments that they wished to make.

20                   And, at this juncture, after getting twelve

21   no's that they don't think that if allowed further time

22   to deliberate they would be able to reach a conclusion,

23   a unanimous decision, I'm going to say that after the

24   work that I've seen them put in and the seriousness in

25   which they engaged their work that I believe their

-17-

1    response was straight forward.

2                    And so, I would declare, as it relates to

3    count one, that there's a deadlocked jury.  And I'll

4    leave it to you all to decide how to proceed from there.

5    But as you all think about that, we'll set a sentencing

6    date for count two and count three.

7                    MR. PRASAD:  Thank you, Judge.

8                    MR. KARAFA:  Thank you Judge.

9                    MR. PRASAD:  Judge, may I address one thing

10   for the record?

11                   THE COURT:  Oh, no.  No.  Go ahead.

12                   MR. PRASAD:  You said reasonable doubt.

13   Their question was as to reasonableness and common

14   sense.

15                   THE COURT:  Thank you.  You got it.

16                   MR. PRASAD:  Just to clarify.

17                   THE COURT:  Susan got me saying that.  Okay.

18   I'm sorry.  Was there any objection to the dismissal by

19   the Court?

20                   MR. PRASAD:  No, Judge.

21                   MR. KARAFA:  No objection, your Honor.

22                   THE COURT:  I'm sorry.  I didn't even ask

23   that question.

24                   MR. KARAFA:  Thank you, your Honor.  Thank

25   you very much.

1                   THE COURT:  Thank you.

2                   (At 2:58 p.m. proceedings concluded.)

                R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS  )
COUNTY OF WAYNE    )

                I, SEAN E. ALLEN, CSMR 5265, Certified Court

Reporter acting in and for the Third Judicial circuit,

Wayne County, State of Michigan, do hereby certify that

the foregoing pages 1 through 19, inclusive, were

reduced to typewritten form and comprise a true

rendition of the proceedings taken in the above-entitled

matter on January 18, 2011.

                I FURTHER CERTIFY THAT MY CERTIFICATION

ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN,

SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES

NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED

COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                         _____
                         SEAN E. ALLEN -- CSMR 5265
                         Official Court Reporter.

DATED:  This 30th day of May 2012.