STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN

v

Case Number

10-5562-01

DEONTE HOWARD

Defendant.

_____/

SENTENCE

PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

Judge, Third Circuit Court, Detroit, Michigan, on

February 9, 2011.

APPEARANCES:

ANGELA LEICK P63518
Assistant Prosecuting Attorney
Wayne County Prosecutor's Office
1441 St. Antoine
Detroit, MI 48226
(313) 224-6804

SUSAN ROCK P34497
Attorney for the Defendant.
P.O Box 39287
Redford MI 48239
(313) 937-4444

SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044

-1-

TABLE OF CONTENTS

WITNESSES:  NONE.

EXHIBITS:   NONE.

1                    Detroit, Michigan.

2                    February 9, 2011.

3                    (At 10:40 a.m.)

4                    THE COURT:  This is case number 10 5562,

5        Deonte Howard.

6                    MR. LEICK:  Angela Leick for the People,

7        standing in for the prosecutor of record, Raj Prasad.

8                    MS. ROCK:  Good morning, your Honor, Susan

9        Rock representing Deonte Howard.  Your Honor, today is

10       the date of the sentencing.  The Court very graciously

11       allowed me to take the presentence report to the

12       juvenile detention facility.  I was able to spend

13       approximately an hour, an hour and fifteen minutes with

14       Mr. Howard going through the, going through the

15       presentence report with him.

16                   The only thing I would ask, your Honor, on

17       this particular case, apparently, the prosecutor is not

18       here and it's my understanding the prosecution was going

19       to be seeking an adjournment.

20                   MR. LEICK:  That was before.  I needed to

21       get the pre.

22                   MS. ROCK:  Oh.  Okay.  I'm sorry.  I'm

23       seeking an adjournment, your Honor, of the sentencing

24       because I think that they should decide what's going to

25       happen with regard to the primary charge of the murder

-3-

1        in the first degree case.

2               I also think that, depending on how it goes,

3        the Court may -- You know, there's a variety of ways it

4        could go, depending on the outcome of the first degree

5        murder case.  There's a possibility that he could, you

6        know, if he's acquitted, then the Court may want to

7        refer him for a psychologist to determine if he wants to

8        sentence him as a juvenile on the other charges.

9               I also think -- I talked to Mr. Howard also.

10       I felt, at this point, I had given Mr. Howard my best.

11       I had worked very hard--

12              THE COURT:  (Interposing)  Okay.  You're all

13       over the place on me.

14              MS. ROCK:  Sorry.

15              THE COURT:  All over the place.

16              MS. ROCK:  All right.

17              THE COURT:  So, you're asking for an

18       adjournment, first and foremost, to force the

19       prosecution to come to some decision about what they

20       want to do.  And they have a kazillion years to decide

21       because there's no statute of limitations on the murder.

22       So, I can't adjourn something only because you want them

23       to decide something in a particular time so that you can

24       know how to proceed.

25              MR. LEICK:  Actually, from my understanding,

                                -4-

1        I talked to Mr. Prasad yesterday, they are going forward

2        on that, the charge that they were hung on.  He said, if

3        you want to set a trial date, he told me that he's

4        available for any date that you set.

5                He would be in agreement with the

6        adjournment for the sentencing only because he would

7        want to see if there's something that he can work out

8        with that other, the other charge encompassing the

9        sentencing on this as well.  So, that's what I was

10       informed.  He's in Inkster today doing an exam.  That's

11       the only reason he's not here.  But he would be in

12       agreement with the adjournment for those reasons.

13               THE COURT:  Yeah.  But that's not going to

14       happen because the charge is -- I'm sorry.  The defense

15       was it wasn't him, not that it was with a different

16       intent, but that it wasn't him.  And so--

17               MR. LEICK:  (Interposing)  Then I ask the

18       sentencing to be put over later today.  I'm not ready --

19       I don't know anything about this case and I'm not going

20       to do the sentencing.  Mr. Prasad needs to be here for

21       the sentencing.

