STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN


                    v                    Case Number

                                         10-5562-01


DEONTE HOWARD

                              Defendant.


_____/

JURY TRIAL -- DAY FOUR

PROCEEDINGS HELD BEFORE THE HONORABLE BRUCE U. MORROW,

Judge, Third Circuit Court, Detroit, Michigan, on

May 12, 2011.

APPEARANCES:

          RAJ PRASAD P68519
          Assistant Prosecuting Attorney
          Wayne County Prosecutor's Office
          1441 St. Antoine
          Detroit, MI 48226
          (313) 224-6804

          W. FREDERICK MOORE P33341
          Attorney for the Defendant.
          11954 Wisconsin Street
          Detroit, MI 48204
          (313) 418-1253


SEAN E. ALLEN
Official Court Reporter
CSMR 5265
(313) 224-7044

TABLE OF CONTENTS

WITNESSES:   NONE.

EXHIBITS:   NONE.

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

```
 1                   Detroit, Michigan.

 2                   May 12, 2011.

 3                   (At 9:41 a.m. court in session,

 4                   jury enters the courtroom.)

 5                   THE COURT:  You all like the same chairs,

 6          huh.  I wasn't a big proponent of seating charts when I

 7          was a kid anyway.  But, you know, the taller you were,

 8          did we ever get a chance to sit in the front?  Always

 9          mad at those little kids, the smaller ones who got to

10          sit in the front.

11                   And then I had this one teacher that

12          believed that all boys were from Hell and all girls were

13          from Heaven.  So -- Seriously.  And so, the front rows

14          and the front three seats, the girls sat there.  And all

15          the boys sat in the back.  And it's like, woah.  My

16          educational experience was interesting.  Very few

17          circumstances and situations did I actually get to be

18          the teacher's pet.  I mean, it's fun, I guess.  It

19          happened a few times.  Any of you all teacher's pets?

20          Get those little special perks and privileges?

21                   Do you know they still have pets?  When I

22          get teachers on the jury, I ask them, you all still do

23          student pets?  And they don't like to admit it.  But,

24          you know, they play favorites, you know.

25                   And the crazy thing is sometimes, one
```

1     teacher's pet -- I mean, teacher's share pets.  And

2     don't be from a non-pet family.  I was -- My brother

3     often was the teacher's pet and he set the scale way up.

4     And I'm kind of real different.  And so, and then I

5     messed it up for my sisters because you remember when

6     everybody -- There was only one school and everybody

7     went to this school.  And if you fell in line, they knew

8     who you were before you came.  So, that was interesting.

9     Okay.  I am ready.

10                My instructions actually come in three

11    parts.  The first part of the instructions, we go back

12    over for the third time many legal concepts.

13                The second part of the instructions deal

14    with the offense that's charged in the information.  So,

15    you'll hear about the elements of the offense, what the

16    prosecution has to prove beyond a reasonable doubt and

17    what the defense doesn't have to prove.  Period.

18                And then the third part of the instructions

19    actually deal with the deliberation process.  You don't

20    have to memorize any of it.  If you want to hear it

21    again, if I haven't explained it clearly, just ask me to

22    explain it, even for the elements of the offense.  I'll

23    copy them and send them in, if you would like, so that

24    you can have them during the deliberations to do

25    whatever you will.

                          -4-

1          And is this our bag and our box?  All of
2     this is evidence.  If you need the evidence, just send
3     me a little note, please send in the evidence, and we'll
4     knock on the door and we'll send in the evidence, and
5     anything else that you might want that will help the
6     deliberation process.
7          The only thing that we really don't have is
8     we don't have a transcript of the testimony.  So, if
9     there was some testimony that you all have a difference
10    of opinion about what was said or what wasn't said and
11    it's about something that's very, very important, then I
12    have to bring you back out.  You'll sit there and Mr.
13    Allen will play the testimony for you so that you can
14    re-hear it again.
15         One caveat about that.  You have to listen
16    to all of it.  You can't have me stop it about the one
17    subject matter that you all might have needed to
18    remember and hear.  I'll have to play the direct
19    examination, the cross-examination and if there was any
20    redirect or recross.  So, other than that, though, you
21    can get what you want.
22         Starting off at the beginning again is the
23    presumption of innocence.  And the law says that a
24    person that is accused of a crime is presumed to be not
25    guilty.  That presumption begins at the beginning of the

1    trial and it continues throughout the trial and it

2    entitles Mr. Howard to a verdict of not guilty unless

3    you're satisfied beyond a reasonable doubt that he is

4    guilty.