22               THE COURT:  Well, is that, is that his

23       intent?

24               MR. LEICK:  No.  He thought it was going to

25       be adjourned.  I can text him and find out when he'll be

-5-

1      back here from Inkster, what time today, if you want to

2      do the sentencing today.

3                    THE COURT:  Well, I intend to do it today.

4      You have all of these people.  Nobody told all of these

5      people not to come--

6                    MR. LEICK:  (Interposing)  I discussed it

7      with a family member of the deceased.

8                    THE COURT:  Right.  But if he knew he wasn't

9      going to be here yesterday, then they're finding out

10     today that they came down for no reason at all.

11                   MR. LEICK:  Well, like I said, I'll text him

12     and find out when he can be here today.

13                   MS. ROCK:  Your Honor, if I may, because I'd

14     like to make a continued record.  That really wasn't --

15     Maybe that's what was communicated to the Court.  I

16     wasn't seeking an adjournment to press the prosecutor

17     into making a decision on the case.

18                   What I was seeking an adjournment for is I

19     felt that the two cases, what should be -- We should

20     wait and find out what happens on the first degree

21     murder case.  I also would like to have Mr. Howard

22     evaluated by a psychologist as the Court may consider

23     sentencing him as a juvenile on the assault with intent

24     to do great bodily harm or felony firearm.  And I think

25     that would be important to the Court to have him

-6-

1    evaluated by a psychiatrist to determine or psychologist

2    to determine if he should be sentenced as a juvenile.

3              Also, I, and then I have another matter

4    beyond the adjournment that I think in this particular

5    case I think it should be adjourned for those two

6    reasons, that the, that to find out what is going to

7    happen on the first degree murder case and also to--

8              THE COURT:  (Interposing)  Okay.  Well, we

9    don't need to adjourn it to find out what's going to

10   happen on the murder the case.  We've already known that

11   the People don't have to make a decision with any

12   particular, with any particular time.  And we know that

13   they intend on going forward.  So, that's -- He's just

14   going to be tried on that.

15             MS. ROCK:  Okay.  But it seems to me even if

16   he's going to be tried on it, I would argue that we

17   should just wait to find out what happens on it.  If

18   he's acquitted of the charge, then that's going to, I

19   think, have an impact hopefully on the Court's

20   sentencing.

21             THE COURT:  Well, then there's always a

22   motion for resentencing, right?

23             MS. ROCK:  Well, I think that -- Well,

24   except the damage will be done.  If the Court decides to

25   sentence him to prison, the damage -- A seventeen year

-7-

1          old young man is going to, could be sentenced, you know

2          -- If you decide to sentence him to prison, the damage

3          is already done at that point.

4                         THE COURT:  What damage is done?

5                         MS. ROCK:  Well, because he goes to prison

6          versus being sentenced as a juvenile.

7                         THE COURT:  And going where?

8                         MS. ROCK:  Then to the juvenile detention

9          facility or receiving probation--

10                        THE COURT:  (Interposing)  No.

11                        MS. ROCK:  As a juvenile.

12                        THE COURT:  He's not receiving probation as

13         a juvenile.

14                        MS. ROCK:  Okay.  Then he needs to, then I'm

15         also--

16                        THE COURT:  (Interposing)  So, there's,

17         there's--

18                        MS. ROCK:  (Interposing)  I'm sorry.

19                        THE COURT:  No damage that's going to be

20         done.  He is not positioned by these sentencing

21         guidelines by the verdict that was rendered by the jury,

22         there was no sentencing negotiations that said in

23         exchange for a plea that they would agree to have him

24         sentenced as a juvenile.  He wasn't charged as a

25         juvenile.  He was charged as an adult.

-8-

1                    MS. ROCK:  And these guidelines are wrong.

2                    THE COURT:  Well, then we can correct the

3       guidelines.

4                    MS. ROCK:  Okay.

5                    THE COURT:  But we don't do anything that's

6       not consistent with the flow.  So, let's go over the

7       guidelines.