5              Every crime has elements, things that have

6    to be proven.  And that burden rests with the

7    prosecution.  He has to prove each and every element

8    beyond a reasonable doubt.  And if he hasn't met that

9    burden, your duty is to return a verdict of not guilty.

10   A reasonable doubt, again, is considered a fair, honest

11   doubt that grows out of the evidence, the lack of

12   evidence or the inadequate nature of the evidence.  It's

13   not merely an imaginary or a possible doubt, but a doubt

14   that you can assign a reason to.

15             So, you know, using all the evidence, all

16   the diagrams and exhibits, if they've created a

17   reasonable doubt, then you have to find the defendant,

18   Mr. Howard, not guilty.

19             Again, because you all are the jury, any

20   decision that you make in this case is a final decision.

21   The decision is about what the prosecution has provided

22   in terms of what they've proven beyond a reasonable

23   doubt, based on the evidence.

24             Evidence, once again, testimony from the

25   witness stand.  Anything a witness says is evidence.

-6-

1    We've had pictures, at least One through Forty-Two.

2    We've had diagrams.  We've had reports.  Those are also

3    evidence and can be used.

4               But, again, going in the opposite direction,

5    what isn't evidence is anything that I've said.  I'm not

6    sworn.  I'm not a witness.  And what I've said isn't

7    evidence.  Anything that the prosecution or the defense

8    says isn't evidence.  Again, their opening statements

9    were directing to you to what [sic] they thought was

10   important, what their obligations were, what they

11   thought the law required them to do and how it was, all

12   of that tied into their view of the case.

13              Their closings, the same thing.  They got

14   up, told you what the witnesses said, what the

15   stipulations said and how that was consistent with the

16   theory that they wanted you to accept or having met or

17   not met, legally-imposed duty and responsibility.

18              So, any time [sic] that they say, again,

19   anything that you disagreed with either through your

20   memory or written on paper, please go by what you

21   remember versus what any of the lawyers said.

22              They're entitled to ask leading questions,

23   you know.  And just because a leading question was

24   asked, doesn't mean that you infer that anything inside

25   of that leading question is true.

-7-

1        They could ask me how much did I drink last

2   night.  That implies that I drank something last night.

3   And just because the question is asked, it doesn't mean

4   anything because it's the answer to the question in the

5   context of what the question is, almost like, you know,

6   when is the last time you beat your wife or when did you

7   stop beating your wife.  It implies that you're a wife

8   beater.  So, the law says that they can ask questions.

9   But so what?  The question itself isn't evidence.  It's

10  the answer to that question that supplies the evidence.

11        In terms of evaluating and assessing the

12  evidence, we talked about two types of evidence being

13  direct and circumstantial, pointing out that the

14  difference between the two is one kind of doesn't depend

15  on reasonableness and common sense.  It doesn't depend

16  on you making reasonable inferences based on evidence.

17        For instance, we talked about the snow.  And

18  at night the lawn is bald and when you wake up in the

19  morning, you know, eight feet of snow.  Okay.  The

20  evidence would be the eight of snow, obviously.  So,

21  what would our reasonable inference be if it was bald-

22  headed last night and it's -- The reasonable inference,

23  based on the evidence is that it snowed last night.

24        So, you're allowed and encouraged to make

25  decisions that are consistent with reasonableness and

-8-

1    common sense.  Because that's what we've talked about

2    from the moment that you came in here, reasonableness

3    and common sense.  So, yes.  You're encouraged to do

4    that.

5              And the prosecution uses whatever type of

6    evidence they have.  Sometimes we've had cases where

7    it's all been direct evidence.  Other times, all

8    circumstantial evidence.  But the majority of it is a

9    little mix of each.  And, again, neither type of

10   evidence is superior or inferior to either one.  If you

11   believe it, put whatever weight you want to the

12   testimony that you choose to believe.