8                    MS. ROCK:  Well, okay.

9                    MR. LEICK:  I can't go over the guidelines.

10                   THE COURT:  Well, did you page him?  And

11      then when is he going to be here?

12                   MR. LEICK:  I texted him.  I'm waiting to

13      hear back from him.

14                   THE COURT:  So, what are you contesting in

15      the sentencing information report?

16                   MS. ROCK:  Well, your Honor, I'm contesting

17      the prior record variable score, PRV seven.  They said

18      that that's the score that says if there's multiple

19      counts.  And then it also says if felony firearm is one

20      of the multiple counts, it shouldn't be scored.

21                   MR. LEICK:  Okay.  That I can talk to.  Was

22      he found guilty of one count of GBH and then felony

23      firearm?  Was that the verdict?

24                   MS. ROCK:  Yes.

25                   MR. LEICK:  Then I would be in agreement

1    with Ms. Rock.  You can't use felony firearm as a

2    multiple conviction.

3               MS. ROCK:  So that should be zero.

4               THE COURT:  Okay.

5               MR. LEICK:  That I can speak to.

6               MS. ROCK:  Now, PRV six, I went over, as I

7    told the Court, I did go over the presentence report

8    with Mr. Howard.  I didn't see anything that was -- PRV

9    six says, they gave him five points -- It says the

10   offender is on probation or delayed sentence status or

11   on bond awaiting adjudication or sentencing for a

12   misdemeanor.

13              THE COURT:  No.  No.  It says for a --

14   Right.  For a misdemeanor.

15              MS. ROCK:  Right.

16              THE COURT:  I'm sorry.

17              MS. ROCK:  And I didn't know that that was

18   true.  And so, it's either zero or five.

19              THE COURT:  Well, it's listed as five.

20              MS. ROCK:  Right.  But I'm saying it's zero

21   because I don't know that he was -- As far as I know, he

22   wasn't on probation or delayed sentence status or on

23   bond.

24              THE COURT:  He's on bond awaiting

25   adjudication if he has a pending charge in the 36th

-10-

1    District Court.  Correct?

2              MS. ROCK:  If they gave him bond.  You know,

3    that may just be a warrant.  It says violation of the

4    code.

5              MR. LEICK:  Marijuana code.

6              MS. ROCK:  Doesn't mean that he was on bond.

7              THE COURT:  Has he been arraigned on it?

8    Does the prosecution have any evidence that he has been

9    arraigned on it?

10             MR. LEICK:  I don't have anything -- I'm

11   looking just at the sentence report.  Obviously--

12             THE COURT:  (Interposing)  Were you provided

13   the file for Mr. Howard?

14             MR. LEICK:  No.  I don't have anything.  I

15   thought I was just standing in to -- That's all I was

16   conveyed, all I was told.  So, absolutely zero prepared

17   to do any of this.

18             THE COURT:  Okay.  Because there's no ticket

19   number here.  There's no evidence.  So, the presentence

20   report is not, does not corroborate any information that

21   would make PRV six receive a five.  So, without any

22   corroboration, evidence to corroborate that, that would

23   also be a zero.  So, his prior record variable level

24   would be zero.

25             MS. ROCK:  So, we have the offense variables

                           -11-

1    next.

2                    MR. LEICK:  We can't do those.

3                    MS. ROCK:  Oh.

4                    THE COURT:  We might.  We might.  It all

5    depends on what they are.

6                    MS. ROCK:  I don't mind, your Honor.  I'm

7    flexible.  I'm not going to argue with offense variable

8    number one, which gives him twenty-five points.  But I

9    think it's double-dipping to score him five points for

10   OV two.  And so, that would be my argument.

11                   THE COURT:  That it's double-dipping.

12                   MS. ROCK:  Yes.  It's double-dipping.

13                   THE COURT:  Not that it's incorrectly

14   scored, not that there's an exception that moves him out

15   of that, but that it's double-dipping?