13             There was one other type of evidence that

14   you all got exposed to.  And I need to make clear the

15   difference and how to use it.  We had transcripts that

16   were used of prior hearings.  Well, didn't you say this

17   at that hearing?  When people are asked questions based

18   on what they said at a hearing before this one, you can

19   use that as evidence, if you choose, because it was

20   under oath.

21             You can say, you know, I'm not going to

22   believe what they said yesterday, but that other

23   question was, did you say this February...  You have the

24   option to believe that.  Usually, that kind of

25   information is used so that you all can evaluate the

-9-

1    credibility of that witness.

2              One other thing that they were asked.  What

3    description did you give the police?  Or did you say

4    this to the police?  Or did you say this to the

5    neighbor?  That can't be used, what you said to the

6    neighbor or to the police as substantive evidence.

7    Can't be used.

8              If I said -- And they're trying to prove

9    that the car is red.  If I said that the car was black

10   on the witness stand and somebody says whoa, whoa, whoa,

11   whoa, Bruce.  Read this.  Isn't that your statement to

12   the police?  Didn't you say that the car was red?  I

13   read it.  I say, yeah.  I said it was red.  You can

14   only, in terms of using evidence, to support the car is

15   red, you can't use that statement because it wasn't

16   under oath.  It wasn't said when it was subjected to

17   cross-examination.  The only thing that you can decide

18   is do we believe him when he says that the car was black

19   or not?

20             So, what if somebody gets up and says, okay.

21   So, why did you say the car was red?  Because it was at

22   night and, you know, I saw it underneath the street

23   lights and it looked red.  But I know it was black.  You

24   can consider that to decide if it was black or not or if

25   I'm telling the truth or if I'm mistaken.  But you can't

                              -10-

1    use the red because it was, again, out of court, not

2    subjected to cross-examination.  You can't use that to

3    support the testimony that the car was red.  Okay.  So,

4    that's the difference in using that last type of

5    evidence.

6              One other type of evidence that you are

7    allowed to use, if you choose -- Because all of this is

8    optional.  Because you can decide what to use and what

9    not to use.  But another type of evidence is a

10   stipulation.  And you heard them read at least two

11   stipulations and they both agreed that this is the

12   evidence.  But ultimately, you decide what to believe.

13   You don't have to believe something just because they

14   agreed to it.  Because nobody can tell jurors what to

15   believe.  We cannot tell you what evidence to accept.

16   You do that.  You decide how much weight testimony --

17   So, they can agree all they want to.  I can say okay, we

18   accept that stipulation all I want to.  That just means

19   that the information is now in front of you to decide if

20   you choose to believe it or not and how much weight you

21   want to assign it.  It doesn't mean that you have to

22   believe it.

23              Just like when we, you know, what was it?

24   Two, three, maybe four witnesses I said, okay.  They're

25   qualified now to speak as an expert and offer testimony

-11-

1    as an expert?  Okay.  That just meant that they met some

2    little magic formula that the law agrees that you can

3    say that.

4              But, to jurors, that shouldn't mean a hill

5    of beans.  Because no witness has greater credibility

6    than any other class of witness.  Usually, when they get

7    qualified to speak as experts, that just means that they

8    talk about stuff in an area that is not common to most

9    of us.  But in evaluating whether you believe it or not,

10   you can decide the person's educational background.  You

11   can decide the person's experience.  You can even decide

12   if they were tired, if it was the last one they were

13   doing that day.  Always decide if it's consistent with

14   reasonableness and common sense.

15             And the thing that I love about experts,

16   because at one time, people used to roll out an expert

17   and we would be like, oh, they're an expert.  They know

18   what they're talking about.  And then you roll out the

19   next expert and they give an opinion, what?

20   Contradictory to the other expert on the same set of

21   facts.  You know, like many of us when we get second

22   opinions.  We're like, whoa, whoa, whoa, whoa, whoa.

23   I've presented you with the same history.  Didn't you

24   all go to the same school, learn the same stuff?  How

25   come the opinions are so different?  Because they're

-12-

1   opinions.