16                   MS. ROCK:  Yes, sir.

17                   THE COURT:  Okay.  No such thing as a

18   double-dipping exception.  So, two is going to stand at

19   five.

20                   MS. ROCK:  OV three, we're dealing with the

21   assault with intent to do great bodily harm.  There was

22   a hung jury on the murder charge.  I say that's ten

23   points.

24                   THE COURT:  Well, what does the second

25   bullet say.  The second bullet says score one hundred

                              -12-

1     points if death results from the commission of the

2     offense and homicide is not the sentencing offense.

3                 MS. ROCK:  But the offense that he was

4     convicted on is the assault with intent to do great

5     bodily harm and felony firearm, for that particular

6     offense.

7                 THE COURT:  Right.  Which makes this -- And

8     homicide is not the sentencing offense.

9                 MS. ROCK:  Well, I think that it should be

10    scored ten points, your Honor.

11                THE COURT:  Okay.  Well, I think that the

12    assessment that it was given is consistent with the

13    instructions that are contained in OV three.

14                MS. ROCK:  On OV seven, it scores him fifty

15    points for sadism, terrorism.

16                MR. LEICK:  Well, not just that.  Torture,

17    excessive brutality or conducted designed to

18    substantially increase fear.

19                THE COURT:  First of all, there was nothing

20    to suggest that anybody acted sadistically.  There was

21    no torture.  There was no--

22                MR. LEICK:  (Interposing)  Well, the other

23    part of it, the or part of it is conduct designed to

24    substantially increase the fear and anxiety the victim

25    suffered during the offense.

                              -13-

1              THE COURT:  Right.

2              MR. LEICK:  So, it's sadism, torture or

3    excessive brutality or that conduct.

4              THE COURT:  I got you.  And there's no

5    evidence of that conduct.

6              MS. ROCK:  The last, OV twelve that I'm

7    contesting -- I'm contesting OV twelve.  They gave him

8    five points for a number of contemporaneous felonious

9    criminal acts.  They said two contemporaneous felonies,

10   criminal acts involving other crimes were committed.

11   And then it says in the instruction, a felonious

12   criminal act is contemporaneous if both of the following

13   exist.  And it says the criminal act has not and will

14   not result in a separate conviction.  And in this

15   particular case, he's going to have the felony firearm,

16   the felony firearm.  So, I would say that should be

17   zero.

18             MR. LEICK:  I don't think the felony firearm

19   makes it a separate conviction.

20             THE COURT:  No.  No.  If you look at the

21   third bullet point, the first thing it says is that

22   possession of a firearm during the commission of a

23   felony--

24             MR. LEICK:  (Interposing)  Yeah.

25             THE COURT:  Should not be counted when

-14-

1       scoring this variable.

2                   MR. LEICK:  Oh, yeah.  I see that.

3                   THE COURT:  That's number one.

4                   MS. ROCK:  Thank you.

5                   MR. LEICK:  Okay.

6                   THE COURT:  So, you don't count that.

7                   MR. LEICK:  No.  You don't.

8                   THE COURT:  And the other charge that is

9       open is described as, if you look at the first bullet

10      point, the third paragraph, it says:

11                  "The criminal act has not and will not

12                  result in a separate conviction."

13                  It is the People's hope that it will

14      result--

15                  MR. LEICK:  (Interposing)  It does.  Yeah.

16      Yes.

17                  THE COURT:  And so, then there are--

18                  MR. LEICK:  (Interposing)  I understand.

19                  THE COURT:  No acts to be counted.

20                  MR. LEICK:  Yeah.  That's true.  No.  That's

21      right.  If you can't use felony firearm, then there

22      isn't any.

23                  THE COURT:  Right.  So, OV twelve should be

24      zero.  So, you have a hundred and thirty points as

25      opposed to a hundred and -- No.  A hundred and forty

                              -15-

1    points instead of a hundred and--

2              MS. ROCK:  (Interposing)  Ninety-five.

3              THE COURT:  Ninety-five.  And it doesn't

4    change the level.