2              Can opinions overlap fact?  Yes.  Just like

3   the broken clock at 12:00 can overlap truth, twice.  But

4   they're opinions.  Opinions can be totally false on the

5   scale of an opinion and, at the same time, an opinion

6   can overlap the truth.  And so, you decide, inside of

7   that range, what you believe to be consistent with

8   reasonableness and common sense and how much weight you

9   want to give the testimony.  And you decide.  And they

10  decision that you make is a final decision.

11              The number of witnesses, we talked about one

12  side presenting more witnesses than the other, that

13  shouldn't have any affect on what you choose to believe.

14  The focus, again, should be how reasonable was the

15  testimony?  Was it consistent with reasonableness and

16  common sense?  And was there other testimony to support

17  it or to contradict it?

18              Like the witnesses who testify.  We have one

19  police witness that said, no I didn't threaten the

20  person.  And then remember the witness came up and said

21  she called me everything but the child of God.  Now, you

22  know, are they lying?  Are they remembering differently?

23  And, you know, the bottom line is, does it make a

24  difference?  If so, who do I choose to believe?  I can't

25  believe the police officer just because they're a police

1    officer because an occupation shouldn't influence me to

2    believe, to think that one side is more credible.

3              At the same time, occupation can't make you

4    believe that somebody's less credible.  Occupation

5    shouldn't be able to do it.  It's the testimony.  Does

6    it make sense.  It is consistent with reasonableness and

7    common sense?  Is it supported by other evidence that's

8    in the case?

9              The credibility of witnesses, you know, we,

10   we've talked about that.  That's what they talked about.

11   And, again, you know, the decision is sometimes:

12             How did the witness look and act while

13   testifying?  Do you think they were making a reasonable

14   attempt to tell the truth?  Do you think they were being

15   evasive or argumentative?

16             Do you think the age of the witness or their

17   maturity affects how you want to believe them?  When

18   witnesses testified about what they saw or heard -- You

19   heard about the people's perception of what was going

20   on.  Would their perceptions be somehow interfered with

21   by the amount of noise or the distance from which they

22   were, the confusion that was there, their own bias or

23   prejudice in terms of seeing things and experiencing

24   things, you know?  What was going on that might have

25   distracted them from being able to see or hear clearly?

-14-

1      Or did they have the opportunity to see and hear

2      clearly?

3                  What was their state of mind at the time of

4      making the observations?  Some testimony, if you believe

5      it, had people running for cover.  Other testimony had

6      people out there just watching.  Consider all of that in

7      deciding who and what you choose to believe.  Consider

8      if anybody had any special reason to lie or any special

9      reason to tell the truth, if anybody has a stake, if you

10     will, in the outcome of the case, you know.

11                 And then, the bottom line is that there are

12     people who have testified, or you might think have

13     testified about something that's important to you in

14     this case and their testimony is inconsistent with other

15     testimony or other evidence.

16                 The bottom line is sometimes people testify

17     honestly about what they remember seeing or hearing,

18     they just are wrong.  Flat out.  They're just wrong.

19     They remember it wrong.

20                 Other times, people will testify knowing

21     that they're testifying, you know, and lying.  I mean,

22     that oath doesn't make anybody tell the truth or anybody

23     not tell the truth.  They decide.  And you can decide

24     that somebody lied to you even about something, might

25     have told the truth about something else.  And you can

-15-

1   exclude that which, part you think is just falsehood and

2   believe the part that you believe.  Or you have the

3   option, if you think somebody lied to you about one

4   thing, you can disregard their entire testimony if

5   that's what you choose.  You get to decide how to use

6   the information and what information you choose to use.

7   Okay.

8            The elements of the offense.  Because he is

9   charged in the information with first degree murder and

10  -- Let me get Bruce's helpers.  Even though I've got it

11  in my head, I like to read it any way just so that --

12  Okay.

13           In the information, Mr. Howard is charged

14  with first degree murder of Mr. Simpson.  To prove this

15  charge, the prosecution has to prove the following:

16           First, that Mr. Howard caused the death of

17  Mr. Simpson.  That is, that Mr. Simpson died as a result

18  of multiple gunshots.