5              MS. ROCK:  Your Honor, just for the, just

6    for the record, I just want to say OV one and OV two,

7    rather than calling it double-dipping, I'd like to call

8    it double jeopardy.  But I think there's a double

9    jeopardy argument in there.

10             THE COURT:  There still is no exception,

11   doesn't say in the instruction if a person receives

12   twenty-five points for OV one, then don't count OV two.

13   If it was meant to do something different than what it's

14   doing, there would be an instruction telling you to

15   exclude it or how to count it.  Absent that, that's the

16   way it was intended.

17             MS. ROCK:  Your Honor, based on my review of

18   the guidelines, as I stated to you, based on my

19   objections, I think he should be in a zero to seventeen

20   range.  If we're following your range, it would be ten

21   to twenty-three.

22             THE COURT:  Then I guess we're going by

23   mine.  Okay?  What did he text back?

24             MR. LEICK:  That he has no idea.  He's in

25   all-day exams.  Waiting for Judge James to find out if

                              -16-

```
1      they're going to start.  I'm talking to him if he wants
2      me to just do it now and what he would want me to say if
3      you could give me like five minutes.  Then I'll--
4               THE COURT:  (Interposing)  Why don't you
5      just call him?
6               MR. LEICK:  Because he's sitting in the
7      courtroom.
8               THE COURT:  But if the Judge isn't there..
9               MR. LEICK:  No.  She's there.  They're doing
10     -- Let me ask him if I can all him.  Can we take a few
11     minutes?
12               THE COURT:  I had all day.  Now, we only
13     have one more hour of the day.  Then we go into
14     afternoon.
15               (At 10:57 a.m. off the record.)
16               (At 11:11 a.m. back on the record.)
17               MS. ROCK:  Ready, your Honor.
18               THE COURT:  Okay.  Go ahead, Ms. Rock.
19               MS. ROCK:  Thank you, your Honor.  We--
20               THE COURT:  (Interposing)  Those were the
21     corrections that were made to the sentencing information
22     report.  Are there any corrections to be made to the
23     body of the presentence report?
24               MS. ROCK:  Yes.  Your Honor, of course, we -
25     - I want to put an objection on the record as to the
```

1        agent's description of offense, the offense.  We, of

2        course, do not agree with that.  On page three, it would

3        be the second paragraph from the top.  It says that Mr.

4        Howard, Deonte Howard pled guilty to assault with intent

5        to do great bodily harm and felony firearm.  That did

6        not happen, as the Court knows.

7                    Also, on page four, they did not list his

8        brother, Jermaine Howard, who's twenty-six years old and

9        lives in Westland.

10                   THE COURT:  Give me two seconds.  Here we

11       are.  I got it.  How old is his brother?

12                   MS. ROCK:  Twenty-six.  And Jermaine is the

13       regular Jermaine spelling.

14                   THE COURT:  I got.  Just like Jermaine

15       Jackson.

16                   MS. ROCK:  Yes.

17                   THE COURT:  Anything more?

18                   MS. ROCK:  Your Honor, those are the end of

19       the corrections.

20                   THE COURT:  Okay.  Anything the People wish

21       to say?

22                   MR. LEICK:  Yes, your Honor.  We do have a

23       relative of the victim that would like to address the

24       Court.  Come around here.

25                   MS. ROCK:  Your Honor, I'm going to object

-18-

1    to the mother of Tyrone Simpson speaking.  This does not

2    deal with that charge.  That charge is still pending.

3              THE COURT:  Okay.  Your objection is noted.

4    I'll let her speak.  Would you state your name, please?

5              MS. HUNT:  Delfera Hunt.

6              THE COURT:  Yes, Ms. Hunt.

7              MS. HUNT:  I just want to say that I don't

8    like what's going on.  I miss my son so much.  He was a

9    very sweet person.  He wasn't violent at all.  He just

10   had a baby.  He's not here to see his baby grow up.