19           Second, that Mr. Howard intended to kill Mr.

20  Simpson.

21           Third, that the intent to kill was

22  premeditated, that is, thought out beforehand.

23           And fourth, that the killing was deliberate,

24  which means that Mr. Howard considered the pros and cons

25  of the killing and thought about it and chose his

-16-

1    actions before he did it.  There must have been real and

2    substantial reflection for long enough to give a

3    reasonable person a chance to think twice about the

4    intent to kill.

5                The law does not say how much time is

6    needed.  It's for you to decide if enough time has

7    passed under the circumstances in this case.  The

8    killing cannot be the result of sudden impulse without

9    thought or reflection.

10                We consider first degree murder a specific

11    intent crime.  And that means that at the time that you

12    did the act, the assault, you had only one intent.  And

13    in here, that intent has to be to kill.

14                On the verdict sheet that you'll receive,

15    there'll be listed under murder in the first degree or

16    premeditated, there's a little section that's or lesser-

17    included crimes because you may consider two lesser-

18    included offenses.  And the first lesser included

19    offense that you may consider to count one is murder in

20    the second degree.  To prove that, the prosecution has

21    to prove:

22                First, that Mr. Howard caused the death of

23    Mr. Simpson.  That is, again, he died as a result of

24    multiple gunshot wounds.

25                And second, that at the time of the assault,

-17-

1      Mr. Howard had one of these three states of mind.  Now,

2      you don't have to agree as a collective body with which

3      state of mind, but you all have to agree that this, one

4      of these states of mind.  He either intended to kill

5      him.  He either intended to do great bodily harm to him.

6      Or he knowingly created a high risk of death knowing

7      that the likelihood of great bodily harm or death was

8      there.  Any one of those three states of mind.

9            There is one other lesser included that you

10     are allowed to consider.  And that is called voluntary

11     manslaughter.  The crime of murder may be reduced to

12     voluntary manslaughter if the defendant, Mr. Howard,

13     acted out of passion or anger brought about by adequate

14     cause and before Mr. Howard had a reasonable time to

15     calm down.  For manslaughter, the following two things

16     must be present.

17            First, when the defendant acted, his

18     thinking must be disturbed by emotional excitement to

19     the point that a reasonable person might have acted on

20     impulse without thinking twice, from passion instead of

21     judgement.  This emotional excitement must have been

22     brought about or was the result of something that would

23     cause a reasonable person to have acted on impulse

24     without thinking twice, from passion instead of

25     judgement.

1           Again, this emotional excitement must have

2     been the result of something that would have caused a

3     reasonable person to act rashly or on impulse.  The law

4     does not say what things are enough to do this.  Again,

5     it's for you, the jury to decide.

6           Second, the killing itself must result from

7     emotional excitement.  The defendant must have acted

8     before a reasonable time had passed to calm down and

9     return to reason.  The law does not say how much time is

10    needed.  Again, this is for you to decide.  The test is

11    whether a reasonable time passed under the circumstances

12    in this case.

13          One of the issues that's been raised in this

14    case is the identification of Mr. Howard as the person

15    who committed the crime.  Because not only does not the

16    prosecution have to prove that the crime was committed

17    beyond a reasonable doubt, but they have to prove that

18    Mr. Howard was the one who committed that crime.  And,

19    again, the standard is beyond a reasonable doubt.

20          In deciding how dependable an identification

21    is, think about such things as how good a chance the

22    witness had to see the offender, Mr. Howard, at the

23    time, how long the witnesses were watching, whether the

24    witnesses had seen or known Mr. Howard before, how far

25    away those witnesses were and whether the area was well-

                              -19-

1    lit and the witnesses state of mind at the time.

2              Also, think about the circumstances at the

3    time of the identification, such as how much time had

4    passed since the crime, how sure was the witness is

5    about the identification and the witnesses state of mind

6    during the identification.

7              You may also consider any time that the

8    witness failed to identify the defendant or made an

9    identification or gave a description that did not agree

10   with their identification of the defendant, Mr. Howard,

11   during trial.

12             You should examine the witness'

13   identification testimony carefully.  You may consider

14   whether there is other evidence that supports the

15   identification because then it may be more reliable.