11   This is just so hard on me.  It's just so hard.  I miss

12   my baby so much.

13             THE COURT:  And your name, please.

14             MS. SMITH:  My name is Rhonda Smith.  My

15   daughter is Latosha Codwell (sp.).  She's the mother of

16   Mr. Simpson's baby, the goddaughter of Anthony, of Dre.

17   We just want to let him know how this whole situation

18   has impacted not only our family, but our community.

19             Tyrone was one of them people that looked

20   out for the people in our community.  He tried to keep

21   our neighborhood at a decent level.  And a lot of people

22   didn't realize that.  He didn't believe in violence.  He

23   didn't believe in guns.  He didn't believe that's how

24   you settled things.

25             But we understand that there are some people

-19-

1     out there in the world that think that having a gun

2     makes you a man and doing a little time gives you that

3     pilgrimage to that next level.  And it's an ignorance

4     that I hope can be stopped in our community soon and

5     that they realize what they're doing to people every

6     time they choose to pull a gun to solve a problem, that

7     they're not hurting nobody but themselves, their

8     community, their family and the people around him.

9               My granddaughter now has to grow up without

10    a father, another statistic for the city of Detroit.

11    Thank you.  Another statistic with her chances.  All she

12    have now is her mother and me and her grandmother.

13    That's it.

14               And we pray that this Court recognize the

15    severity and not take this as a joke, as I've been

16    seeing in this courtroom, people laughing and thinking

17    it's funny because he's only looking at maybe one or two

18    years here and there.  And I'll be back out on the

19    streets.

20               I swear, I hope that these people realize

21    how serious this is, that you are destroying lives.  And

22    our community is not going to change until we change our

23    mindset on how we're going to settle things.

24               And I hope that you, as a Judge, see through

25    all this mockery of the Court and sentence him to the

```
1    fullest extent.  That's all I ask, is that we have

2    justice in this city.  Thank you.

3              THE COURT:  Thank you.  Anything else from

4    the prosecution?

5              MR. LEICK:  Yes, your Honor.  The People

6    will be asking that he be sentenced to prison, the top

7    of the guidelines.  We ask for twenty-three months to

8    ten years, plus the two years for the felony firearm.

9              THE COURT:  Okay.  Ms. Rock?

10             MR. LEICK:  And I did -- I'm sorry.  Just

11   for the record, I did talk to Mr. Prasad.  And he had a

12   sentencing guideline book where he is and he was in

13   agreement with the ten to twenty-three sentencing

14   guidelines, just for the record.

15             THE COURT:  Ms. Rock, anything that you'd

16   like to say on behalf of your client?

17             MS. ROCK:  Yes, your Honor.  What I'd like

18   to say is that I think Mr. Howard should be sentenced as

19   a juvenile.  I think that in this particular case, my

20   experience with him is that he's been a gentleman.  He's

21   worked with me on the case.  He's maintained his

22   innocence.  And he has a very loving and supportive

23   family.  Mom can't be here because of a tracheotomy, as

24   I understand it.  Or at least that's my assumption,

25   actually.  She called me several times on behalf of her
```

-21-

1    son.

2              The Court needs to know that his family is

3    present, that his father is here.  Sir, could you just

4    stand so the Judge knows you're here?  He has an aunt

5    who's also here, an uncle who's also present.  His

6    sister is present.  He has a friend who's present.  And

7    there's another gentleman, another uncle who's present.

8    Sir, could you stand so the Judge knows you're here.

9    And then he has two friends who are also present.  And

10   ma'am, you are?

11             UNIDENTIFIED FEMALE VOICE:  A friend.

12             MS. ROCK:  Friend.  So, he has substantial

13   contacts in the community in terms of people who love

14   and care about him.

15             So, I'm asking the Court, you know, I asked

16   you before if we could do a psychological evaluation so

17   we could have firepower behind the request.  If the

18   Court's not willing to do that, then I'm asking the

19   Court to sentence him at the lower end of the

20   guidelines, of course.