16   However, you may use the identification testimony alone

17   to convict the defendant, Mr. Howard, as long as you

18   believe the testimony and you find that it proves beyond

19   a reasonable doubt that Mr. Howard was the person that

20   committed the crime.

21             How many of you all have served and actually

22   deliberate and reached a verdict before?  One, two,

23   three, four.  Okay.  I'm pretty sure what you were told

24   before.  Keeping that in mind, you know, when everybody

25   goes in the jury room, most people feel comfortable

1    picking a foreperson, you know.  They need Charlene or

2    Chuck to be in charge.  It's an interesting kind of

3    concept.  Because what I do is I try to keep you all as

4    co-equals.  Something about being co-equal just makes me

5    feel better.  It lets me know that if the leader is

6    taking everybody to left field that everybody won't end

7    up in left field.  Everybody has an equal voice.

8              I've been in organizations where the leader

9    will say, okay.  We've heard enough from you.  But I'm

10   encouraging you to talk as much as you need to.  So, I

11   don't want to suppress any kind of conversation.  So,

12   you know, the decision is which way do we go around the

13   table sometimes.  Who starts?  Do we go by height or

14   birth date?  The real thing is everybody gets a chance,

15   as long as they need to know, to discuss the facts of

16   the case.  So, you all want to be forepersons?  That's

17   great.  So, we got that out the way.

18             Sometimes everybody does decide who's going

19   to be the scribe and send out the notes.  But there's

20   been lots of juries where the handwriting has changed.

21   And I'm saying good for them, you know.  They shared the

22   responsibility and said, okay.  You send the notes.  You

23   read the verdict.  Or you do this.  I mean, it's a

24   shared responsibility because each of you are an

25   integral part of the group.

-21-

1          What's the best way to approach the jury

2     deliberation process?  I would urge you to see it like

3     this.  Start with the willingness to be influenced.

4     Many people think when they serve jury duty that it's

5     their job to convince the other eleven people that

6     they're right.  We've been in a situation where the

7     speaker thinks his job or her job to convince all of

8     you, that don't know as much as they know, how right

9     they are.  That's going to make for some hard times in

10    there.  So, start with the willingness to be influenced.

11         The willingness to be influenced is an

12    amazing process if worked the right way.  It makes log

13    jams become smooth as melted butter on some hot toast.

14    Because it works like this.

15         If you disagree with the person, you're

16    like, okay.  Start from the beginning.  Explain it to me

17    step-by-step.  That step-by-step analysis, the analogy

18    that I make is like when we learned long division.  Do

19    you remember that, some of you?  Before calculators and

20    all of that?  What was the most important thing those

21    teachers used to tell us when it came to long division?

22    What did they say?  Show your work.

23         And wasn't it funny because when we handed

24    the test backwards or to the side to have it checked and

25    they would circle where we either subtracted wrong or

-22-

1    where we made a mistake and carried the wrong remainder

2    up, but you could see it.  You're like, oh.  I can't

3    believe I didn't add it right or subtract it right.  And

4    that's what showing your work in there does.

5              And using that approach, sometimes people

6    see the mistake in their own analysis.  Or you can see

7    the clarity in somebody's analysis.  And you change your

8    mind.  You're like, golly.  I didn't see that.  As

9    opposed to just accepting somebody's conclusion.

10   Because it's difficult to just accept somebody's

11   conclusion that's different than yours.  So, that step-

12   by-step analysis, you'll see lights go on.  You'll see

13   somebody say, I didn't consider that.  Okay.

14             Because people's opinions are going to

15   differ.  And I'm going to urge you, if you have a

16   difference of opinion that's based on common sense and

17   reasonableness, do not change it just for the sake of

18   reaching an agreement.

19             But if your opinion doesn't stack up in

20   terms of analysis to somebody else's, then feel free to

21   change your mind, you know, if somebody's analysis makes

22   more sense.  And that's that be willing to be

23   influenced, be open-minded.

24             Sometimes that process is accentuated when

25   we're truthful with each other.  That example about the

-23-

1     car?  Can you all remember Monday when I told you about

2     the car?  Right?  The overlap of things.  Remember how I

3     said sometimes bias can overlap also with fact?  But if

4     you're using bias to get there, the fact that it had the

5     best mileage doesn't matter?  Because you got there

6     through a bias.  Get there through it without the bias.