21             THE COURT:  Okay.  Anything that your client

22   wishes to say?

23             MS. ROCK:  It's my understanding that my

24   client does not wish to address the Court.  Is that

25   correct, Mr. Howard?

1              THE DEFENDANT:  Yeah.

2              MS. ROCK:  Is that yes?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  This is what we have.  We

5    have everybody that thinks that, you know, there is no

6    justice.  That's basically what I heard.  One side

7    doesn't think that there's justice, of course, that

8    supports Mr. Howard.  And the family of Ms. Hunt thinks

9    that there is no justice.  And so, is there justice?

10             Well, this is what I believe that justice

11   is.  Justice is the person that is accused of a crime is

12   presumed to be innocent.  Justice means that the

13   prosecution has the burden of trying to convince a jury

14   beyond a reasonable doubt that the evidence that they

15   have should convince them that the person that they're

16   accusing of a crime is guilty.  The participation, the

17   ability to take the witness stand, the ability of the

18   jury to listen to the evidence and for them to make a

19   decision.

20             And so, was there justice in the courtroom?

21   To me, there was justice.  So, I guess I differ with

22   both sides in terms of what justice is.  And the jury

23   decided what they decided.  They decided that the

24   evidence convinced them beyond a reasonable doubt that

25   Mr. Howard was guilty.  So, guess what?  Mr. Howard's

                           -23-

1       guilty.

2                   What's he guilty based on?  The evidence

3       that the jury believed that convicted him beyond a

4       reasonable doubt.  They were convinced that Mr. Howard

5       was there.  They were convinced that Mr. Howard

6       committed the assault with the intent to commit murder,

7       I mean, great bodily harm and that he had a gun while he

8       was doing it.

9                   So, what does that mean as it relates to

10      what you believe?  It means that they, because they had

11      no stake in it, listened to the evidence, followed the

12      directions of the Court, weren't influenced by anybody

13      in particular and made an independent decision about

14      what they thought the facts of the case and the evidence

15      proves.

16                  So, I'm not quite sure what you all believe

17      is justice.  Maybe you wanted a particular result.  Or

18      maybe you just wanted, you know, the accused to have a

19      fair trial.  Now, if you think that a fair trial means

20      that they should have found the way that you wanted them

21      to -- I don't agree with that.

22                  And the fact that people have support one

23      way or the other, I think that's the way it should be.

24      I think any time you get accused that it's good for you

25      to have support.  Now, does that mean that you didn't do

                              -24-

1    it?  Heck no that doesn't mean it.  That doesn't mean

2    anything.  That just means that there are people that

3    love you.  And I think that there should be people that

4    love you.

5         So, I guess the bottom line is, you know,

6    how do these crimes happen?  How do these young people

7    decide that this is how they want to solve problems?

8    Too much TV or failure to be monitored properly at home

9    or not enough employment or maybe somebody dogged them

10   when they were little.  What creates it?  What creates a

11   division so that talking about it isn't enough?  How

12   free should we be in a free society to express

13   ourselves?

14        Well, it all depends on what you down for, I

15   guess.  There are some people that decide that they

16   should be free to look and act and do whatever they want

17   to because they're not breaking the law.  That's what

18   some people figure.

19        I'm one of those persons that's a little

20   more cautious.  I believe that sometimes you can attract

21   negative just by doing positive.  Any of you all attract

22   any haters just by being positive people?  Yeah.

23   Sometimes just minding your own business, being positive

24   you can attract haters.  Now that's crazy, to me.  But

25   you can.

-25-

1                    And there are certainly things that you can

2          do to attract more haters.  Let me see.  Back in the

3          day, there used to be this jacket that was called an 8

4          ball.  Any of you all remember that 8 ball jacket?  Big

5          old 8 ball.  How many people would get robbed for them

6          jackets?  But the point was that doing that, you were

7          going to attract.  That's like jumping in with a cut arm

8          in a shark tank.  Now, do the sharks have any right to

9          chew you?  No.  But are they going to eat you up because

10         you -- Absolutely.