7     And if you can't, then it's your bias that's convincing

8     you, not any fact.  We're all great at covering up bias

9     because we all don't want to be looked at as silly, you

10    know, political correctness.  And so, you have to be

11    open and honest with each other, say how you really feel

12    or what it is that's going on.  So, there we have it.

13              You'll have the verdict sheet.  I want

14    everybody to consider, as a group, the principle charge

15    of murder in the first degree.  If you can't reach a

16    unanimous verdict on that, then please consider the

17    lesser-included offenses.  And, again, like I said, if

18    you just need to see them written down, just ask me to

19    send in a copy of the elements.

20              Let me emphasize, we can only chat now

21    through the written word.  So, if there's something that

22    you need as it pertains to this case or don't need, if

23    it's time to go to lunch and you all say, lunch, forty-

24    five minutes or an hour, send me something and out you

25    will march.

-24-

```
1                I need everybody to not speak while somebody

2      is using our relief station.  I don't want somebody

3      hollering through the door, I heard that.  Wait until

4      everybody.  Oh, yeah, you know, can you hear me?  Well,

5      we can hear you, you know.  All those little, funny

6      closed-door jokes.  So, we just want those people to be

7      a part of the conversation.  So, if somebody has to go

8      to the rest room, just pause until they get back and

9      then start the deliberations all over again.  Okay.

10               Do you all have any questions about

11     anything?  Instructions, any -- We're good or--

12               MR. MOORE:  (Interposing)  There is

13     something, I think.

14               MR. PRASAD:  There's one I had too.

15               THE COURT:  Okay.  Just tell me.

16               MR. MOORE:  Defendant not testifying.

17               THE COURT:  Okay.

18               MR. PRASAD:  Yeah.  Not testifying.

19               THE COURT:  I thought I kind of included

20     that in the first one.  But anyway.  They just want me

21     to emphasize, once again, that Mr. Howard has no

22     obligation, the law doesn't place any obligation on him

23     to testify.  And the fact that he chooses not testify

24     should have no bearing on your deliberation process.

25               There's the twenty-seven different thousands
```

-25-

1    of reasons why people choose not to testify and, you

2    know, we could list them.  Well, not twenty-seven

3    thousand.  We'd be here too long.  But the fact that he

4    chose not to testify should have no bearing on how you

5    decide the case.

6              And the other one is sympathy.  But, you

7    know, sympathy to me goes hand in hand with prejudice

8    and bias shouldn't play into, you know, anything that

9    you consider.  It is the evidence and the evidence alone

10   that should guide whatever decision you choose to make.

11   Got it?

12             MR. PRASAD:  That's it.  Thank you.

13             MR. MOORE:  Yes.  Thank you.

14             THE COURT:  Okay.  Who's going home?  Do we

15   have any volunteers?  Good.  No volunteers.

16             THE CLERK:  James Rasperry.

17             THE COURT:  Mr. Rasperry, you're the guy.

18   All them notes you took.  You got a whole slew of them.

19   Mr. Rasperry what's the KIT with Mr. Boyd.

20             JUROR NUMBER SIX:  It's hard after you've

21   studied for the quiz, you know?

22             THE COURT:  Remember when I was telling you

23   in the beginning that sometimes that person is like, oh,

24   man.  Why me?  And then I've had a juror say, I'll trade

25   with them.  And sometimes the lawyers will be like,

-26-

1          well, we'd rather have people that want to be there.

2          And sometimes they agree.  And other times, it's like,

3          it's so random anyway, it doesn't even matter.

4                     That's the way I feel, you know, that if we

5          think we picked thirteen good ones it doesn't matter.

6          But others are like, oh, no.  No, Judge.  You can't do

7          that.  They're always trying to tell me what I can't do.

8          Do you have any goodies that you left behind?  No.  Do

9          you have anything in the jury room?

10                    JUROR RASPBERRY:  Let me go check.

11                    THE COURT:  And, if not, I've got to have

12         Mark swear the corporal, corporal toothpick.

13                    (At 10:18 a.m. deputies sworn.)