11                   So, what do you think Cartier glasses

12         attract?  If you wearing them, to me, you asking for the

13         criminal element to come up on you.  Do you have a right

14         to wear them?  Certainly, you have a right to wear them.

15         Is it stupid to wear them in the wrong neighborhood?

16         Yup.  It's stupid.

17                   So, to me, you know, you couple, you know,

18         the thing that most young people don't have.  And most

19         young people don't have a lot of experience and they

20         certainly don't have a lot of skills in solving

21         interpersonal conflict.

22                   Then you add some guns to that.  You add

23         cars to that.  You add macho to that.  You add TV.  You

24         add the music.  You add all of that and you get

25         misguided people.  You get misguided people.

-26-

1         What do the little pictures of Mr. Howard

2    depict that they got out from the phone?  Did they have

3    Mr. Howard wearing a diploma and a cap and gown?  No.

4    He had his gangster image there.  What do most Facebook

5    pages show?  Oh, they got the bling on.  They got the

6    watches.  They got the cars.  They get carried away in

7    this image that this is who they are.  I'm thinking

8    that's never gotten anybody anywhere.

9         I wonder what Barak has on his Facebook

10   page.  Imagine if the President had a page.  What would

11   he have?  He would give you the images he shows all the

12   time, him walking across the stage at Harvard getting

13   his diploma.  Right?  The family where he's the father

14   and husband with a job, not the I'm the baby's daddy.

15   Ain't got no job.  Got a little piece of a job.  But he

16   would give you images that would show this is how you

17   build a community.  He wouldn't give you images that

18   destroy communities.

19        But what's on Facebook?  Images that destroy

20   the community.  Everybody wants to be a gangster.  Well,

21   I'm not surprised we are here, not by the behavior that

22   people have sought, not been lured into, but who seek.

23   Consistent with all of that, with the sadness that

24   surrounds us all the time.

25        The sentence on the felony firearm will be a

-27-

1     mandatory two years in the state prison for Southern

2     Michigan.  To those counts, he will be given credit for

3     the two hundred and eighty-five days that he's spent

4     while awaiting disposition.

5          As to the assault with the intent to do

6     great bodily harm less than murder, he's going to be

7     sentenced to twenty-three months to a hundred and twenty

8     months to the state prison for Southern Michigan to be

9     served consecutive to the two years on the felony

10    firearm.

11         Mr. Howard, you have an absolute right to

12    appeal your sentence and your conviction on these.  If

13    you wish to appeal, you have forty-two days from today's

14    date to perfect your appeal on those cases.  And I would

15    like to set April the 25th as the date for trial for the

16    count one that was not disposed by way of trial.  Is

17    that date a good date?

18         MS. ROCK:  Your Honor, I have a trial that

19    date.  But I also wanted to make a motion to withdraw in

20    this particular case.  I think that Mr. Deonte Howard

21    needs a fresh perspective.

22         THE COURT:  Okay.  I'll grant the motion.

23         MS. ROCK:  Okay.  Thank you.

24         THE COURT:  Assign him a new lawyer.

25         MR. LEICK:  Thank you, Judge.

-28-

1                   THE COURT:  That's still the date.

2                   (At 11:28 a.m. proceedings concluded.)

                 R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

            I, SEAN E. ALLEN, CSMR 5265, Certified Court

Reporter acting in and for the Third Judicial circuit,

Wayne County, State of Michigan, do hereby certify that

the foregoing pages 1 through 29, inclusive, were

reduced to typewritten form and comprise a true

rendition of the proceedings taken in the above-entitled

matter on February 9, 2011.

            I FURTHER CERTIFY THAT MY CERTIFICATION

ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN,

SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES

NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED

COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.


                    _____
                    SEAN E. ALLEN -- CSMR 5265
                    Official Court Reporter.

DATED:  This 29th day of May 2012.


                                                    -29-