14                    THE CLERK:  Do you promise to keep this jury

15         in the manner prescribed by law?

16                    THE DEPUTIES:  Yes.

17                    THE COURT:  Full of oaths.

18                    JUROR NUMBER SIX:  Are his notes part of

19         what we have?

20                    THE COURT:  His notes are his mind.

21                    JUROR NUMBER SIX:  Okay.

22                    THE COURT:  And you can't have his mind as a

23         part of your deliberations.  That's a good question.

24         You got your stuff together?  Okay.  Then away you all

25         go.  Take the candy.  Take this.  Mr. Rasperry, you

-27-

1    stick and stay with me.  And if you all need anything

2    else, just write me a note.  Okay?

3                    (At 10:19 a.m. jury leaves the courtroom,

4                    court in recess.)

5                    (At 12:13 p.m. court back in session.)

6                    THE DEPUTY:  All rise for the jury.

7                    (At 12:13 p.m. jury enters the courtroom.)

8                    THE COURT:  We stand for you all.  Have a

9    seat, please.  Okay.  The last said that you have a

10   verdict.  Have you assigned a verdict giver?  Please.

11   Mr. Ulatowski will receive the verdict from you.  I'm

12   sure he's going to say put your name on the record.  And

13   you don't have to stand.  You can sit if you want to.

14   Mark?

15                   THE CLERK:  Okay.  Sir, can you please stand

16   and state your name, for the record?

17                   JUROR WEZNER:  John Wezner.

18                   THE CLERK:  Okay.  Mr. Wezner, how do you

19   find, the defendant, Deonte Howard, as to count one

20   murder in the first degree?

21                   JUROR WEZNER:  We find the defendant guilty.

22                   THE CLERK:  All right.  Can I have all

23   jurors please stand, raise your right hands and listen

24   to the verdict as recorded by the Court?  Do you swear

25   upon your oaths that you find the defendant, Deonte

                              -28-

```
 1        Howard, guilty of the primary count of murder in the

 2        first degree, so say you all members of the jury?

 3                    THE JURORS:  I do.

 4                    THE CLERK:  Okay.  Have a seat.

 5                    THE COURT:  Don't want them polled?  Great.

 6        Okay.  Let me ask you all can I meet you all back in

 7        there, give you some things that I need to give you,

 8        chat for two seconds and then we're all gone.  Thank

 9        you, much.

10                    (At 12:15 p.m. jury leaves the courtroom.)

11                    THE COURT:  Okay.  The Court will -- Hold up

12        for a second.  The Court will receive the verdict as

13        spoken by the jury finding Mr. Howard guilty of the

14        primary count of murder in the first degree.  And

15        sentencing is set for?

16                    THE CLERK:  May the 27th.

17                    THE COURT:  May the 27th.

18                    MR. PRASAD:  Thank you, Judge.

19                    MR. MOORE:  Thank you.

20                    THE COURT:  Thank you.

21                    (At 12:16 p.m. proceedings concluded.)

22

23

24

25
```

R E P O R T E R ' S   C E R T I F I C A T E

STATE OF MICHIGAN  )
                SS )
COUNTY OF WAYNE    )

       I, SEAN E. ALLEN, CSMR 5265, Certified Court Reporter acting in and for the Third Judicial circuit, Wayne County, State of Michigan, do hereby certify that the foregoing pages 1 through 30, inclusive, were reduced to typewritten form and comprise a true rendition of the proceedings taken in the above-entitled matter on May 12, 2012.

       I FURTHER CERTIFY THAT MY CERTIFICATION ANNEXED HERETO APPLIES ONLY TO THE ORIGINAL TYPEWRITTEN, SIGNED, CERTIFIED TRANSCRIPT.  THE UNDERSIGNED ASSUMES NO RESPONSIBILITY FOR THE ACCURACY OF ANY REPRODUCED COPIES NOT MADE UNDER MY CONTROL AND SUPERVISION.

                                    _____
                                      SEAN E. ALLEN -- CSMR 5265
                                      Official Court Reporter.

DATED:  This 10th day of July 2012.